LEONARDO M. RAPADAS
United States Attorney
MIKEL W. SCHWAB
Assistant U.S. Attorney
Sirena Plaza, Suite 500
108 Hernan Cortez Avenue
Hagatna, Guam 96910
Tel: 671-472-7332
Fax: 671-472-7215

Paul Ortiz
Senior Attorney
Office of General Counsel
National Oceanic and Atmospheric Administration
501 West Ocean Blvd.
Suite 4470
Long Beach, California 90802
Tel: 562-980-4069

Attorneys for the United States of America

FILED
DISTRICT COURT OF GUAM
OCT -4 2006
MARY L.M. MORAN
CLERK OF COURT

IN THE UNITED STATES DISTRICT COURT

FOR THE

TERRITORY OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA, | CIVIL CASE NO. 06-00030 |
| Plaintiff, | |
| vs. | **AFFIDAVIT OF JOHN BARYLSKY** |
| MARSHALLS 201, | |
| Defendant. | |

I, John Barylsky, being duly sworn, do hereby depose and state:

I. **INTRODUCTION**

1. I am a Special Agent ("SA") with the U.S. Department of Commerce, National Oceanic and Atmospheric Administration, National Marine Fisheries Service, Office for Law Enforcement ("NOAA OLE"), presently assigned to the Honolulu, HI, Field Office.

I have been a SA with NOAA OLE since 1997. Part of my duties consists of investigating violations of United States fisheries laws codified under the Magnuson-Stevens Fishery Conservation and Management Act ("Magnuson-Stevens Act"), and its related regulations, which include prohibitions on foreign fishing vessels fishing in United States fishing waters without a valid permit. Before becoming a NOAA OLE SA, I was a Florida Marine Patrol Officer between the years 1990 and 1997. During this time period, I investigated violations of both State of Florida and Federal Fisheries wildlife regulations. My formal education includes an Associate in Science for Criminal Justice from Daytona Beach Community College.

## II. PROPERTY TO BE SEIZED

2. This affidavit is made in support of a Complaint for Forfeiture to arrest the foreign fishing vessel **Marshalls 201**, including the vessel's fishing gear, furniture, appurtenances, stores, electronic and documentary records (including plotters, fax machines and other devices), and catch of fish, for violating 16 U.S.C. § 1857(2)(B) (Foreign Fishing Vessel Engaged in Fishing within the United States EEZ without a Valid and Applicable Permit), and 16 U.S.C. 1857 (4)(A)(B) (Foreign Fishing Vessel engaged in fishing within the U.S. EEZ without their fishing gear, stowed, stored, secured or covered, so as to render it unusable for fishing unless authorized to engage in fishing in the area in which the vessel is operating). 16 U.S.C. § 1861(b)(1)(A) states in part that with or without a warrant, a fishing vessel (together with its fishing gear, furniture, appurtenances, stores, and cargo) used or employed in the violation of any provision of this chapter may be seized. Further, Section 1861 also states that other evidence related to any violation of any provision of this chapter may be seized. The **Marshalls 201**, a Republic of the Marshall Islands ("RMI") flagged purse seine fishing vessel, is a 70.46 meter long, four deck vessel having a gross weight of 1076 metric tons, and listed in vessel registration documentation as being owned by the Marshall Islands Fishing Company, an RMI based company. The vessel's hull is white in color and the

superstructure is white in color, with the vessel name printed on the right and left side of the front area of the vessel. Further, the vessel's international radio call sign of V7CN4 is printed about mid-ship on both sides of the vessel.

### III. BACKGROUND INFORMATION

3. Based upon my training and experience as a NOAA OLE SA, and from information obtained from other NOAA personnel, I know the following:

4. The Magnuson-Stevens Act is the United States fishery law that governs the management of living marine resources, which includes fish, in the waters under the jurisdiction of the United States. The ultimate purpose of the Magnuson-Stevens Act is to help insure that the living marine resources, which includes highly migratory fish such as tuna, continue to exist at sustainable levels, while at the same time allowing the resource to continue to be available for harvesting. The Magnuson-Stevens Act attempts to accomplish the goal of a sustainable fishery by regulating the United States fishing industry, and by also regulating the fishing activities that occur in ocean areas where the United States claims sovereign rights.

5. A portion of the ocean area that the United States claims sovereign rights over, for the purpose of exploring, exploiting, conserving, and managing of natural resources, is the exclusive economic zone ("EEZ"). The United States considers that the EEZ is that area adjacent to the United States which, except where modified to accommodate international boundaries, encompasses all waters from the seaward boundary of each of the coastal states to a line on which each point is 200 nautical miles from the baseline from which the territorial sea of the United States is measured. The United States, and other nations, have the rights to control, manage, and use the natural resources, including living marine resources such as fish, within their respective EEZ's. Thus, the United States has jurisdiction to control fishing activities within its EEZ, including the EEZ waters around United States territories and Pacific Insular Possessions of the United States.

