DANIEL J. BERMAN
BERMAN O'CONNOR & MANN
Suite 503, Bank of Guam Building
111 Chalan Santo Papa
Hagåtña, Guam 96910
Telephone: (671) 477-2778
Facsimile: (671) 477-4366

JAMES P. WALSH (PRO HAC VICE)
DAVIS WRIGHT TREMAINE LLP
505 Montgomery Street, Suite 800
San Francisco, CA 94111-6533
Tel: (415) 276-6556
Fax: (415) 276-6599

Attorneys for Defendant and Claimant:
*MARSHALLS 201 and MARSHALL
ISLANDS FISHING COMPANY*

**FILED**
DISTRICT COURT OF GUAM

OCT 29 2007

JEANNE G. QUINATA
Clerk of Court

## UNITED STATES DISTRICT COURT

## FOR THE TERRITORY OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA, | CIVIL CASE NO. 06-00030 |
| Plaintiff, | |
| vs. | |
| MARSHALLS 201, | **CLAIMANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |
| Defendant. | |

### BACKGROUND FACTS

**1.     Marshal Islands Fishing Company is an Innocent Owner.**

MIFCO was incorporated and chartered within the Republic of the Marshall Islands on February 28, 2006. *See*, Declaration of Eugene Muller, Manager, Marshall Islands Fishing Company (herein "Muller"), ¶3; also, Charter of MIFCO, Republic of the Marshall Islands, Exhibit "A", filed herewith.   The common stock of MIFCO was distributed to the shareholders the same date. Declaration Muller, ¶4, Exhibit "B", Certificates of Stock. Ownership by conveyance of right, title

and possession to the vessel Marshalls No. 201 was complete upon delivery and execution of the Bill of Sale on February 28, 2006. *Id.* at ¶5; Bill of Sale, and, Protocol of Delivery and Acceptance, Exhibit "C".

No knowledge, actual or otherwise constructive, existed in MIFCO of any alleged illegal fishing conduct of the Master in charge or the Marshalls No. 201 prior to September 7, 8 and 9, 2006. Declaration of Muller, ¶¶6 and 7. Only after the Marshalls 201 was arrested on September 9, 2006, did MIFCO receive any information of an alleged violation of United States fishing laws. Declaration Muller, ¶8.

The President of MIFCO is Mr. Jutzu Chuang. *See* Declaration of Jutzu Chuang, President MIFCO (herein "Chuang"), ¶2. At no time prior to September 7, 8 or 9, 2006, did the President of MIFCO have any knowledge of alleged violations of United States fishing laws by the Marshalls No. 201. Chuang, ¶3. The MIFCO manager and owner are innocent of any prior knowledge of alleged illegal conduct.

### 2. No Prior Convictions and No Prior Arrests of Master Wen Yueh Lu, Vessel Marshalls No. 201 or MIFCO Exist.

At no time prior to the September 9, 2006 arrest of the Vessel Marshalls No. 201, did the Marshalls 201, its Master Wen Yueh Lu or MIFCO suffer or cause to be suffered any arrest of the Marshalls 201, its Master Wen Yueh Lu or owner MIFCO, for any reason including alleged violations of United States fishing laws. Declaration Muller, ¶9.

### 3.  MIFCO and Vessel Marshalls No. 201 Are Innocent in Fact.

A.   Master Wen Yueh Lu Testimony

On December 8, 2006, the deposition of Master of the Marshalls 201 Wen Yueh Lu was taken in Guam and cross-examination by the United States Attorney's Office was conducted. The Master of the Marshalls 201 confirmed that he had never been arrested, nor ever charged with any violation of United States law or any foreign laws. *See*, Deposition Wen Yueh Lu, December 7, 2006, pp. 9, 46, attached as Exhibit "6" to Declaration of Claimant's Counsel.

The Master of the vessel Marshalls 201 on September 9, 2006 was Wen Yueh Lu. He testified in deposition that his position on September 9, 2006 when making his set (encirclement of the fish by net) and during the time of his arrest was outside the boundary of the United States Exclusive Economic Zone ("EEZ") around Howland and Baker Islands. Depo. Wen Yueh Lu, pp. 29, 30, 36 to 39, Exhibit "9" (Map), attached thereto. On September 9, 2006, Master Wen Yueh Lu noted the ship's log with his location when he timely recorded his position in Kiribati EEZ waters when he encircled the fish with the net. Depo. Wen Yueh Lu, p. 50, Exhibit "11" (log coordinates). Wen Yueh Lu prepared an enlarged drawing that depicts his September 9, 2006 location outside the EEZ line of the USA surrounding Howland and Baker Islands. Depo. Wen Yueh Lu, pp. 36 to 39, Ex. "9" (Map); also, pp. 77, 137, Ex. "16" (drawing of location).

