Years later, the government might decide to institute forfeiture proceedings against the property. Without the availability of an innocent owner defense, the inheritor would be put in the position of having to rebut the government's case that the property was forfeitable, that it had been involved in criminal activity. To do this, the inheritor would have to know what a dead person had done with the property and what was in the mind of that dead person. It is fundamentally unfair to put someone in this position. 67

[Footnote]

[*Footnote 67:* The Committee has heard testimony from the executor of an estate who was placed, along with the beneficiaries of a house, in the position of having to fight a seizure based on `an unnamed person in prison [having] told an unnamed government agent that an unnamed vessel was used by unnamed persons to offload cocaine at the home of the decedent . . . on an unspecified date in December 1988.' *1997 Hearing* at 38 (testimony of Susan Davis).]

Second, if the property is real property, the owner is the spouse or minor child of the person who committed the offense giving rise to forfeiture, and the owner uses the property as a primary residence, an otherwise valid innocent owner claim shall not be denied because the owner acquired his interest in it not through a purchase but through dissolution of marriage or by operation of law (in the case of a spouse) or as an inheritance upon the death of a parent (in the case of a minor child). However, to be considered an innocent owner, the spouse or minor child must have been reasonably without cause to believe that the property was subject to forfeiture at the time of the acquisition of his interest in the property.

# 4. RETURN OF PROPERTY UPON SHOWING OF HARDSHIP

Even should a property owner prevail in a civil forfeiture proceeding, irreparable damage may have been done to the owner's interests. For instance, if property is used as a business, its lack of availability for the time necessary to win a victory in court could have forced its owner into bankruptcy. If the property is a car, the owner might not have been able to commute to work until it was won back. If the property is a house, the owner may have been left temporarily homeless (unless the government let the owner rent the house back). In cases such as this, even when the government's case is extremely weak, the owner must often settle with the government and lose a certain amount of money in order to get the property back as quickly as possible.

The case of Michael and Christine Sandsness is instructive:

> Michael Sandsness and his wife, Christine, owned two gardening supply stores called `Rain & Shine' in Eugene and Portland, Oregon. Among the items sold were metal halide grow lights, used for growing many indoor plants. The grow lights also can be used to grow marijuana, but it is not illegal to sell them. Because some area marijuana gardens raided by [the Drug Enforcement Administration] had the lights, the agency began building a case to seize the gardening supply businesses. [T]he DEA sent undercover agents to the stores to try to get employees to give advice on growing marijuana. Unsuccessful in those efforts, the agents then engaged an employee in conversation, asking

advice on the amount of heat or noise generated by the lights, making oblique comments suggesting that they wanted to avoid detection and commenting about *High Times* magazine. They never actually mentioned marijuana. The employee then sold the agents grow lights. DEA raided the two stores, seizing inventory and bank accounts. Agents told the landlord of one of the stores that if he did not evict Sandsness, the government would seize his building. The landlord reluctantly complied. While the forfeiture case was pending, the business was destroyed. Mr. Sandsness was forced to sell the remaining unseized inventory in order to pay off creditors. 68

[Footnote]

[*Footnote 68: Forfeiting Our Property Rights* at 13.]

Current law does allow for the release of property pending final disposition of a case upon payment of a full bond. 69

[Footnote] However, most property owners do not have the resources to make use of this provision. Therefore, in order to alleviate hardship, H.R. 1658 provides that a property owner is entitled to release of seized property if a court determines that its continued possession by the government pending the final disposition of forfeiture proceedings will likely cause substantial hardship to the owner and that this hardship outweighs the risk that the property will be destroyed, damaged, lost, concealed, or transferred it if is returned during the pendency of the proceedings. The court may place such conditions on release of the property as it finds are appropriate to preserve the property's availability for forfeiture.

[*Footnote 69: See* 19 U.S.C. 1614.]

# 5. COMPENSATION FOR DAMAGE TO PROPERTY WHILE IN THE GOVERNMENT'S POSSESSION

The federal government is exempted from liability under the Federal Tort Claims Act for damage to property while detained by law enforcement officers. 70

[Footnote]

[*Footnote 70:* 26 U.S.C. 2680(c).]

Seized property awaiting forfeiture can be quickly damaged:

> Seized conveyances devalue from aging, lack of care, inadequate storage, and other factors while waiting forfeiture. They often deteriorate--engines freeze, batteries die, seals shrink and leak oil, boats sink, salt air and water corrode metal surfaces, barnacles accumulate on boat hulls, and windows crack from heat. On occasion, vandals steal or seriously damage conveyances. 71

[Footnote]

[*Footnote 71:* U.S. Comptroller Gen., U.S. Gen. Accounting Office, *Better Care and Disposal of Seized Cars, Boats, and Planes Should Save Money and Benefits Law Enforcement*, at ii (GAO/PLRD-83-94, 1983).]

It cannot be categorized as victory when a boat owner gets back, for instance, a rusted and stripped hulk of a vessel. The bill amends the Federal Tort Claims Act to allow for tort claims against the United States government based on the destruction, injury, or loss of goods, merchandise, or other property while in the possession of any law enforcement officer if the property had been seized for the purpose of forfeiture. Of course, if seized property is successfully forfeited, no claim would be allowed.

# 6. ELIMINATION OF COST BOND

Under current law, a property owner wanting to contest a seizure of property under a civil forfeiture statute must give the court a bond of the lessor of $5,000 or ten percent of the value of the property seized (but not less than $250). 72

[Footnote]

[*Footnote 72: See* 19 U.S.C. 1608.]

The bond is unconstitutional in cases involving indigents, because it would deprive such claimants of hearings simply because of their inability to pay. 73

[Footnote] Even in cases not involving indigents, the bond should not be required. It `is simply an additional financial burden on the claimant and an added deterrent to contesting the forfeiture.' 74

[Footnote] H.R. 1658 eliminates the requirement.