6. Howland and Baker Islands are small uninhabited islands near the equator, due south of Midway Island, and they are considered Pacific Insular Possessions of the United States. Howland and Baker Islands, which are within 60 nautical miles of each other, provide the United States with an EEZ around the islands. The United States thus has sovereign rights over the fishery resources within the EEZ surrounding Howland and Baker Islands.

7. For a foreign fishing vessel to legally engage in fishing activities within the United States EEZ surrounding Howland and Baker Islands, the foreign fishing vessel would need to have a Pacific Insular Area Fishery Agreement ("PIAFA") permit.

8. According to the Magnuson-Stevens Act, fishing is defined in part as the catching, taking, or harvesting of fish, the attempted catching, taking, or harvesting of fish, and any other activity which can reasonably be expected to result in the catching, taking, or harvesting of fish.

9. There is concern in the government and the fishing industry of the United States and other nations that the stocks of highly migratory fish species, such as tuna, are being depleted below sustainable levels due to over fishing. In an effort to help sustain the fishery, the United States and other countries have entered into numerous fishery treaties, with the intention of regulating the catch of highly migratory fish species. The need for international cooperation is deemed necessary for the fishery to stay viable, due to the fact that there is only so much fish in the ocean to catch, and because highly migratory fish travel freely from one country's EEZ to another country's EEZ. Because many highly migratory fish provide high dollar returns, countries aggressively enforce their fishery laws, and the sovereign rights and exclusive fishery management authority over the highly migratory fish inside their respective EEZ. Thus, the United States considers the highly migratory fish inside its EEZ as an important economic resource.

## IV. SUMMARY OF PROBABLE CAUSE

10. This affidavit is submitted for the purpose of establishing probable cause to seize the foreign fishing vessel **Marshall 201**, for violating 16 U.S.C. § 1857(2)(B)(Foreign Fishing Vessel Engaged in Fishing within the United States EEZ without a Valid and Applicable Permit) and 16 U.S.C. § 1857(4)(A)&(B) (fishing gear not stowed where it is not readily available for fishing). This affidavit is intended to show that there is sufficient probable cause for the requested seizure warrant, and does not purport to set forth all my knowledge of the investigation into this matter. The evidence set forth in this affidavit is based on my personal observations, training, and experience, review of documents, interviews of witnesses, information obtained from other Special Agents and government personnel, and information obtained from other sources as set forth below.

11. The evidence detailed in this affidavit shows that there is probable cause to believe that, on or about the 7th and the 9th of September, 2006, the foreign fishing vessel **Marshalls 201** engaged in fishing operations in the United States EEZ surrounding Howland and Baker Islands without having their fishing gear properly stowed and secured as observed by SA Honda and members of the USCG C-130 during aerial surveillance operations.

12. The evidence detailed in this affidavit shows that there is probable cause to believe that, on or about the 9th of September, 2006, the foreign fishing vessel **Marshalls 201** engaged in fishing operations in the United States EEZ surrounding Howland and Baker Islands without having a valid and applicable permit. The **Marshalls 201** was observed on September 7, 2006, in the U.S. EEZ via aerial surveillance by a USCG C-130 and surface patrol via USCGC Walnut. Evidence indicates that the master of the **Marshalls 201** was well aware that the vessel was located inside the United States EEZ, and that it was illegal for them to fish inside the EEZ. Evidence of the master's knowledge resulted from radio communications and attempts to flee the USCGC Walnut.

13. Further evidence shows that the principle owner of the **Marshalls 201**, KOO's Fishing Corporation (KFC), had been civilly fined by NOAA for a previous violation when one of their purse seine fishing vessels, the KOO's 103, aka the Niugini 103, illegally fished in the U.S. EEZ surrounding Howland and Baker Islands in August 2000. The KOO'S Fishing Company is also currently under investigation, and prosecution is pending, for a similar alleged violation involving the **KOO'S Fishing Vessel 108** in January of 2004.

## V. STATEMENT OF PROBABLE CAUSE

### A. Illegally fishing within the EEZ of Howland and Baker Islands

14. Based on my interviews of USCG witnesses, other NOAA OLE Special Agents, documents provided, and from my own observations, analysis, and knowledge, I know the following to be true:

   a. The **Marshalls 201**, IRCS V7CN4, is a 70.46 meter purse seiner homeported in Jaliute, Republic of Marshall Islands with a white hull, white superstructure and holds a Federated States of Micronesia (FSM) Regional Fisheries Access License number RA34105-317MH.

   b. The Master of the vessel is Wen-Yueh LU, age 58, Sex: male, Height 5ft 5in, Weight 140 lbs, Hair: black, Eyes: Brown, Race: Asian, Citizenship Taiwan, Passport #13619946.