B.   MIFCO's Available Information.

The only contemporary information available to the Owner MIFCO on the location of the Marshalls 201 are once a week voyage report summaries, issued at the end of every seven days. Declaration Muller, ¶7. The Vessel Monitoring System ("VMS") information reports the ship's position and is collected once a day in Singapore, and relayed back to Majuro, and received by MIFCO's Manager Eugene Muller, once a week. *Id.* There is no possibility, within the owner and

manager of MIFCO's knowledge, prior to September 7, 8 or 9, 2006, that allegations of U.S. fishing law violations existed. *Id.* Even if MIFCO had inquired hourly, only representations of innocence of Master Wen Yueh Lu would have been obtained. *Id.*

No dispute exists that as of September 7, 8 and 9, 2006, MIFCO's knowledge and opinion of the Marshalls 201 location, is only that no violation of law occurred. Declaration Muller, ¶¶6, 7 and 8. The reason for MIFCO's sincere belief in its innocence as the owner rests on the vessel's Master Wen Yueh Lu opinion and log of his September 9, 2006 location; and, an absence of any other inculpatory facts within MIFCO's knowledge.

### 4. MIFCO Terminated the Master of the Marshalls 201 Wen Yueh Lu upon Receipt of Notice of this Case.

No dispute exists that upon receipt of notice by MIFCO of the alleged violations of United States law and the arrest of the vessel Marshalls 201, MIFCO terminated the employment of Master Wen Yueh Lu. Depo. Wen Yueh Lu, pp. 7, (jobless now), 48 (fired), 78 (no longer working for MIFCO); Declaration Muller, ¶11, *also*, Exhibit "D", Resolution and Minutes April 16, 2007 (ratification of termination of Captain Lu on October 13, 2006). The former Master of the Marshalls 201 Wen Yueh Lu remains not employed by MIFCO and he will not be available as a witness in any case in the United States. Declaration Muller, ¶10.

MIFCO provides warnings and notice to its Masters not to violate United States fishing laws and issued a written policy statement by Directors' Resolution of the Board of Directors of MIFCO dated April 16, 2007. Exhibit "D", MIFCO, Resolution and Minutes. MIFCO took appropriate and reasonable steps to minimize and prevent allegations of violations of the United States fishing laws regarding its Exclusive Economic Zone around Howland and Baker Islands, both by termination of Master Wen Yueh Lu and the issue of U.S. published EEZ maps, together with preliminary verbal notice/warning to Master Wen Yueh Lu to fish only in authorized EEZ waters.

### 5.    Precautions of MIFCO Against Any Violations of United States Law.

Prior to September 7, 8 and 9, 2006, the owner of the Marshalls 201, MIFCO, did not know that Master Wen Yueh Lu would use the Marshalls 201 to allegedly fish in the United States' Exclusive Economic Zone outside the Howland and Baker Islands. Declaration Muller, ¶¶6, 7 and 8. MIFCO had no reason to know that Master Wen Yueh Lu may be charged or arrested for a violation of the United States laws against unlicensed fishing in its EEZ.

MIFCO has always taken, and takes now, substantial and reasonable steps to prevent any violations of the United States fishing laws. Declaration E. Muller, ¶12. Specifically, in advance of the Marshalls 201 September 2006 voyage, MIFCO provided the Master of its Marshalls 201 with the Maps of the Exclusive Economic Zone of the United States and other Pacific Island nations; Deposition Wen Yueh Lu, p. 22, Exhibit "4". Declaration J. Chuang, ¶5; Declaration E. Muller, ¶ 13. The Masters of the Marshalls 201 were orally warned by the owner not to violate any Exclusive Economic Zones in use of the Marshalls 201 vessel. Deposition Wen Yueh Lu, p. 48 (admits verbally warned); Declaration J. Chuang, ¶4; Declaration Muller, ¶14. MIFCO's policy to not fish without duly authorized permits in any Exclusive Economic Zones is in writing and adopted by Resolution of the Board of Directors of MIFCO. Declaration Muller, ¶11; Resolution and Minutes MIFCO dated April 16, 2007, attached Exhibit "D".

### 6.    MIFCO's Conduct of Corporate Business.

MIFCO has been issued a Corporate Charter from the Government of the Republic of Marshall Islands. Exhibit "A". MIFCO is owned by two shareholders known as the Marshall Islands Marine Resources Authority ("MIMRA") and Koo's Fishing Company. Declaration E. Muller, ¶3. The stock was issued and distributed by certificates. Declaration E. Muller, ¶4, Stock Certificates, Exhibit "B", attached. Meetings of the Board of Directors and Shareholders are duly

recorded in writing. Declaration E. Muller, ¶11. MIFCO is not a partnership between MIMRA and Koo's Fishing Company. Declaration E. Muller, ¶20; Exhibit "F", Joint Venture Agreement, dated May, 2005, p. 7, ¶26.

On February 28, 2006, the right, title and possession to the vessel Marshalls 201 was conveyed in writing to MIFCO from the seller. Declaration E. Muller, ¶5; Exhibit "C", Bill of Sale, Protocol of Delivery and Acceptance. After the seller conveyed the vessel Marshalls 201 to MIFCO, the Republic of Marshall Islands Government issued appropriate registrations, permits and licenses for the Marshalls 201 to conduct its fishing business in the Pacific Ocean. Declaration E. Muller, ¶16, Permits and Licenses, collectively attached as Exhibit "E".

The MIFCO purpose, and in fact its conduct, is to encourage Marshallese' citizens to immerse themselves in their own fishing industry, instead of merely supervising the issue of fishing permits to foreign vessels whose owners are located within the United States, Japan, Russia and the Republic of China. Declaration Muller, ¶21. Vessel Marshalls 201 functions as a school providing an education to young Marshallese men training in the contemporary business of tuna fishing. Declaration Muller, ¶22.