[*Footnote 73: See Wiren v. Eide*, 542 F.2d 757, 763 (9th Cir. 1976).]

[*Footnote 74:* Letter from David Smith to Kathleen Clark, Senate Judiciary Committee, at 5 (Aug. 19, 1992).]

# 7. ADEQUATE TIME TO CONTEST FORFEITURE

Currently, a property owner has 20 days (from the date of the first publication of the notice of seizure) to file a claim with the seizing agency challenging the government's administrative forfeiture of property. 75

[Footnote] To challenge a judicial forfeiture, the property owner has an exceedingly short 10 days (after process has been executed): 76

[Footnote]

[*Footnote 75:* 19 U.S.C. 1608.]

[*Footnote 76:* Fed. R. Civ. P. C(6)(Supplemental Rules for Certain Admiralty and

Case 1:06-cv-00030    Document 35-5    Filed 10/29/2007    Page 3 of 22

Maritime Claims)(This is the date when a U.S. court takes possession of the property through `arrest' by a federal marshal. It is not the date when it is initially seized by a law enforcement officer).]

>Even assuming that notice is published the next day after process is executed, the reader of the notice will have a mere nine days to file a timely claim. Most local rules require that notice be published for three successive weeks, on the assumption that interested parties will not necessarily see the first published notice. But by the time the second notice is published, more than ten days will have elapsed from the date process is executed. Thus anyone who misses the first published notice will be unable to comply with the exceedingly short time limitation for filing a claim. . . . 77

[Footnote]

[*Footnote 77:* David Smith, *Prosecution and Defense of Forfeiture Cases*, 9.03[1], at 9-45 (1998).]

Even though these time limits sometimes are ignored in the interests of justice, failure to file a timely claim often results in judgment in favor of the government. 78

[Footnote]

[*Footnote 78: See, e.g., United States v. Beechcraft Queen Airplane*, 789 F.2d 627, 630 (8th Cir. 1986).]

The bill provides a property owner 30 days to file a claim following both administrative and judicial forfeiture actions.

# 8. INTEREST

Under current law, even if a property owner prevails in a forfeiture action, he may receive no interest for the time period in which he lost use of his property. 79

[Footnote] In cases where money or other negotiable instruments were seized, or money is awarded a property owner, this is manifestly unfair.

[*Footnote 79:* The courts are divided on whether the government must pay interest to a successful claimant. *Compare United States v. $515,060.42 in U.S. Currency*, 152 F.3d 491, 504-06 (6th Cir. 1998)(awarding interest) *with United States v. $7,990 in U.S. Currency*, 170 F.3d 843 (8th Cir. 1999)(sovereign immunity bars awarding of interest).]

H.R. 1658 provides that upon entry of judgment for the owner in a forfeiture proceeding, the United States shall be liable for post-judgment interest on any money judgement. The United States shall generally not be liable for pre-judgment interest. However, in cases involving currency, proceeds of an interlocutory sale, or other negotiable instruments, the government must disgorge any funds representing interest actually paid to the United States that resulted from the investment of the property or an imputed amount that would have been earned had it been invested.

## HEARINGS

While no hearings were held in the 106th Congress, the Committee held one day of hearings on civil asset forfeiture reform legislation on June 11, 1997. Testimony was received from Billy Munnerlyn, E.E. (Bo) Edwards III, F. Lee Bailey, Susan Davis, Gerald B. Lefcourt, Stefan D. Cassella, Deputy Chief, Asset Forfeiture and Money Laundering Section, Criminal Division, U.S. Department of Justice, Jan P. Blanton, Director, Executive Office for Asset Forfeiture, Department of the Treasury, Bobby Moody, Chief of Police, Marietta, Georgia, and 1st Vice President, International Association of Chiefs of Police, and David Smith. Additional material was submitted by Nadine Strossen, President, American Civil Liberties Organization, and Roger Pilon, Director, Center for Constitutional Studies, CATO Institute.

## COMMITTEE CONSIDERATION

On June 15, 1999, the Committee met in open session and ordered reported favorably the bill H.R. 1658 without amendment by a recorded vote of 27-3, a quorum being present.

## VOTE OF THE COMMITTEE

Vote on final passage: Adopted 27 to 3.

| AYES | NAYS |
|---|---|
| Mr. Sensenbrenner | Mr. Bryant |
| Mr. Gekas | Mr. Hutchinson |
| Mr. Coble | Mr. Weiner |
| Mr. Smith (TX) | |
| Mr. Gallegly | |
| Mr. Canady | |
| Mr. Goodlatte | |
| Mr. Chabot | |
| Mr. Barr | |
| Mr. Jenkins | |
| Mr. Cannon | |
| Mr. Rogan | |
| Mr. Graham | |
| Mr. Scarborough | |
| Mr. Conyers | |
| Mr. Frank | |
| Mr. Berman | |
| Mr. Nadler | |
| Mr. Scott | |

| |
|---|
| Mr. Watt |
| Ms. Lofgren |
| Ms. Jackson Lee |
| Mr. Delahunt |
| Mr. Wexler |
| Mr. Rothman |
| Ms. Baldwin |
| Mr. Hyde |

## COMMITTEE OVERSIGHT FINDINGS

In compliance with clause 3(c)(1) of Rule XIII of the Rules of the House of Representatives, the Committee reports that the findings and recommendations of the Committee, based on oversight activities under clause 2(b)(1) of Rule X of the Rules of the House of Representatives, are incorporated in the descriptive portions of this report.

## COMMITTEE ON GOVERNMENT REFORM FINDINGS

No findings or recommendations of the Committee on Government Reform were received as referred to in clause 3(c)(4) of Rule XIII of the Rules of the House of Representatives.