   c. On September 07, 2006, members of the USCG C-130 and NOAA OLE SA Victor Honda observed the **Marshalls 201** fishing inside the U.S. EEZ of Howland and Baker Island without having their fishing gear properly stowed and secured, in violation of Magnuson-Stevens Act. On that date, NOAA OLE SA Victor Honda was deployed aboard a United States Coast Guard C-130 aircraft (CG C-130), tail number 1702. The purpose of this flight was to perform a fisheries patrol in and around the Howland and Baker Islands EEZ. During this patrol, at approximately 00:42 Z, the navigator reported a contact on the radar in the position of 02-29.0S 176-43.0W, on a

6

course of 182 degrees making way at 10 knots. This position is within the Howland and Baker Islands EEZ. Visual contact was made of this vessel, and it was identified as the Republic of Marshall Islands (RMI) foreign flagged fishing vessel (FF/V) with the name "**MARSHALLS 201**" on the hull (**Marshalls 201**). SA Honda observed the vessel's boom was lowered and the purse seine net was not covered, in violation of U.S. law. The vessel was sitting low in the water, indicating the vessel's cargo holds were not empty.

    d. On September 09, 2006, members of the USCG observed the **Marshalls 201** fishing inside the U.S. EEZ of Howland and Baker Islands. The vessel does not possess a permit to legally fish within these waters. The **Marshalls 201** refused to obey repeated orders to stop their vessel and submit to a USCG boarding. In detail, at approximately 1853Z, the navigator onboard the CG C-130 reported a radar contact within the EEZ of Howland and Baker Islands. The position of this contact was approximately 55 nautical miles (NM) from the position of the CG C-130. When the CG C-130 arrived near position 02-06.1S 176 00.5W, which is located north of the maritime boundary line (MBL) between the U.S. EEZ and the Kiribati EEZ, members on the CG C-130 and NOAA OLE SA Honda spotted a vessel fishing inside the U.S. EEZ. They identified the vessel as **Marshalls 201**. SA Honda observed the **Marshalls 201** retrieving her purse seine net. Approximately 90% of the purse seine net was on board the vessel. Two smaller vessels, tenders for the **Marshalls 201**, were actively assisting in the retrieval of the purse seine. Fish were observed being netted and brought on board the **Marshalls 201**.

    e. Immediately after this observation, the CG C-130 contacted the USCGC Walnut. The USCGC Walnut was patrolling approximately 20 NM inside the U.S. EEZ north of this vessel's position. After receiving this information from the CG C-130, the bridge team on the USCGC Walnut maneuvered their course to intercept the **Marshalls 201**. The members on the USCGC Walnut plotted the position provided by the CG C-130 and determined the vessel was approximately 2NM inside the U.S. EEZ of Howland and Baker Islands.

f. At approximately 1027 hrs, the USCGC Walnut pulled along side the **Marshalls 201** which was stopped in the water and pulling in it's fishing gear, with two of it's small boats still in the water. It was determined at this time that the vessel was 1.9 NM within the U.S. EEZ. Members on the USCGC Walnut hailed the **Marshalls 201** on channel 16, ordering the vessel to heave to. The vessel then fled on a South-Southeast course directly toward the EEZ boundary line and the waters of Kirabiti.

g. At approximately 1033 hrs, the **Marshalls 201,** underway heading south - southeast, began to transit out of the U.S. EEZ while it's seine nets were still hanging from the boom. The USCGC Walnut continued pursuit of the vessel repeatedly hailing them to stop and heave to with negative results. At 1040 hrs, the USCGC Walnut hauled up the flaghoist signal "LIMA" from the International Code of Signals on their starboard yardarm and sounded the signal "LIMA" with the ship's whistle. The **Marshalls 201** responded to this whistle with two short blasts and continued her coarse. At approximately 1047 hrs, the **Marshalls 201** departed the U.S. EEZ in position 02-07.711S 175-58.731W. USCGC Walnut maintained hot pursuit both visually and on radar and continually hailed the vessel to heave to on channel 16. Someone, believed to be the master, did respond over channel 16 stating "no speak English" and "me no inside work" several times. At 1048 hrs, the **Marshalls 201** stopped in order to finish stowing it's fishing gear, then continued it's transit towards the south-southeast. During this time, the commanding officer of the USCGC Walnut ordered the 50 caliber machine guns to be mounted. They were mounted, but never pointed toward the **Marshalls 201** at any time. At 1100 hrs, the **Marshalls 201** came to an all stop. Again, someone believed to be the master said on channel 16 "you come over my boat".

h. At this time members of the USCGC Walnut conducted an at sea law enforcement boarding. It was determined by CG boarding officers, that the **Marshalls 201** did not possess a permit to legally fish within the U.S. EEZ on board, as required by U.S. law, and had approximately 500 metric tons of tuna on board. A statement of no objection was granted by the USCG District 14 for the vessel and catch to be seized and

8

transported to Guam.

        i. On September 20, 2006, the Marshalls 201 was secured in the Port of Guam where custody was transferred to NOAA OLE for violations of the Magnuson Stevens Fisheries Conservation Act.