Mr. Muller's duties include acquisition and purchase of fuel, food and provisions for all fishing vessels; the employment of local Marshallese on board the fishing vessels, who have a 90% retention rate for work on subsequent voyages of the fishing vessels; and, receipt and distribution of once a week voyage report summaries from the vessel's operation. *Id.* at ¶23. Manager Mr. Muller is responsible for the renewal of vessel fishing permits and registrations. *Id.* at ¶24. And, Mr. Muller reports fishing and catch information from MIFCO to the marine and fish regulatory authorities with the Marshall Islands and FSM Governments and Forum Fisheries Authority in Honiara, Solomon Islands. *Id.* at ¶25. MIFCO and Mr. Muller's once a week receipt and distribution of weekly vessel voyage report summaries are reasonable and standard in the industry

of commercial fishing by purse seine vessels in the Pacific Ocean. Declaration Muller, ¶26.

### 7.    The Fish Caught by Marshalls 201 on September 9, 2006.

The United States requested and claimant MIFCO paid a $2,950,000.00 bond for the release of the Marshalls 201's arrest together with its fish catch. Declaration Muller, ¶27. The United States' estimate of market value for the vessel Marshalls 201 was equivalent to $2,600,000.00 and the fish catch in the hold was at most $350,000.00. Id. ¶28; Captain Unterburg Report, p. 17, ¶C, Exhibit "H", attached. At the time of arrest, the total fish on board was 500 metric tons. Id. at ¶29. Captain Unterburg Report, p. 17, ¶C, Exhibit "H". MIFCO claims that the 500 metric tons cannot be forfeited pursuant to CAFRA, as MIFCO is the Innocent Owner of the fish caught in Kiribati waters.

## POINTS AND AUTHORITIES

## I.    SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure authorizes entry of summary judgment:

> ...if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The moving party bears the burden of showing the Court those portions of the pleading, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, which it believes demonstrate the absence of an issue of material fact. *See, Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d. 265 (1986). This is not to say that the moving party must negate each element of the non-moving party's case. *Lujan v. National Wildlife Federation*, 497 U.S. 871, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1986). The moving party satisfies and discharges its

burden by showing the Court the absence of evidence to support the non-moving party's case. *Celotex*, 106 S.Ct. 2548, 2554 (1986).

Once the lack of evidence is established, it is the non-moving party's duty to come forward with specific facts showing there is a genuine issue for trial. *Celotex*, 106 S.Ct. 2548, 2554 (1986). Note also that the nonmoving party in a motion for summary judgment may not rely on unsupported or conclusory allegations of his/her pleading without any significant probative evidence tending to support the complaint. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

Ultimately, if the non-moving party, after adequate time for discovery, "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial", Rule 56(c) mandates an entry of summary judgment. *Celotex*, 106 S.Ct. 2548, 2552 (1986); *Lujan*, 497 U.S. 871, 884 (1990). Under those circumstances, "there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element renders all other facts immaterial". *Celotex*, 106 S.Ct. 2548, 2552 (1986). Consequently, the moving party, in such cases, is entitled to judgment as a matter of law. *Id.*

"[T]his standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *U.S. v. 2001 Honda Accord EX VIN #1HGCG22561A035829*, 245 F. Supp. 2d 602, 605 (M.D. Pa. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

## II.    THE CIVIL ASSET FORFEITURE REFORM ACT ("CAFRA").

### A.    BACKGROUND OF CAFRA.

CAFRA was enacted in 2000 with the stated purpose of "increas[ing] the due process

safeguards for property owners whose property has been seized." H.R. Rep. No. 106-192 at 2 (1999), attached Exhibit "I" to this Memoranda. *See also U.S. v. Schlesinger*, 396 F. Supp. 2d 267, 276 (E.D.N.Y. 2005) (The reforms to the civil forfeiture scheme brought about by CAFRA "brought the due process protection afforded to civil defendants in line with criminal forfeiture proceedings.").

Prior to CAFRA, civil forfeiture was governed by a variety of different federal statutes. One of the key goals of CAFRA was the creation of a uniform system for civil forfeitures. As described in the legislative history, CAFRA included eight major reforms to the civil forfeiture system. Most relevant, to the case at hand, are four reforms:

> (1)    it created a uniform innocent owner defense (some prior forfeiture statutes had included various iterations of an innocent owner defense);
>
> (2)    it allowed for return of property upon a showing of hardship;
>
> (3)    it allowed a claimant to seek compensation for damage to property while in the government's possession;
>
> (4)    it eliminated the cost bond requirement;

*See* H.R. Rep. No. 106-192 (1999). *See also* Cong. Rec. H2047 (April 11, 2000), pp. 25-26 of 45, attached Exhibit "J".

## B.    COVERAGE OF CAFRA.

By its plain language, CAFRA applies to all "civil forfeiture statutes," and defines such statutes as "any provision of Federal law providing for the forfeiture of property other than as a sentence imposed upon conviction of a criminal offense." 18 U.S.C. § 983(i)(1). After setting forth this broad statement of its scope, CAFRA then excludes from its definition of "civil forfeiture statutes" the following: "(A) the Tariff Act of 1930 or any other provision of law codified in title 19; (B) the Internal Revenue Code of 1986; (C) the Federal Food, Drug, and Cosmetic Act (21 U.S.C. 301 et seq.); (D) the Trading with the Enemy Act (50 U.S.C. App. 1 et seq.) or the International

Emergency Economic Powers Act (IEEPA) (50 U.S.C. 1701 et seq.); or (E) section 1 of title VI of the Act of June 15, 1917 (40 Stat. 233; 22 U.S.C. 401)." 18 U.S.C. § 983(i)(2).