## NEW BUDGET AUTHORITY AND TAX EXPENDITURES

Clause 3(c)(2) of House Rule XIII is inapplicable because this legislation does not provide new budgetary authority or increased tax expenditures.

## COMMITTEE COST ESTIMATE

In compliance with clause 3(d)(2) of Rule XIII of the Rules of the House of Representatives, the Committee believes that the bill will have no cost for the current fiscal year, and that the cost incurred in carrying out H.R.1658 would be $52 million for the next five fiscal years.

The Congressional Budget Office did not have an independent cost estimate prepared by the time of filing of this report. However, CBO did prepare a cost estimate in 1997 of H.R. 1965, another bill reforming federal forfeiture laws. While the two bills have significant differences, H.R. 1965 did contain versions of the eight fundamental reforms of civil forfeiture laws contained in H.R. 1658. The CBO estimated that over the period 1998-2002, implementation of H.R. 1965 would cost $52 million and that any changes to direct spending and governmental receipts would be less than $500,000 a year. 80

[Footnote]

[*Footnote 80:* H.R. Rep. No. 105-358, pt. 1, at 38-41 (1997).]

## CONSTITUTIONAL AUTHORITY STATEMENT

Case 1:06-cv-00030   Document 85-5   Filed 10/29/2007   Page 6 of 22

Pursuant to clause 3(d)(1) of Rule XIII of the Rules of the House of Representatives, the Committee finds the authority for this legislation in Article I, section 8 of the Constitution.

# SECTION-BY-SECTION ANALYSIS AND DISCUSSION

*Section 1. Short title.*

Section 1 contains the Short Title of the bill.

*Section 2. Creation of general rules relating to civil forfeiture proceedings.*

Section 2 creates new subsections (j) and (k) of section 981 of title 18 of the United States Code (and redesignates subsection (j) as subsection (l)) that contain revised procedures which are to govern all administrative and judicial civil forfeiture actions brought pursuant to federal law (except as specified in subsection (j)(8)). To the extent these procedures are inconsistent with any preexisting federal law, these procedures apply and supercede preexisting law.

Subparagraph (A) of paragraph (1) of subsection (j) provides that in any nonjudicial civil forfeiture proceeding under a civil forfeiture statute, with respect to which the agency conducting a seizure of property must give written notice to interested parties, such notice shall be given as soon as practicable and in no case more than 60 days after the later of the date of the seizure or the date the identity of the interested party is first known or discovered by the agency, except that the court may extend the period for filing a notice for good cause shown.

Subparagraph (B) of paragraph (1) provides that a person entitled to written notice in such proceeding to whom written notice is not given may on motion void the forfeiture with respect to that person's interest in the property, unless the agency show either good cause for the failure to give notice to that person or that the person otherwise had actual notice of the seizure.

Subparagraph (C) of paragraph (1) provides that if the government does not provide notice of a seizure of property in accordance with subparagraph (A), it shall return the property and may not take any further action to effect the forfeiture of such property. If the government has made a mistake or administrative error in providing notice, a court may consider good cause to have been shown pursuant to subparagraph (A). In such case, the government may take further action to effect the forfeiture.

Subparagraph (A) of paragraph (2) provides that any person claiming property seized in a nonjudicial forfeiture proceeding may file a claim with the appropriate official after the seizure.

Subparagraph (B) of paragraph (2) provides that a claim under subparagraph (A) may not be filed later than 30 days after either the date of final publication of notice of seizure or, in the case of a person entitled to written notice, the date that notice was received.

Subparagraph (C) of paragraph (2) provides that the claim shall state the claimant's

interest in the property.

Subparagraph (D) of paragraph (2) provides that not later than 90 days after a claim has been filed, the Attorney General shall file a complaint for forfeiture in the appropriate court or return the property, except that a court in the district in which the complaint will be filed may extend the period for filing a complaint for good cause shown or upon agreement of the parties.

Subparagraph (E) of paragraph (2) provides that if the government does not file a complaint for forfeiture of property in accordance with subparagraph (D), it shall return the property and may not take any further action to effect the forfeiture of such property.

Subparagraph (F) of paragraph (2) provides that any person may bring a claim under subparagraph (A) without posting bond with respect to the property which is the subject of the claim.

Subparagraph (A) of paragraph (3) provides that in any case where the government files in the appropriate United States district court a complaint for forfeiture of property, any person claiming an interest in the seized property may file a claim asserting such person's interest in the property within 30 days of service of the government's complaint or, where applicable, within 30 days of alternative publication notice.

Subparagraph (B) of paragraph (3) provides that a person asserting an interest in seized property in accordance with subparagraph (A) shall file an answer to the government's complaint for forfeiture within 20 days of the filing of the claim.

Subparagraph (A) of paragraph (4) provides that if the person filing a claim is financially unable to obtain representation by counsel, the court may appoint counsel to represent that person with respect to the claim.

Subparagraph (B) of paragraph (4) provides that in determining whether to appoint counsel to represent the person filing the claim, the court shall take into account such factors as the claimant's standing to contest the forfeiture and whether the claim appears to be made in good faith or to be frivolous.

Subparagraph (C) of paragraph (4) provides that the court shall set the compensation for that representation, which shall be equivalent to that provided for court-appointed representation under section 3006A of title 18 of the United States Code (for federal criminal defendants), and to pay such cost there are authorized to be appropriated such sums as are necessary as an addition to the funds otherwise appropriated for the appointment of counsel under that section.

Paragraph (5) provides that in all suits or actions brought under any civil forfeiture statute for the civil forfeiture of any property, the burden of proof is on the United States government to establish, by clear and convincing evidence, that the property is subject to forfeiture.

Subparagraph (A) of paragraph (6) provides that an innocent owner's interest in property shall not be forfeited under any civil forfeiture statute.