### B. The Marshalls 201 Did Not Have A Permit To Fish In The EEZ

15. Based on information I learned from reviewing a previous case file investigation by SA Jeff Pollack, I know the following to be true:

        a. A foreign fishing vessel would have to have a Pacific Insular Area fishery agreement ("PIAFA") permit to legally fish within the United States EEZ at a Pacific insular possession area like Howland and Baker Islands.

        b. No PIAFA permit has been issued to any foreign fishing vessel to fish in the Pacific insular possessions since the PIAFA mechanism came into existence in 1997.

        c. If any foreign fishing vessel is fishing in the EEZ around Howland and Baker Islands, the foreign fishing vessel is doing so illegally.

### C. The Principle Owner Of The Marshalls 201 Was Previously Fined And Is Currently Under Investigation For Another Alleged Violation.

16. Based on my review of a previous case file investigation by NOAA OLE SA Jeff Pollack, I know the following to be true:

        a. In August 2000, the NIUGINI 103 (reflagged and named the **KOO'S 103**), a foreign purse seine fishing vessel, illegally deployed five FADs while inside the United States EEZ surrounding Howland and Baker Islands. The Vessel, on paper owned by the NIUGINI FISHING COMPANY, was in reality owned by KWANG-MING KOO of Taiwan, who was listed as the owner on the NIUGINI 103's FFA vessel registration application.

        b. As a result of the **KOO'S 103 (NIUGINI 103)** deploying FADs into the United States EEZ around Howland and Baker Islands, the NOAA Office of General

Counsel issued a civil Notice of Violation and Assessment ("NOVA") to the Nuigini Fishing Company and to Tsuguo Utsumi, the master of the Vessel. The NOVA demanded the payment of a civil penalty for the illegal fishing activity within the United States EEZ. In the process of negotiating and signing a settlement with NOAA, a shipping agent, who expressed that he represented the vessel's owner, informed NOAA that the NIUGINI 103 had been renamed as the **KOO'S 103**, the owner of the vessel was Mr. KOO and the KFC, and that the vessel was currently based in the RMI. Further, the agent, on behalf of Mr. KOO and the KFC, ultimately agreed to pay the United States Government $50,000.00 (U.S. dollars) to settle the case.

    c. The **KOO'S 108** FFA vessel registration application lists the KOO'S Fishing Company (KFC), a Marshall Islands corporation. The **KOO'S 108** is currently negotiating a settlement for an alleged violation in January of 2004.

    d. During the interview of Dike Poznanski, who was an official Observer for the Forum Fisheries Agency (FFA) serving on the **KOO'S 108** when it allegedly violated U.S. sovereignty by illegally fishing in the U.S. EEZ at Howland and Baker in 2004, informed SA Pollack of the following:

        i. The KFC is owned by Mr. KOO, and Mr. KOO lives in Taiwan.

        ii. The KFC had six Vessels based out of RMI, and they were the **KOO'S 101, 102, 103, 106, 107, and the 108**.

        iii. The KFC is a Taiwanese company.

    e. On a Taiwanese Government Information Office website, observed by NOAA Special Agent Pollack, on or about August 24, 2005, KWANG-MING KOO was listed as a national policy advisor to the Taiwanese President from the year 2000, and also as the chairman for the KFC from 1996. Further, an address provided on the website for KWANG-MING KOO was materially the same address as that provided for KWANG-MING KOO on the FFA Vessel registration application for the KOO'S 103 (aka Nuigini 103).

## VI. CONCLUSION

17. Based on the information contained herein, I believe there is probable cause to support the issuance of an arrest warrant, under 16 U.S.C. §1861, to arrest the **Marshalls 201**, including the Vessel's fishing gear, furniture, appurtenances, stores, cargo, electronic and documentary records, and catch of fish for violating 16 U.S.C. § 1857(2)(B) (Foreign Fishing Vessel Engaged in Fishing within the United States EEZ without a Valid and Applicable Permit) and 16 U.S.C. § 1857(4)(A) & (B) (failure to have gear stowed where it can not be readily used for fishing).

FURTHER THIS AFFIANT SAYETH NOT.

JOHN BARYLSKY
Special Agent, NOAA OLE

SUBSCRIBED and SWORN to before me on this 2nd day of September, 2006.

CARMELLETA Q. SAN NICOLAS
Notary Public
In and for Guam, U.S.A.
My Commission Expires: Aug. 15, 2010
Sirena Plaza, Ste. 500,
108 Hernan Cortez Avenue
Hagatna, Guam 96910