One question raised by the Marshalls 201 case is whether the reference in the Magnuson-Stevens Act to the customs laws (Title 19) brings the Act within the exclusions to CAFRA? The short answer is no. Forfeitures under the Magnuson-Stevens Act are governed by CAFRA and are not excluded based on the CAFRA exclusion for forfeitures under the customs laws.

The Magnuson-Stevens Act provides, "The provisions of the customs laws relating to (1) the seizure, forfeiture, and condemnation of property for violation of the customs law; (2) the disposition of such property or the proceeds from the sale thereof; and (3) the remission or mitigation of any such forfeiture shall apply to seizures and forfeitures incurred, or alleged to have been incurred, under the provisions of this chapter, unless such provisions are inconsistent with the purposes, policy, and provisions of this chapter." 16 U.S.C. § 1860(c).

The case law interpreting and applying CAFRA confirms a plain reading of the statutory language: that the exclusions apply only to the specific statutes listed. *See, e.g. U.S. v. 144,774 Pounds of Blue King Crab*, 410 F.3d 1131, 1134 (9th Cir. 2005) (explaining that CAFRA applies to "all civil forfeitures under federal law unless the particular forfeiture statute is specifically exempted in 18 U.S.C. § 983(i)(2)").

The Department of Justice Asset Forfeiture Policy Manual (January 2006) (herein "DOJ Manual") is not binding authority, but the Manual is persuasive in its note that, "The reforms enacted by CAFRA are applicable to all civil forfeitures taken under any provision of federal law except for those specifically exempted by 18 U.S.C. § 983(i). ... The only forfeitures to which section 983 does not apply are those specified in section 983(i)." *See* DOJ Manual at 39, attached Exhibit "K" to this Memorandum. Importantly, in a footnote the DOJ Manual states, "The reference to forfeitures commenced under Title 19 is to cases in which Title 19 provides the substantive basis for the forfeiture, not cases in which the procedures in Title 19 are incorporated into other forfeiture statutes.

See, e.g. 18 U.S.C. § 981(d)." *Id.* at 39, n.46. This latter situation describes the reference to the customs laws in the Magnuson-Stevens Act.

Although there does not appear to be case law specifically addressing whether CAFRA applies to forfeitures under the Magnuson-Stevens Act, there is case law confirming the statements in the DOJ Manual and applying CAFRA to other federal statutes that includes language regarding the applicability of the customs laws to forfeiture. For example, 21 U.S.C. § 881 is the forfeiture provision of the federal Controlled Substances Act. It provides for forfeiture of various types of property related to the manufacture, possession, and distribution of illegal drugs. See 21 U.S.C § 881(a).

Similar to the provision in the Magnuson-Stevens Act, Section 881(d) provides that, "The provisions of law relating to the seizure, summary and judicial forfeiture, and condemnation of property for violation of the customs laws; the disposition of such property or the proceeds from the sale thereof; the remission or mitigation of such forfeitures; and the compromise of claims shall apply to seizures and forfeitures incurred, or alleged to have been incurred, under any of the provisions of this subchapter, insofar as applicable and not inconsistent with the provisions hereof . . . ." Notwithstanding this language and the customs law exclusion within CAFRA, courts have held consistently that CAFRA applies to forfeitures under 21 U.S.C. § 881. *See e.g.*, *U.S. v. Dodge Caravan Grand/SE Sport Van, VIN #1B4GP44G2YB7884560*, 387 F.3d 758, 761 (8th Cir. 2004) (holding forfeiture under 21 U.S.C. § 881(a)(4) "subject to the standards set forth in the Civil Asset Forfeiture Reform Act"); *U.S. v. $84,615 in U.S. Currency*, 379 F.3d 496, 501 (8th Cir. 2004) (applying CAFRA to forfeiture under Section 881).

The DOJ Manual also notes that forfeitures under Section 881 are covered by CAFRA and not included in the customs exclusion and that, "Most civil forfeiture statutes authorize the seizing agency to forfeit seized property administratively in accordance with the Customs laws. See, e.g. 18 U.S.C. § 981(d) and 21 U.S.C. § 881(d) (incorporating the provisions of 19 U.S.C. § 1602 et seq.

into the civil forfeiture statutes)." DOJ Manual at 40, 54.

Also instructive is the Lacey Act, 16 U.S.C. §§3371 to 3378, which like the Magnuson-Stevens Act, contains language incorporating the customs laws. It provides, "All provisions of law relating to the seizure, forfeiture, and condemnation of property for violation of the customs laws, the disposition of such property or the proceeds from the sale thereof, and the remission or mitigation of such forfeiture, shall apply to the seizures and forfeitures incurred, or alleged to have been incurred, under the provisions of this chapter, insofar as such provisions of law are applicable and not inconsistent with the provisions of this chapter ... ." 16 U.S.C. § 3374(b). In *U.S. v. 144,774 Pounds of Blue King Crab*, 410 F. 3d 1131, crab had been forfeited under the Lacey Act. Without any suggestion that the Lacey Act might be excluded from CAFRA under the customs law exclusion, the court examined the applicability of the innocent owner defense under CAFRA and thus implicitly found that forfeitures under the Lacey Act are covered by CAFRA. *Id.*

CAFRA's application to other forfeiture laws that incorporate the customs law procedures for forfeitures, combined with the plain language of CAFRA, strongly support the finding that CAFRA applies to requests for forfeitures under the Magnuson-Stevens Act.