Subparagraph (B) of paragraph (6) provides that with respect to a property interest in existence at the time the illegal conduct giving rise to forfeiture took place, the term `innocent owner' means an owner who either did not know of the conduct giving rise to the forfeiture or, upon learning of the conduct giving rise to the forfeiture, did all that reasonably could be expected under the circumstances to terminate such use of the property. To meet the requirements of the last clause of the preceding sentence, the property owner is not required to take every conceivable action which could be considered reasonable, but only to take actions which are in total a reasonable response to the conduct giving rise to the forfeiture. In determining what is a reasonable response, the economic situation of the property owner (and his business, if applicable) should be taken into account.

Subparagraph (C) of paragraph (6) provides that with respect to a property interest acquired after the conduct giving rise to the forfeiture has taken place, the term `innocent owner' means a person who, at the time that person acquired the interest in the property, was reasonably without cause to believe that the property was subject to forfeiture and was either a bona fide purchaser or seller for value (including a purchaser or seller of goods or services for value) or a person who acquired an interest in property through probate or inheritance.

A property owner is considered to have acquired an interest in property through probate or inheritance at the time of the death of the previous property owner, not at the time of final, permanent, distribution of the property.

The use of the term inheritance recognizes that property interests often pass at the death of previous owners outside of formal probate proceedings. For instance, property interests are routinely inherited in community property states (such as California and Texas) without a testamentary device. Likewise, standard property law in many states recognizes transfers of interests through mechanisms such as remainder interests, and `tenancy-in-entireties' (which cause property interests in the whole res to pass virtually automatically upon the death of one `tenant'/owner to the surviving `tenant'/owner). This is often true of partnership property, including family business partnerships. In short, the use of the term recognizes that non-probate assets might be acquired by truly innocent owners through all manner of standard, legitimate state and commercial law mechanisms, for fundamental tax and estate planning reasons. For example, assets commonly inherited but not subject to probate administration in many states include the following: joint bank accounts with right of survivorship, property held in joint tenancy, property subject to a community property agreement (in community property states), property held in an inter vivos (living) trust, life insurance (unless all beneficiaries are dead or proceeds are payable to the estate), and assets governed by dispositive provisions in an insurance policy, employment contract, bond, mortgage, promissory note, deposit agreement, pension plan, conveyance, or other non-testamentary written instrument effective as a contract, gift, conveyance or trust.

Subparagraph (D) of paragraph (6) provides that where the property subject to forfeiture is real property, and the claimant uses the property as the claimant's primary residence (i.e., homestead) and is the spouse or minor child of the person who committed the offense giving rise to the forfeiture, an otherwise valid innocent owner claim shall not be denied on the ground that the claimant acquired the interest in the property not through a purchase but through dissolution of marriage or by operation of law (in the case of a spouse) or as an inheritance upon the death of a parent (in the case of a minor child 81

Case 1:06-cv-00030   Document 85-5   Filed 10/29/2007   Page 9 of 22

[Footnote] ). The claimant must establish that at the time of the acquisition of the property interest, the claimant was reasonably without cause to believe that the property was subject to forfeiture.

[*Footnote 81:* The time of acquisition of a minor child's interest is at the time of the parent's death.]

This provision recognizes that one spouse might acquire an innocent, legitimate ownership interest in a residence through formal `dissolution' of marriage (divorce)--without any reasonable cause to believe that the property is tainted by the other spouse's conduct. Some states recognize separate property interests between spouses after a certain period of separation, even without formal marriage `dissolution' proceedings. An annulment, too, may not be regarded as a `dissolution' of marriage, per se, but rather, an official pronouncement that no legitimate marriage ever existed between the `spouses.' A community property agreement between spouses, in community property states like California and Texas, is another common example of how one spouse could innocently acquire an interest in his or her primary residence by operation of (state) law, other than dissolution of marriage. Such standard agreements exist during the life of a marriage, after marriage, and indeed, serve as a non-probate asset after death of a spouse. The provision for acquisition by an innocent spouse `by operation of law', as well as `dissolution of marriage', is intended to cover all of the similarly innocent situations regarding spousal acquisition of a primary residence under various, legitimate operations of state and commercial laws.

Paragraph (7) provides that (for purposes of paragraph (6)) one way in which a person may show that he did all that reasonably could be expected would be to demonstrate that he, to the extent permitted by law, gave timely notice to an appropriate law enforcement agency of information that led him to know the conduct giving rise to a forfeiture would occur or has occurred while in a timely fashion revoking or attempting to revoke permission for those engaging in such conduct to use the property or taking reasonable actions in consultation with a law enforcement agency to discourage or prevent the illegal use of the property. To meet the requirements of the last clause of the preceding sentence, the person is not required to take every conceivable action which could be considered reasonable, but only to take actions which are in total a reasonable response to the conduct giving rise to the forfeiture. In determining what is a reasonable response, the economic situation of the property owner (and his business, if applicable) should be taken into account. Paragraph (7) also provides that in order to do all that could reasonably be expected (for purposes of paragraph (6)), a person is not required to take steps that the person reasonably believes would be likely to subject any person (other than the person whose conduct gave rise to the forfeiture) to physical danger.

Paragraph (8) provides definitions of terms for purposes of subsection (j). The term `civil forfeiture statute' means any provision of federal law (other than the Tariff Act of 1930 or the Internal Revenue Code of 1986) providing for the forfeiture of property other than as a sentence imposed upon conviction of a criminal offense. The term `owner' means a person with an ownership interest in the specific property sought to be forfeited, including a leasehold, lien, mortgage, recorded security device, or valid assignment of an ownership interest; it does not include a person with only a general unsecured interest in (or claim against) the property or estate of another, a bailee (unless the bailor is identified and the bailee shows a colorable legitimate interest in the property seized), or a nominee who exercises no dominion or control over the property.