### III.     INNOCENT OWNER DEFENSE UNDER CAFRA.

#### A.     Requirements for Innocent Owner Defense.

One of the main reforms brought about by CAFRA was to create a uniform innocent owner defense. This defense provides that, "An innocent owner's interest in property shall not be forfeited under any civil forfeiture statute." 18 U.S.C. § 983(d)(1). A person claiming to be an innocent owner must prove that they meet the statutory requirements "by a preponderance of the evidence." 18 U.S.C. § 983(d)(1). *See also* H.R. Rep. No. 106-192 at 18 (1999) ("a property owner would still have the burden of proving affirmative defenses, such as the 'innocent owner' defense, by a preponderance of the evidence.").

Under CAFRA, the term "owner" is defined, in relevant part, at "(A) means a person with an ownership interest in the specific property sought to be forfeited, including a leasehold, lien, mortgage, recorded security interest, or valid assignment of an ownership interest; . . . 18 U.S.C. § 983(d)(6). Thus, "when a claimant seeks the protection of the innocent owner defense he or she must make a preliminary showing of his or her ownership interest defined by the statute under which it seeks relief before going forward." *U.S. v. 74.05 Acres of Land*, 428 F. Supp. 2d 57, 65 (D. Conn. 2006)

The innocent owner defense includes provisions for both owners who had an interest in the property prior to the illegal conduct and those who acquired an interest in the property after the illegal conduct. This prong of the defense defines an innocent owner as "an owner who-(i) did not know of the conduct giving rise to forfeiture; or (ii) upon learning of the conduct giving rise to the forfeiture, did all that reasonably could be expected under the circumstances to terminate such use of the property." 18 U.S.C. § 983(d)(2)(A). Notably, this is a disjunctive test: either not knowing or taking reasonable steps upon learning of the conduct is sufficient. To show that they took reasonable steps upon learning of the conduct giving rise to the forfeiture, an owner may show that they "(I) gave timely notice to an appropriate law enforcement agency of information that led the person to know the conduct giving rise to a forfeiture would occur or has occurred; and (II) in a timely fashion revoked or made a good faith attempt to revoke permission for those engaging in such conduct to use the property or took reasonable actions in consultation with a law enforcement agency to discourage or prevent the illegal use of the property." 18 U.S.C. § 983(d)(B)(i).

The legislative history of CAFRA explains that the innocent owner defense is "designed to provide such a defense for all federal civil forfeiture, to make that defense uniform, and to ensure that it offers protection in all appropriate cases....". H.R. Rep. No. 106-192 at 20 (1999). "Thus, a safe harbor is created for an owner who notifies police and revokes or attempts to revoke (to the extent permitted by law) permission to use the property by those who are using it in the course of

criminal activity. The owner's obligations end right there-property owners should not have to assume the responsibilities of police to stop crime." *Id.* at 21. As further explained later in the House Report, "the property owner is not required to take every conceivable action which could be considered reasonable, but only to take actions which are in total a reasonable response to the conduct giving rise to the forfeiture. In determining what is a reasonable response, the economic situation of the property owner (and his business, if applicable) should be taken into account." H.R. Rep. No. 106-192 at 30 (1999).

## IV. SUMMARY JUDGMENT IS PROPER BECAUSE MARSHALL ISLANDS FISHING COMPANY IS AN INNOCENT OWNER.

Under the statutory framework of CAFRA, even if the government meets its preponderance of the evidence requirement regarding the seizure of the property, "it does not necessarily follow that the forfeiture is warranted" in light of the innocent owner defense. *United States v. OUL located at Urbanizacion Lomas de Carolina, Montemembrillo, G-2, Carolina, Puerto Rico,* 2007 WL 1411740 * 2 (D. Puerto Rico 2007). As will be discussed below, MIFCO should be awarded summary judgment because the uncontroverted facts support its innocent owner defense.

### A. MARSHALL ISLANDS FISHING COMPANY HAS STANDING TO ASSERT THE AFFIRMATIVE DEFENSE OF INNOCENT OWNER.

Under CAFRA, in order to properly assert the affirmative defense of innocent owner, the third-party claimant must initially establish that it has standing to assert the defense by demonstrating that it has ownership interest of the seized property. In the case at bar, it is undisputed that MIFCO has standing to assert the defense because the evidence demonstrates that it had and continues to have ownership interest over the seized vessel, Marshalls 201.