Case 1:06-cv-00030   Document 95-5   Filed 10/29/2007   Page 10 of 22

Paragraph (1) of subsection (k) provides that a claimant under subsection (j) is entitled to immediate release of seized property if the court determines that (1) the claimant has a possessory interest in the property, (2) the continued possession by the United States government pending the final disposition of forfeiture proceedings will cause substantial hardship to the claimant (such as preventing the functioning of a business, preventing an individual from working, or leaving an individual homeless), and (3) the claimant's likely hardship from the continued possession by the United States government of the seized property outweighs the risk that the property will be destroyed, damaged, lost, concealed, or transferred if it is returned to the claimant during the pendency of the proceeding.

Paragraph (2) provides that a claimant seeking release of property under subsection (k) must request possession of the property from the appropriate official, and the request must set forth the basis on which the requirements of paragraph (1) are met.

Paragraph (3) provides that if within 10 days after the date of the request the property has not been released, the claimant may file a motion or complaint in any district court that would have jurisdiction of forfeiture proceedings relating to the property setting forth the basis on which the requirements of paragraph (1) are met and the steps the claimant has taken to secure release of the property from the appropriate official.

Paragraph (4) provides that if a motion or complaint is filed under paragraph (3), the district court shall order that the property be returned to the claimant, pending completion of proceedings by the United States government to obtain forfeiture of the property, if the claimant shows that the requirements of paragraph (1) have been met. The court may place such conditions on release of the property as it finds are appropriate to preserve the availability of the property or its equivalent for forfeiture.

Paragraph (5) provides that the district court shall render a decision on a motion or complaint filed under paragraph (3) no later than 30 days after the date of the filing, unless such 30 day limitation is extended by consent of the parties or by the court for good cause shown.

*Section 3. Conforming amendment to the Controlled Substances Act.*

Section 3 repeals section 518 of the Controlled Substances Act (21 U.S.C. 888). Section 518 provides for expedited forfeiture procedures in the cases of seized conveyances.

*Section 4. Compensation for damage to seized property.*

Subsection (a) of section 4 amends the Federal Tort Claims Act, which currently does not allow a claim for damages to be brought against the United States in respect of the assessment or collection of any tax or customs duty, or the detention of any goods or merchandise by any officer of customs or excise or any other law enforcement officer (see 28 U.S.C. 2680(c)). The subsection provides that claims can be brought that are based on the destruction, injury, or loss of goods, merchandise, or other property, while in the possession of any officer of customs or excise or any other law enforcement officer, if the property was seized for the purpose of forfeiture but the interest of the claimant is not forfeited.

Subsection (b) of section 4 provides that with respect to a claim that cannot be settled

under the Tort Claims Act, the Attorney General may settle, for not more than $50,000 in any case, a claim for damage to, or loss of, privately owned property caused by an investigative or law enforcement officer who is employed by the Department of Justice and acting within the scope of his or her employment. However, the Attorney General may not pay a claim that is presented more than 1 year after it occurs or is presented by an officer or employee of the United States government and arose within the scope of employment.

*Section 5. Prejudgment and postjudgment interest.*

Section 5 amends section 2465 of title 28 of the United States Code to provide that upon entry of judgment for the claimant in any proceeding to condemn or forfeit property seized or arrested under any Act of Congress, the United States shall be liable for post-judgment interest as set forth in section 1961 of title 28 of the United States Code. The United States shall not be liable for prejudgment interest, except that in cases involving currency, other negotiable instruments, or the proceeds of an interlocutory sale, the United States shall disgorge to the claimant any funds representing interest actually paid to the United States from the date of seizure or arrest of the property that resulted from the investment of the property in an interest- bearing account or instrument, and for any period during which no interest is actually paid, an imputed amount of interest that such currency, instruments, or proceeds would have earned at the rate described in section 1961. The United States shall not be required to disgorge the value of any intangible benefits nor make any other payments to the claimant not specifically authorized by this subsection.

*Section 6. Applicability.*

Section 6 provides that unless otherwise specified in this Act, the amendments made by this Act apply with respect to claims, suits, and action filed on or after the date of the enactment of this Act. However, the standard for the required burden of proof shall apply in cases pending on the date of the enactment of this Act and the amendment made by section 5 shall apply to any judgment entered after the date of enactment of this Act.



# CHANGES IN EXISTING LAW MADE BY THE BILL, AS REPORTED

In compliance with clause 3(e) of rule XIII of the Rules of the House of Representatives, changes in existing law made by the bill, as reported, are shown as follows (existing law proposed to be omitted is enclosed in black brackets, new matter is printed in italics, existing law in which no change is proposed is shown in roman):

# SECTION 981 OF TITLE 18, UNITED STATES CODE

## Sec. 981. Civil forfeiture

(a) * * *

Case 1:06-cv-00030    Document 95-5    Filed 10/29/2007    Page 13 of 22

\* \* \* \* \* \* \*

*(j)(1)(A) In any nonjudicial civil forfeiture proceeding under a civil forfeiture statute, with respect to which the agency conducting a seizure of property must give written notice to interested parties, such notice shall be given as soon as practicable and in no case more than 60 days after the later of the date of the seizure or the date the identity of the interested party is first known or discovered by the agency, except that the court may extend the period for filing a notice for good cause shown.*

*(B) A person entitled to written notice in such proceeding to whom written notice is not given may on motion void the forfeiture with respect to that person's interest in the property, unless the agency shows--*

*(i) good cause for the failure to give notice to that person; or*

*(ii) that the person otherwise had actual notice of the seizure.*

*(C) If the government does not provide notice of a seizure of property in accordance with subparagraph (A), it shall return the property and may not take any further action to effect the forfeiture of such property.*

*(2)(A) Any person claiming property seized in a nonjudicial forfeiture proceeding may file a claim with the appropriate official after the seizure.*