MIFCO is owned by two shareholders known as the Marshall Islands Marine Resources Authority ("MIMRA") and Koo's Fishing Company. Declaration Muller, ¶4. The stock evidencing

ownership was issued and delivered by certificates. Exhibit "B", Stock Certificates. MIFCO was incorporated and chartered within the Republic of the Marshall Islands on February 28, 2006. *See,* Declaration of Eugene Muller, ¶3, Exhibit "A", Corporate Charter, filed herewith. Meetings of the Board of Directors and Shareholders are duly recorded in writing. Declaration Muller, ¶11; Exhibit "D", Minutes and Resolution, dated April 16, 2006. MIFCO is not a partnership between MIMRA and Koo's Fishing Company. Declaration E. Muller, ¶20; Joint Venture Agreement, p.7, ¶26, Exhibit "F".

On February 28, 2006, the right, title and possession to the vessel Marshalls 201 was conveyed by lawful written instrument to MIFCO from Seller. Declaration E. Muller, ¶5, Exhibit "C", Bill of Sale and Protocol of Delivery and Acceptance. After the seller conveyed the vessel Marshalls 201 to MIFCO, the Republic of Marshall Islands Government issued appropriate permits and licenses for the Marshalls 201 to conduct its fishing business in the Pacific Ocean. Declaration E. Muller, ¶16, Exhibit "E". Accordingly, ownership and transfer of right, title and possession to the vessel Marshalls No. 201 was complete upon delivery and execution of the Deed on February 28, 2006. Exhibit "C". Prior to, during, and after the vessel's seizure, MIFCO had and holds ownership of the seized property.

> **B.      MARSHALL ISLANDS FISHING COMPANY DID NOT HAVE KNOWLEDGE OF THE CONDUCT GIVING RISE TO THE FORFEITURE AND TOOK REASONABLE STEPS.**

As noted above, an innocent owner is one who can establish that "(i) it did not know of the conduct giving rise to forfeiture; *or* (ii) upon learning of the conduct giving rise to the forfeiture, did all that reasonably could be expected under the circumstances to terminate such use of the property." 18 U.S.C. § 983(d)(2)(A) (emphasis added). Under this disjunctive framework, a successful claimant asserting the innocent owner defense must demonstrate that it can meet only one of the two requirements. Even if the facts are reviewed in the light most favorable to the Government, MIFCO

can clearly establish that it did not have knowledge of the alleged illegal act resulting in the seizure of Marshalls 201, and that it took reasonable steps under the circumstances to end the alleged criminal act.

### i. MIFCO Did Not Have Knowledge of The Criminal Activity.

Cases applying the construct of the innocent owner defense under CAFRA have either applied the constructive or the actual knowledge tests. In the pre-CAFRA ninth circuit case of *U.S. v. Real Property at 2659 Roundhill Dr.*, 194 F.3d 1020 (9th Cir. 2002), the court discussed that "[m]ost courts apply of actual, rather than constructive, knowledge, with one proviso: an owner cannot deliberately avoid actual knowledge through 'willful blindness.'" *Id.* at 1048. Notwithstanding the above, the court nonetheless adopted the constructive knowledge standard.

In comparison, the actual knowledge test was applied in the post-CAFRA case of *United States v. 2001 Honda Accord*, 245 F.Supp.2d 602 (N.J. Tenn. 2003), where an innocent owner of a car allegedly used in the sale of drugs (MDMA) was granted summary judgment as against the Government. The analysis in *United States v. 2001 Honda Accord*, 245 F.Supp.2d 602 (N.J. Tenn. 2003) is more in line with CAFRA policy and more recent in Federal Court's interpretation. In the *2001 Honda Accord* case, the son of the innocent owner asked his mother, the owner, if he could use her car to drive his girlfriend to Pennsylvania where she lived. She did not know that her son had arranged to deliver 1,000 ecstasy tablets to an undercover trooper... The mother had no knowledge that her son was going to use her car for any alleged trafficking in ecstasy or any other controlled substance. *Id.* at 611-612. The Government failed to prove any complicity on the mother's part, and her son's illegal activities that would suggest the mother knew that the Honda was being used in drug transactions. *Id.* at 612. The mother's Innocent Owner motion for summary judgment was granted. *Id.*

The Tennessee District Court wrestled with what constitutes knowledge for purposes of the

innocent owner defense in *U.S. v. 2001 Honda Accord EX VIN #1HGCG22561A035829*, 245 F. Supp. 2d 602 (M.D. Pa. 2003). The court found that the burden was on the claimant to prove absence of actual knowledge. <u>Id.</u> at 611. "(T)his inquiry does not turn on the claimant's constructive knowledge." *See, U.S. v. Premises known as 2639 Meetinghouse Road, Jamison PA*, 633 F.Supp. 979 (E.D. Pa. 1986). The Court recited the innocent owner test from Section 983(d)(2)(A) and noted that "[s]ince the Third Circuit has not yet addressed what constitutes 'knowledge' under CAFRA, we will continue to apply the 'actual knowledge' test." *Id.* at 611. The Court then examined the uncontradicted evidence presented by the owner that she did not know of the drug sale and was not complicit in it and concluded that the claimant was an innocent owner entitled to recover the Honda. *Id.* at 612. The Court specifically noted that the innocent owner defense as it existed in the pre-CAFRA Controlled Substances Act precluded "willful blindness" by the owner and that such a concept was included in the definition of actual knowledge, whereas the CAFRA innocent owner defense does not have a reference to "willful blindness." *Id.* at 611 n.8. Accordingly, the perhaps more liberal standard employed in the *2001 Honda* case was nonetheless quite consistent with CAFRA, in holding the Government to a strict standard of actual knowledge.