*(B) A claim under subparagraph (A) may not be filed later than 30 days after--*

*(i) the date of final publication of notice of seizure; or*

*(ii) in the case of a person entitled to written notice, the date that notice is received.*

*(C) The claim shall state the claimant's interest in the property.*

*(D) Not later than 90 days after a claim has been filed, the Attorney General shall file a complaint for forfeiture in the appropriate court or return the property, except that a court in the district in which the complaint will be filed may extend the period for filing a complaint for good cause shown or upon agreement of the parties.*

*(E) If the government does not file a complaint for forfeiture of property in accordance with subparagraph (D), it shall return the property and may not take any further action to effect the forfeiture of such property.*

*(F) Any person may bring a claim under subparagraph (A) without posting bond with respect to the property which is the subject of the claim.*

*(3)(A) In any case where the Government files in the appropriate United States district court a complaint for forfeiture of property, any person claiming an interest in the seized property may file a claim asserting such person's interest in the property within 30 days of service of the Government's complaint or, where*

*applicable, within 30 days of alternative publication notice.*

*(B) A person asserting an interest in seized property in accordance with subparagraph (A) shall file an answer to the Government's complaint for forfeiture within 20 days of the filing of the claim.*

*(4)(A) If the person filing a claim is financially unable to obtain representation by counsel, the court may appoint counsel to represent that person with respect to the claim.*

*(B) In determining whether to appoint counsel to represent the person filing the claim, the court shall take into account such factors as--*

> *(i) the claimant's standing to contest the forfeiture; and*

> *(ii) whether the claim appears to be made in good faith or to be frivolous.*

*(C) The court shall set the compensation for that representation, which shall be equivalent to that provided for court-appointed representation under section 3006A of this title, and to pay such cost there are authorized to be appropriated such sums as are necessary as an addition to the funds otherwise appropriated for the appointment of counsel under such section.*

*(5) In all suits or actions brought under any civil forfeiture statute for the civil forfeiture of any property, the burden of proof is on the United States Government to establish, by clear and convincing evidence, that the property is subject to forfeiture.*

*(6)(A) An innocent owner's interest in property shall not be forfeited under any civil forfeiture statute.*

*(B) With respect to a property interest in existence at the time the illegal conduct giving rise to forfeiture took place, the term `innocent owner' means an owner who--*

> *(i) did not know of the conduct giving rise to forfeiture; or*

> *(ii) upon learning of the conduct giving rise to the forfeiture, did all that reasonably could be expected under the circumstances to terminate such use of the property.*

*(C) With respect to a property interest acquired after the conduct giving rise to the forfeiture has taken place, the term `innocent owner' means a person who, at the time that person acquired the interest in the property, was--*

> *(i)(I) a bona fide purchaser or seller for value (including a purchaser or seller of goods or services for value); or*

> *(II) a person who acquired an interest in property through probate or inheritance; and*

Case 1:06-cv-00030    Document 95-5    Filed 10/29/2007    Page 14 of 22

(ii) at the time of the purchase or acquisition reasonably without cause to believe that the property was subject to forfeiture.

(D) Where the property subject to forfeiture is real property, and the claimant uses the property as the claimant's primary residence and is the spouse or minor child of the person who committed the offense giving rise to the forfeiture, an otherwise valid innocent owner claim shall not be denied on the ground that the claimant acquired the interest in the property--

(i) in the case of a spouse, through dissolution of marriage or by operation of law, or

(ii) in the case of a minor child, as an inheritance upon the death of a parent, and not through a purchase. However, the claimant must establish, in accordance with subparagraph (C), that at the time of the acquisition of the property interest, the claimant was reasonably without cause to believe that the property was subject to forfeiture.

(7) For the purposes of paragraph (6)--

(A) ways in which a person may show that such person did all that reasonably can be expected may include demonstrating that such person, to the extent permitted by law--

(i) gave timely notice to an appropriate law enforcement agency of information that led the person to know the conduct giving rise to a forfeiture would occur or has occurred; and

(ii) in a timely fashion revoked or attempted to revoke permission for those engaging in such conduct to use the property or took reasonable actions in consultation with a law enforcement agency to discourage or prevent the illegal use of the property; and

(B) in order to do all that can reasonably be expected, a person is not required to take steps that the person reasonably believes would be likely to subject any person (other than the person whose conduct gave rise to the forfeiture) to physical danger.

(8) As used in this subsection:

(1) The term `civil forfeiture statute' means any provision of Federal law (other than the Tariff Act of 1930 or the Internal Revenue Code of 1986) providing for the forfeiture of property other than as a sentence imposed upon conviction of a criminal offense.

(2) The term `owner' means a person with an ownership interest in the specific property sought to be forfeited, including a leasehold, lien, mortgage, recorded security device, or valid assignment of an ownership interest. Such term does not include--

(i) a person with only a general unsecured interest in, or claim against,

the property or estate of another;

(ii) a bailee unless the bailor is identified and the bailee shows a colorable legitimate interest in the property seized; or

(iii) a nominee who exercises no dominion or control over the property.

(k)(1) A claimant under subsection (j) is entitled to immediate release of seized property if--

(A) the claimant has a possessory interest in the property;

(B) the continued possession by the United States Government pending the final disposition of forfeiture proceedings will cause substantial hardship to the claimant, such as preventing the functioning of a business, preventing an individual from working, or leaving an individual homeless; and

(C) the claimant's likely hardship from the continued possession by the United States Government of the seized property outweighs the risk that the property will be destroyed, damaged, lost, concealed, or transferred if it is returned to the claimant during the pendency of the proceeding.

(2) A claimant seeking release of property under this subsection must request possession of the property from the appropriate official, and the request must set forth the basis on which the requirements of paragraph (1) are met.