Under the facts of this case, no knowledge, actual or otherwise constructive, could be imputed towards MIFCO of any alleged illegal conduct of the Master in charge or the Marshalls No. 201 between September 7, 8 and 9, 2006. Declaration of Muller, ¶¶6, 7 and 8.

First, the MIFCO manager and owner are innocent of any knowledge of the alleged wrongdoing. The Manager MIFCO Eugene Muller had no prior or then-present knowledge as of September 9, 2006 of the alleged violations of United States law by the Master in charge or Marshalls No. 201. Declaration of Muller, ¶¶6 and 7. Only after the Marshalls 201 was arrested on September 9, 2006, did MIFCO receive any information of an alleged violation of United States law. Declaration Muller, ¶8. In addition, at no time prior to September 9, 2006, did the President of MIFCO, Mr. Jutzu Chuang, or its shareholders have any knowledge of the alleged violations of the

United States law by the Marshalls No. 201. Declaration of Chuang, ¶3.

Second, MIFCO had no reason to suspect that any illegal conduct was going to occur because there had been no prior arrests or convictions of either Captain Wen Yueh Lu, Vessel Marshalls No. 201 or MIFCO. In essence, even under the constructive knowledge analysis, there was no knowledge that "puts the owner on notice that he should inquire further." *U.S. v. Real Property at 2659 Roundhill Dr.*, 194 F.3d 1020, 1028 (9th Cir. 2002). At no time prior to the September 9, 2006 arrest of the Vessel Marshalls No. 201, did the Marshalls 201, its Master Wen Yueh Lu, or MIFCO suffer or cause to be suffered any prior arrest of vessel, its Master Captain Lu or owner MIFCO for any reasons including alleged violations of United States law. Declaration Muller, ¶9.

On December 8, 2006, the deposition of Master of the Marshalls 201 Wen Yueh Lu was taken in Guam and cross-examination by the United States Attorney's Office was conducted. The Master of the Marshalls 201 confirmed that he had never been arrested, nor ever charged with any violation of United States law or any foreign laws. *See*, Deposition Wen Yueh Lu, December 8, 2006, pp. 9, 46, attached as Exhibit "6" to Declaration of Claimant's Counsel.

Third, the once a week voyage summary reports received by MIFCO regarding the ship's status, did not place the owner and manager of MIFCO on any notice that a violation of U.S. law would occur prior to September 9, 2006. The only information available to the Owner MIFCO are the once a week reports, issued at the end of each seven day period. Declaration Muller, ¶7, Exhibit "G" Voyage Weekly Report. The Vessel Monitoring System ("VMS") information on ship's position is collected once a day in Singapore, and relayed back to Majuro, to be received by MIFCO's Manager Eugene Muller, only once a week. *Id.*, also Exhibit "G". Even if MIFCO had inquired hourly, only representations of innocence of Captain Wen Yueh Lu would have been obtained. *Id.* MIFCO and Mr. Muller's receipt and distribution of weekly vessel voyage report summaries are reasonable and standard in the industry of commercial fishing by purse seine vessels

in the Pacific Ocean. Declaration E. Muller, ¶26.

Fourth, MIFCO has always taken, and takes now, substantial and reasonable steps to prevent any violations of the United States fishing laws. Declaration E. Muller, ¶12. Specifically, MIFCO provided the Master of its Marshalls 201 Maps of the Exclusive Economic Zone of the United States and other Pacific Island nations; Declaration J. Chuang, ¶5; Declaration E. Muller, ¶13. The Masters of the Marshalls 201 were orally warned by the owner not to violate any Exclusive Economic Zones by use of the Marshalls 201 vessel. Declaration J. Chuang, ¶4; Declaration Muller, ¶14. MIFCO's policy to not violate any Exclusive Economic Zones is in writing and adopted by resolution of the Board of Directors of MIFCO. Declaration Muller, ¶11; Resolution and Minutes of MIFCO dated April 16, 2007, attached Exhibit "D". No facts suggest that the owner or manager of MIFCO should have exercised more inquiries based on this record. Based on the uncontroverted facts above, neither MIFCO, its owners, or manager had actual or constructive knowledge of Master Wen Yueh Lu's alleged illegal fishing activity that would result in the seizure of Marshalls 201.

### ii.    Upon Learning of The Conduct Giving Rise to This Disputed Claim for Forfeiture, MIFCO Undertook All Reasonable Acts Expected under The Circumstances to Terminate the Use of the Property

Under the second alternative prong of CAFRA's innocent owner framework, MIFCO undertook all reasonable acts expected under the circumstances to terminate the use of the property upon learning of the conduct giving rise to the forfeiture.