(3) If within 10 days after the date of the request the property has not been released, the claimant may file a motion or complaint in any district court that would have jurisdiction of forfeiture proceedings relating to the property setting forth--

(A) the basis on which the requirements of paragraph (1) are met; and

(B) the steps the claimant has taken to secure release of the property from the appropriate official.

(4) If a motion or complaint is filed under paragraph (3), the district court shall order that the property be returned to the claimant, pending completion of proceedings by the United States Government to obtain forfeiture of the property, if the claimant shows that the requirements of paragraph (1) have been met. The court may place such conditions on release of the property as it finds are appropriate to preserve the availability of the property or its equivalent for forfeiture.

(5) The district court shall render a decision on a motion or complaint filed under paragraph (3) no later than 30 days after the date of the filing, unless such 30-day limitation is extended by consent of the parties or by the court for good cause shown.

[Struck out->][ (j) ][<-Struck out] (l) For purposes of this section--

(1) the term `Attorney General' means the Attorney General or his delegate; and

(2) the term `Secretary of the Treasury' means the Secretary of the Treasury or his delegate.

## SECTION 518 OF THE CONTROLLED SUBSTANCES ACT

# [Struck out->][ EXPEDITED PROCEDURES FOR SEIZED CONVEYANCES ][<-Struck out]

[Struck out->][ SEC. 518. (a)(1) The owner of a conveyance may petition the Attorney General for an expedited decision with respect to the conveyance, if the conveyance is seized for a drug-related offense and the owner has filed the requisite claim and cost bond in the manner provided in section 608 of the Tariff Act of 1930. The Attorney General shall make a determination on a petition under this section expeditiously, including a determination of any rights or defenses available to the petitioner. If the Attorney General does not grant or deny a petition under this section within 20 days after the date on which the petition is filed, the conveyance shall be returned to the owner pending further forfeiture proceedings. ][<-Struck out]

[Struck out->][ (2) With respect to a petition under this section, the Attorney General may-- ][<-Struck out]

[Struck out->][ (A) deny the petition and retain possession of the conveyance; ][<-Struck out]

[Struck out->][ (B) grant the petition, move to dismiss the forfeiture action, if filed, and promptly release the conveyance to the owner; or ][<-Struck out]

[Struck out->][ (C) advise the petitioner that there is not adequate information available to determine the petition and promptly release the conveyance to the owner. ][<-Struck out]

[Struck out->][ (3) Release of a conveyance under subsection (a)(1) or (a)(2)(C) does not affect any forfeiture action with respect to the conveyance. ][<-Struck out]

[Struck out->][ (4) The Attorney General shall prescribe regulations to carry out this section. ][<-Struck out]

[Struck out->][ (b) At the time of seizure, the officer making the seizure shall furnish to any person in possession of the conveyance a written notice specifying the procedures under this section. At the earliest practicable opportunity after determining ownership of the seized conveyance, the head of the department or agency that seizes

```
the conveyance shall furnish a written notice to the owner and other
interested parties (including lienholders) of the legal and factual
basis of the seizure. ][<-Struck out]
```

[Struck out->][ (c) Not later than 60 days after a claim and cost bond
have been filed under section 608 of the Tariff Act of 1930 regarding
a conveyance seized for a drug-related offense, the Attorney General
shall file a complaint for forfeiture in the appropriate district
court, except that the court may extend the period for filing for good
cause shown or on agreement of the parties. If the Attorney General
does not file a complaint as specified in the preceding sentence, the
court shall order the return of the conveyance to the owner and the
forfeiture may not take place. ][<-Struck out]

[Struck out->][ (d) Any owner of a conveyance seized for a drug-related
offense may obtain release of the conveyance by providing security in
the form of a bond to the Attorney General in an amount equal to the
value of the conveyance unless the Attorney General determines the
conveyance should be retained (1) as contraband, (2) as evidence of a
violation of law, or (3) because, by reason of design or other
characteristic, the conveyance is particularly suited for use in
illegal activities. ][<-Struck out]

-

# TITLE 28, UNITED STATES CODE

\* \* \* \* \* \* \*

# *PART VI--PARTICULAR PROCEEDINGS*

\* \* \* \* \* \* \*

## CHAPTER 163--FINES, PENALTIES AND FORFEITURES

\* \* \* \* \* \* \*

### Sec. 2465. Return of property to claimant; certificate of reasonable cause; liability for wrongful seizure

*(a)* Upon the entry of judgment for the claimant in any proceeding to condemn or
forfeit property seized under any Act of Congress, such property shall be returned
forthwith to the claimant or his agent; but if it appears that there was reasonable
cause for the seizure, the court shall cause a proper certificate thereof to be
entered and the claimant shall not, in such case, be entitled to costs, nor shall the
person who made the seizure, nor the prosecutor, be liable to suit or judgment on
account of such suit or prosecution.

*(b) INTEREST-*

*(1) POST-JUDGMENT- Upon entry of judgment for the claimant in any proceeding to condemn or forfeit property seized or arrested under any Act of Congress, the United States shall be liable for post-judgment interest as set forth in section 1961 of this title.*

*(2) PRE-JUDGMENT- The United States shall not be liable for prejudgment interest, except that in cases involving currency, other negotiable instruments, or the proceeds of an interlocutory sale, the United States shall disgorge to the claimant any funds representing--*

*(A) interest actually paid to the United States from the date of seizure or arrest of the property that resulted from the investment of the property in an interest-bearing account or instrument; and*

*(B) for any period during which no interest is actually paid, an imputed amount of interest that such currency, instruments, or proceeds would have earned at the rate described in section 1961.*

*(3) LIMITATION ON OTHER PAYMENTS- The United States shall not be required to disgorge the value of any intangible benefits nor make any other payments to the claimant not specifically authorized by this subsection.*