First, MIFCO terminated the Master of the Marshalls 201, Wen Yueh Lu upon receipt notice of this case. No dispute exists that upon receipt of notice by MIFCO of the alleged violations of United States law and the arrest of the vessel Marshalls 201, MIFCO terminated the employment and services of Master Wen Yueh Lu. Depo. Wen Yueh Lu, pp. 7, 48, 78; Declaration E. Muller, ¶ 11. The former Master of the Marshalls 201 Wen Yueh Lu remains not employed by MIFCO and will

not be available as a witness in any case in the United States. Declaration of E. Muller, ¶10. This termination clearly reflects that MIFCO "in a timely fashion revoked or made a good faith attempt to revoke permission for those engaging in such conduct." 18 U.S.C. § 983(d)(B)(i)(II).  Second, MIFCO took appropriate and reasonable steps to minimize and prevent the allegations of violations of the United States law regarding its Exclusive Economic Zone around Howland and Baker Islands by the termination of Master Wen Yueh Lu. Upon receipt of notice of even alleged violations, MIFCO provided warnings and notice to its new Master not to violate United States laws and issued a written policy statement by Resolution dated April 16, 2007 of the Board of Directors of MIFCO ratifying his October 13, 2006 termination. Declaration E. Muller, ¶11, Exhibit "D".

Based on the above, summary judgment should be granted in favor of MIFCO because the record reflects that it is an innocent owner.

## CONCLUSION

MIFCO requests that the Court apply CAFRA to the instant undisputed material facts, and based on CAFRA, the Court should grant the motion for summary judgment against the United States. The Bond of $2,950,000.00 together with accumulated interested should be ordered released and returned to the innocent owner claimant Marshall Islands Fishing Company, Claimant herein.

Dated: **OCT. 29, 2007**

DANIEL BERMAN
BERMAN O'CONNOR & MANN
Suite 503, Bank of Guam Building
111 Chalan Santo Papa
Hagatna, Guam 96910

JAMES P. WALSH (PRO HAC VICE)
DAVIS WRIGHT TREMAINE LLP
505 Montgomery Street, Suite 800
San Francisco, California, 94111

Counsel for Defendant MARSHALLS 201 and Claimant MARSHALL ISLANDS FISHING COMPANY

E:\Jean\Plds\DJB\Marshalls\Memo Summ Jgmnt(edit) II.wpd

Page 20

# TABLE OF AUTHORITIES

**Cases**                                                                                           **Page**

*Anderson v. Liberty Lobby, Inc.*
477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) ..................... 7, 8

*Celotex Corp. v. Catrett*
477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d. 265 (1986) ................................ 7

*Lujan v. National Wildlife Federation*
497 U.S. 871, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1986) ............................... 7

*U.S. v. 2001 Honda Accord EX VIN #1HGCG22561A035829*
245 F. Supp. 2d 602, 605 (M.D. Pa. 2003) ........................................ 8, 15

*U.S. v. Schlesinger*
396 F. Supp. 2d 267, 276 (E.D.N.Y. 2005) ........................................ 8

*U.S. v. 144,774 Pounds of Blue King Crab*
410 F.3d 1131, 1134 (9th Cir. 2005) ............................................. 9, 11

*U.S. v. Dodge Caravan Grand/SE Sport Van, VIN #1B4GP44G2YB7884560*
387 F.3d 758, 761 (8th Cir. 2004) .............................................. 10

*U.S. v. $84,615 in U.S. Currency*
379 F.3d 496, 501 (8th Cir. 2004) .............................................. 10

*U.S. v. 74.05 Acres of Land*
428 F. Supp. 2d 57, 65 (D. Conn. 2006) .......................................... 12

*U.S. v. Premises known as 2639 Meetinghouse Road, Jamison PA*
633 F.Supp. 979 (E.D. Pa. 1986) ................................................ 15

*U.S. v. Real Property at 2659 Roundhill Dr.*
194 F.3d 1020 (9th Cir. 2002) ................................................. 14, 16

*United States v. OUL located at Urbanizacion Lomas
de Carolina, Montemembrillo, G-2, Carolina, Puerto Rico*
2007 WL 1411740 * 2 (D. Puerto Rico 2007) ..................................... 13

*United States v. 2001 Honda Accord*
245 F.Supp.2d 602 (N.J. Tenn. 2003) ........................................... 15

=============================================================================

## **Statutes and Other Authorities**

16 U.S.C. § 1860(c)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

16 U.S.C. § 3374(b)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

18 U.S.C. § 983(d)(B)(i)(II)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 18

18 U.S.C. § 981(d)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

18 U.S.C. § 983(d)(2)(A)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 14

18 U.S.C. § 983(i)(1)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

18 U.S.C. § 983(i)(2)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

19 U.S.C. § 1602 et seq.  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

21 U.S.C. § 881(d)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

21 U.S.C. § 881(a)(4)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Civil Asset Forfeiture Reform Act  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 10

Controlled Substances Act  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 15

Federal Food, Drug, and Cosmetic Act (21 U.S.C. 301 et seq.)  . . . . . . . . . . . . . . . . . . . . . . . 9

Internal Revenue Code of 1986  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

International Emergency Economic Powers Act (IEEPA) (50 U.S.C. 1701 et seq.)  . . . . . . . . . . 9

Lacey Act, 16 U.S.C. §§3371 to 3378  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Magnuson-Stevens Act to the customs laws (Title 19)  . . . . . . . . . . . . . . . . . . . . . . . . . 9

Section 1 of title VI of the Act of June 15, 1917 (40 Stat. 233; 22 U.S.C. 401)  . . . . . . . . . . . . 9

Tariff Act of 1930 or any other provision of law codified in title 19  . . . . . . . . . . . . . . . . . 9

Trading with the Enemy Act (50 U.S.C. App. 1 et seq.)  . . . . . . . . . . . . . . . . . . . . . . . . . 9