\* \* \* \* \* \* \*

# CHAPTER 171--TORT CLAIMS PROCEDURE

\* \* \* \* \* \* \*

## Sec. 2680. Exceptions

The provisions of this chapter and section 1346(b) of this title shall not apply to--

(a) \* \* \*

\* \* \* \* \* \* \*

(c) Any claim arising in respect of the assessment or collection of any tax or customs duty, or the detention of any goods or merchandise by any officer of customs or excise or any other [Struck out->]`[ law-enforcement ]`[<-Struck out] *law enforcement officer, except that the provisions of this chapter and section 1346 (b) of this title do apply to any claim based on the destruction, injury, or loss of goods, merchandise, or other property, while in the possession of any officer of customs or excise or any other law enforcement officer, if the property was seized for the purpose of forfeiture but the interest of the claimant is not forfeited.*

\* \* \* \* \* \* \*

# DISSENTING VIEWS

While we support the general concept of reforming our asset forfeiture laws and believe

it is important to ensure that innocent citizens do not have their property taken away by an over-zealous government, we oppose this particular legislation as it tilts the balance too far in favor of the alleged criminal.

During the 105th Congress, this Committee overwhelmingly approved compromise legislation accomplishing the desired end of reforming our asset forfeiture laws so that individuals are not deprived of their rights, but doing so in a way that ensures that drug dealers, money launderers and organized crime syndicates are not able to exploit loopholes in the system. Unfortunately, the House did not have the opportunity to debate that bill and we find ourselves here today in a situation where that balanced approach has been discarded.

While our specific concerns regarding H.R. 1658 vary, we agree that in six fundamental ways, the bill denies law enforcement the tools they need to make sure that criminals are not able to enjoy the proceeds of their illegal activity.

# BURDEN OF PROOF

Current law requires that the government only have probable cause to seize property, but requires citizens to prove by a preponderance of the evidence that the property or proceeds were not used in illegal activity. H.R. 1658 shifts the burden of proof to the government and requires that the government prove by clear and convincing evidence that the property was used in an illegal manner. While we support shifting the burden of proof to the government, the clear and convincing standard is too high. The standard of proof in these cases should be the same as in all civil cases--that of preponderance of the evidence.

# APPOINTMENT OF COUNSEL

H.R. 1658 allows the court to appoint counsel for `any person claiming an interest in the seized property' who is `financially unable to obtain representation.' The only factors that the court must consider in determining this are (1) the claimant's standing to contest the forfeiture and (2) whether the claim appears to be made in good faith.

The Department of Justice undertakes 30,000 seizures a year, most of them in drug and alien smuggling cases. H.R. 1658 authorizes the appointment of free counsel in all of those cases for anyone who asserts an interest in the seized property. The potential for abuse is great and there are no safeguards in the bill to prevent it. It is also important to note that those who successfully challenge civil forfeiture decisions already are able to recover attorneys fees under the Equal Access to Justice Act.

# INNOCENT OWNER DEFENSE

H.R. 1658 provides that certain individuals are *de facto* innocent owners, including those who receive property through probate. In these cases, the property would forever be protected against forfeiture.

We fully support the notion of protecting innocent owners who legitimately may not be aware that someone else has used the property illegally. But we do not think that the

wives, family members and friends of criminals should be able to claim that they are `innocent' owners of the proceeds of crimes. In particular, the `probate' provision of H.R. 1658 allows a drug dealer to amass a large fortune in drug proceeds and pass it on to his girlfriend, wife or children should he be killed in a shoot-out with police or rival narcotraffickers.

# RETURN OF PROPERTY FOR HARDSHIP

H.R. 1658 allows a claimant to recover his property pending trial if he can show that the forfeiture will cause substantial hardship, such as preventing the functioning of a business, preventing an individual from working or leaving an individual homeless. The only burden that must be met to allow the transfer is a determination that the hardship outweighs any risk that the property will be destroyed, damaged, lost, concealed or transferred. The bill does not even ask judges to consider the likelihood of whether the property will be maintained and used in the continued commission of crime. No provisions are included to ensure that the government can recover the property once a judicial determination is made that the property is subject to forfeiture. Certain instruments of alleged illegal activity are not appropriate to be returned while the forfeiture is pending, but the bill makes no distinction between legitimate business assets and contraband, currency and other property that is likely to be used to commit additional crime if returned.

# NOTIFICATION TO CLAIMANT

H.R. 1658 requires that actual notice be given to a potential claimant within 60 days or the forfeiture action is nullified and may never be activated against that property again. The bill includes no exceptions for administrative errors, such as a misaddressed letter to a jail or prison.

So, under the bill, if the government arrests a drug dealer, puts him in jail, and sends him notice of the forfeiture of his drug proceeds, but misdirects the notice to the wrong jail, the Attorney General would have to return the money to the prisoner. Morever, based on case law, prisoners would have eleven years in which to raise such claims. The proper remedy for such administrative errors is to give the prisoner proper notice and allow him the normal period of time in which to file a claim contesting the forfeiture.

# EFFECTIVE DATE

H.R. 1658 applies its new standard of proof (that of clear and convincing evidence) to cases pending at the time of the bill's enactment. This provision has the potential for reeking havoc on on-going cases and cases on appeal. We believe that any change in the standard of proof should apply prospectively.

For these and other reasons, we opposed H.R. 1658 when it was considered by the Committee. We urge the Committee and Members of the full House to consider these issues as the bill moves through the legislative process.
Asa Hutchinson.
Ed Bryant.
Anthony Weiver.

THIS SEARCH THIS DOCUMENT GOTO

| | | |
|---|---|---|
| Next Hit | Forward | New Search |
| Prev Hit | Back | Home Page |
| Hit List | Full Display | Help |
| | Contents Display | |

THOMAS Home  |  Contact  |  Accessibility  |  Legal  |  USA.gov