DANIEL J. BERMAN
BERMAN O'CONNOR & MANN
Suite 503, Bank of Guam Building
111 Chalan Santo Papa
Hagåtña, Guam 96910
Telephone: (671) 477-2778
Facsimile: (671) 477-4366

JAMES P. WALSH (PRO HAC VICE)
DAVIS WRIGHT TREMAINE LLP
505 Montgomery Street, Suite 800
San Francisco, CA 94111-6533
Tel: (415) 276-6556
Fax: (415) 276-6599

Attorneys for Defendant and Claimant:
*MARSHALLS 201 and MARSHALL*
*ISLANDS FISHING COMPANY*

FILED
DISTRICT COURT OF GUAM

OCT 2 9 2007

JEANNE G. QUINATA
Clerk of Court

## UNITED STATES DISTRICT COURT

## FOR THE TERRITORY OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA, | CIVIL CASE NO. 06-00030 |
| Plaintiff, | |
| v. | **DECLARATION OF CLAIMANT'S COUNSEL** |
| MARSHALLS 201, | |
| Defendant. | |

## DECLARATION OF CLAIMANT'S COUNSEL

I, DANIEL J. BERMAN, hereby declare under penalty of perjury that:

1.     I make this Declaration upon personal knowledge unless otherwise stated.

2.     I am counsel for the Claimant Marshall Islands Fishing Company in the above captioned action and I am competent to testify in Court.

E:\Jean\Plds\DJB\Marshalls\Dec DJB II.wpd          ORIGINAL

3.      Attached hereto as Exhibit "1" is a true and correct copy of selected Laws of Kiribati that include the Marine Zones (Declaration) Act, 1983 - No. 7 of 16 May 1983.

4.      Attached hereto as Exhibit "2" is a true and accurate copy of the 60 Federal Register No. 43825.

5.      Attached hereto as Exhibit "3" is a true and accurate copy of the Declaration of Vice-President Vukas.

6.      Attached hereto as Exhibit "4" is a true and accurate copy of the Statement of President George W. Bush, dated May 15, 2007.

7.      Attached hereto as Exhibit "5" a true and accurate copy of the Statement Admiral Thad Allen, dated May 17, 2007.

8.      Attached hereto as Exhibit "6" are true and accurate copies of excerpts of the Deposition of Wen Yueh Lu taken in the Territory of Guam on December 7 and 8, 2006 together with certain exhibits of the Deposition.

9.      Attached hereto as Exhibit "7" is a true and accurate copy of the Central Intelligence Agency's World Factbook, October 1, 2007.

10.     Attached hereto as Exhibit "8" is a true and accurate copy of the Restatement (Third) Foreign Relations Law of the United States, §312, §402 - Comment *"c"*, §§511, 514 and 517 (1987).

11.     Attached hereto as Exhibit "9" is a true and accurate copy of the Schoenbaum, *Admiralty and Maritime Law*, 4th Ed., § 2-16 (2007).

12.     Attached hereto as Exhibit "10" is a true and accurate copy of the Law of the Sea Treaty, Article 121(3).

13.     Filed herewith on October 29, 2007 are true and accurate images and copies of the originals of the Declarations of Scott Edmonds, Eugene Muller, Professor Jon Van

E:\Jean\Plds\DJB\Marshalls\Dec DJB II.wpd

Dyke and Jutzu Chuang, the originals of which are forthcoming to this District Court and will be duly filed and served upon receipt by counsel undersigned.

Further Declarant Sayeth Naught.

Attorney    for    Defendant    and    Claimant
*MARSHALLS 201 and MARSHALL ISLANDS*
*FISHING COMPANY*

DATED: **OCT. 29, 2007**    BY: _____

**DANIEL J. BERMAN**

E:\Jean\Plds\DJB\Marshalls\Dec DJB II.wpd

# EXHIBIT "1"

# *KIRIBATI*

Kiribati consists of 32 coral atolls in three main groups and one isolated phosphate island (Banaba), spread over more than 5,000,000 sq km of the Central Pacific Ocean and straddling both the Equator and the international date line. The island groups are the sixteen Gilbert Islands, from Makin to Arorae, eight Phoenix Islands and eight of the eleven Line Islands. The total land area of Kiribati is 600 sq km. Banaba, the Gilbert Islands and three of the Line Islands - Kiritimati (Christmas Island), Teraina (Washington) and Tabueran (Fanning Island) are populated. The remainder of the islands have no permanent population. The estimated total population in 1995 was 79,386.

The Gilbert and. Ellice Islands were proclaimed a British Protectorate in 1892 and annexed as the Gilbert and Ellice Islands Colony with effect from 12 January 1916. In 1975 the Ellice Islands severed its constitutional links with the Gilbert Islands, first as the Colony of Tuvalu and later as Tuvalu. The Gilbert Islands Colony achieved internal self-government in 1976 and full independence as the Republic of Kiribati on 12 July 1979.

Under the Constitution of 1979 the Beretitenti (President) is both Head of State and head of the executive. He is elected for a four year term by popular vote from among the members of the Parliament. The Parliament of Kiribati is a unicameral legislature of 35 members elected from 20 constituencies and the Attorney-General, who is appointed by the Beretitenti. The Beretitenti selects the members of Cabinet.

The legal system of Kiribati derives from the Constitution of 1979 and Acts of Parliament, the ordinances of the Gilbert and Ellice Islands Colony and the ordinances of the Gilbert Islands Colony made prior to 1979, the statutes of general application in force in England on 1 January 1961 and the substance of the English common law and doctrines of equity subject to the circumstances of Kiribati and its people and Kiribati custom as applied in the courts.

## Limits of National Jurisdiction

The Marine Zones (Declaration) Act 1983 defines and establishes a twelve mile territorial sea and a 200 nautical mile exclusive economic zone. The total area of the exclusive economic zone is 3.6 million sq km. Within the exclusive economic zone the Republic of Kiribati has sovereign rights for the purpose of exploring and exploiting, conserving and managing the natural resources, whether living or non-living, of the seabed and the subsoil under the seabed, and the waters over the seabed. The Act also empowers the responsible Minister, in accordance with international law, to declare archipelagic baselines. To date, no declaration of archipelagic baselines has been made.

Kiribati has maritime boundaries with Nauru, Marshall Islands, the USA in respect of Jarvis Island, Kingman Reef, Palmyra Atoll and Howland and Baker Islands, New Zealand in respect of Tokelau, Tuvalu, France in respect of French Polynesia and Cook Islands. No maritime boundary agreements have been negotiated.

## Fisheries Legislation

The basic fisheries law is the Fisheries Act (Cap.33). Under the Act, the Minister may take such measures as he may see fit to promote the development of fisheries and fishing in Kiribati to ensure that the fisheries resources of Kiribati are exploited to the full for the benefit of Kiribati. The Minister is empowered to appoint a Chief Fisheries Officer and licensing officers for the purposes of carrying out the provisions of the Act. The Act confers upon the Beretitenti, acting in accordance with the advice of the Cabinet, wide powers to make regulations relating, *inter alia*, to the licensing of foreign fishing vessels, the conditions to be observed by foreign fishing vessels, the conservation and

protection of all species of fish, prohibited fishing gear and methods and the organisation and regulation of marketing, distribution and export from Kiribati of fish and fish products.

The Fisheries Act creates a regulatory framework for the operation of fish processing establishments and the Fisheries (Processing and Export) Regulations 1981 prohibit the export of fish or fish products without a certificate of quality issued by a licensing officer.

Fisheries of all kinds are of vital significance to Kiribati and traditional fishing rights play an important role in Kiribati society. The Fisheries Act contains a provision to protect such rights by prohibiting the taking of fish in any sea or lagoon area or on any reef forming part of the ancient customary fishing ground of any *kainga* or *utu* or other division or subdivision of the people except by members of the *kainga* or *utu* or under a licence granted by the Minister in his discretion. The Native Lands Code also recognises various forms of customary tenure over fish traps, reefs and fish ponds and there are less formal controls exerted on many of the outer islands by island councils. These controls may include, for example, restrictions on gear types (banning of monfilament gill nets on one island), and prohibitions of fishing for certain species.

## Licensing Requirements

A licence is required for all local fishing vessels. Local fishing vessels are defined in the Fisheries Act as vessels wholly owned by persons resident and domiciled in Kiribati or owned by a company or fisheries cooperative registered or incorporated in Kiribati, provided that sailing boats, paddling canoes and boats, punts and barges under seven metres in length are not regarded as fishing vessels for the purposes of the Fisheries Act and are thereby excluded from regulation.

Permits authorising fishing by foreign fishing vessels may be granted by the Chief Fisheries Officer with the approval of the Minister. Foreign fishing permits are subject to such conditions as may be prescribed and to such conditions as may be endorsed on the permit by the Chief Fisheries Officer. To date, no regulations have been made prescribing the general conditions applicable to foreign fishing permits. Fees and royalties for foreign fishing are fixed by the Chief Fisheries Officer with the approval of the Minister.

The penalties for illegal foreign fishing are a fine of A$250,000 for fishing in the exclusive economic zone without a valid permit and, for contravention of a permit, a fine of A$50,000.

The Fisheries (Pacific Island Parties' Treaty with United States of America) Act 1988 implements, on the part of Kiribati, the Treaty on Fisheries Between the Governments of Certain Pacific Island States and the Government of the United States of America. Under the Act, the treaty is accorded the status of law in Kiribati. A consequence of this is that, in respect of fishing vessels to which the treaty applies (i.e. all fishing vessels of the United States) the penalty in Kiribati for contravention of the treaty or the breach of an applicable national law is a fine of A$250,000.

## Conservation and Management

The Fisheries Act prohibits the use of explosives, poisons and noxious substances for the purpose of catching fish and it is an offence to possess explosives, poisons or other noxious substances in circumstances giving rise to a reasonable suspicion that the substance is intended to be used for fishing. The penalty for breach of this prohibition is a fine of $1,000 or imprisonment for five years. There is little formal regulation of inshore fisheries in Kiribati though, as noted above, traditional fishing rights, which often include traditionally enforced conservation measures, play an important role in Kiribati. Fishing is prohibited in certain areas of Kiritimati and the Fisheries Conservation and Protection (Rock Lobsters - Panulirus Species) Regulations 1979 introduced minimum size limits throughout Kiribati in respect of rock lobsters (*Panulirus* spp.).

Under the Wildlife Protection Act (Cap. 100) (not reproduced in this compendium) it is an offence to hunt, kill or capture wild turtles on land and the green turtle *(chelonia mydas)* is fully protected throughout the Line and Phoenix Islands.

## Regional and International Agreements relating to Fisheries

Kiribati is a member of the South Pacific Forum and is an ACP state of the European Community. Kiribati is also a member of the Forum Fisheries Agency and the South Pacific Commission. Kiribati has not signed or acceded to the United Nations Convention on the Law of the Sea. It is a party to the Treaty on Fisheries Between the Governments of Certain Pacific Island States and the Government of the United States of America and the Nauru Agreement Concerning Cooperation in the Management of Fisheries of Common Interest. Kiribati signed the Convention for the Prohibition of Fishing with Long Driftnets in the South Pacific on 13 February 1990, subsequently ratifying the Convention on 10 January 1992, and signed the Niue Treaty on Cooperation in Fisheries Surveillance and Law Enforcement in the South Pacific Region on 11 May 1993 and subsequently ratified the Treaty on 30 October 1994. It is a signatory to the FSM Arrangement, and signed and ratified the Palau Arrangement on 6 May 1993 and 9 December 1995 respectively.

## Acts and Subsidiary Legislation of Kiribati
## Reproduced in this Compendium

|  | Page |
|---|---|
| Marine Zones (Declaration) Act 1983 (No. 7 of 1983) | KIR 1 |
| Fisheries Act (No. 22 of 1977) (Cap.33) *Unofficial consolidation 1992* | KIR 6 |
|     Am. Act 9 of 1978 |  |
|     Am. Act 8 of 1983 |  |
|     Am. Act 9 of 1984 |  |
|     s. 2    Proclamation | 31/79 |
|     s.22    Prohibited Fishing Areas (Designation) Regulations | LN 61/78, LN 71/78 |
|         Fisheries Conservation and Protection (Rock Lobster - *Panulirus* species) Regulations | LN 3/79 |
|         Fisheries (Processing and Export) Regulations 1981 | LN 41/81 |
|         Fisheries (Vessel Licences) Regulations 1981 | LN 40/81 |
|         Fisheries (Vessel Licences) Regulation (No. 1) 1982 | LN 13/82 |
| Fisheries (Pacific Island States' Treaty with the USA) Act 1988 | KIR 22 |

## THE REPUBLIC OF KIRIBATI

MARINE ZONES (DECLARATION) ACT 1983

ARRANGEMENT OF SECTIONS

### PART I

PRELIMINARY

1. Short title
2. Interpretation
3. Reference to rules of international law

### PART II

THE MARINE ZONES

4. Internal waters
5. Archipelagic waters
6. Territorial seas
7. The exclusive economic zone
8. Legal character of marine zones, etc.
9. Rights of other states in marline zones
10. General regulations as to exclusive economic zone
11. Charts, publicity, etc.
12. Evidentiary provision

---

**An Act to make provision in respect of the internal waters, the archipelagic waters, the territorial sea and the exclusive economic zone of Kiribati**

*Commencement: 16th May 1983*

**MADE** by the Maneaba in Maungatabu and assented to by the Beretitenti

*Marine Zones (Declaration) Act*

# PART I

# PRELIMINARY

Short title    1.    This Act may be cited as the Marine Zones (Declaration) Act 1983

Interpretation    2.    (1)    In this Act, unless the context otherwise requires -

"the baseline of Kiribati" means the low-water line of the seaward side of the reef fronting the coast of any part of Kiribati or bounding any lagoon waters adjacent to any part of that coast, or where a reef is not present the low-water line of the coast itself;

"Conservation and management" includes all rules, regulations, methods and measures that -

> *(a)*    are required to build, restore or maintain, or are useful in rebuilding, restoring or maintaining, any fishery resource or the marine environment; or
>
> *(b)*    are designed to ensure that -
>> (i)    a supply of food and other products may be taken, and that recreational benefits may be obtained, on a continuing basis; and
>> (ii)    irreversible or long-term ill-effects on fishery resource or the environment are avoided; and
>> (iii) there will be a multiplicity of options available with respect to future uses of these resources;

"fishery resource" means any fishery, stock of fish, species of fish or habitat of fish;

"low-tide elevation" means a naturally-formed area of land that is surrounded by and is above water at mean low-water spring tides but is submerged at mean high-water spring tides;

"the low-water line", in relation to any area, means the line of low water at mean low-water spring tides as depicted on the largest scale nautical chart of the area held by the Minister responsible for marine affairs;

"the median line" means a line every point of which is equidistant from the nearest point of -

> *(a)* the inner limits of the territorial sea of Kiribati; and
>
> *(b)* the corresponding baseline of any other country;

"nautical mile" means an international nautical mile of 1,852 metres.

(2)    For the purposes of this Act, permanent harbour works that form an integral part of a harbour system shall be treated as forming part of the coast.

Reference to rules of international law    3.    Where in this Act it is provided that anything shall be done by the Republic of Kiribati or by the Cabinet or a Minister, or any law or order shall be made, in accordance with the rules of international law, the question, whether it was so done or made, is non-justiciable.

*Marine Zones (Declaration) Act*

## PART II

## THE MARINE ZONES

Internal waters

**4.** (1) For the purposes of any law of Kiribati, the internal waters of Kiribati are all waters inland of the base-line of Kiribati, and where closing lines are drawn in accordance with. subsection (2) the waters inland of those lines to the extent that they are outside the base-line of Kiribati.

(2) The Minister may, in accordance With the rules of international law, declare, by reference to physical features marked on official charts or to lists of geographical co-ordinates specifying the geodetic datums, the points between which closing lines are to be drawn for the purpose of determining the outer limits of the internal waters of Kiribati, in the case of the mouths of or entrances to lagoons.

Archipelagic waters

**5.** (1)   For the purposes of any law of Kiribati, the archipelagic waters of Kiribati comprise all areas of sea contained within the baselines established under subsection (2).

(2)   The Minister may, in accordance with the rules of international law, declare, by reference to physical features marked on official charts or to lists of geographical co-ordinates specifying the geodetic datums, the points between which straight baselines are to be drawn for the purpose of determining the outer limits of the archipelagic waters of Kiribati and the inner limits of the territorial sea.

Territorial seas

**6.** (1)   Subject to subsection (2), for the purposes of any law of Kiribati the territorial seas of Kiribati are those parts of the sea within 12 nautical miles from the outer limits of the internal waters of Kiribati.

(2)      Where archipelagic baselines are drawn under Section 5(2), the breadth of the territorial sea shall be measured from those baselines to the extent to which they are outside the outer limits of the internal waters of Kiribati.

The exclusive economic zone

**7.** (1)   Subject to the succeeding provisions of this section, for the purposes of any law of Kiribati the exclusive economic zone of Kiribati comprises those parts of the sea having as their inner limits the outer limits of the territorial sea and as their outer limits a line drawn 200 nautical miles seaward from the outer limits of the inland waters of Kiribati.

(2)      The Minister may, in accordance with the rules of international law declare, by reference to physical features marked on official charts or to lists of geographical co-ordinates specifying the geodetic datums, points between which straight baselines are to be drawn for determining the outer limits of the exclusive economic zone. _

(3)      Where baselines are drawn in accordance with subsection (2) the breadth of the exclusive economic zone shall be measured from those baselines.

*Marine Zones (Declaration) Act*

(4) The Minister may, by order, for the purpose of implementing any international agreement or the award of any international body, or otherwise declare that the outer limits of the exclusive economic zone of Kiribati extend to such line, being a line to the landward of the outer limits of the exclusive economic zone as defined in accordance with subsection (1) or subsection (3), as the case requires as is specified in the order.

(5) Where the median line is less than 200 nautical miles from the line from which the breadth of the territorial sea is to be measured, the outer limits of the exclusive economic zone extend to the median line.

(6) All areas of seabed, and the subsoil under the seabed, of the exclusive economic zone shall be treated, for the purposes of any law of Kiribati, as part of the continental shelf of Kiribati.

**Legal character of marine zones etc.**

**8.** (1) The sovereignty of the Republic of Kiribati extends beyond its land territory and internal waters over the territorial sea, and to the airspace over them and the seabed and subsoil under them

(2) Within the exclusive economic zone the Republic of Kiribati has sovereign rights for the purpose of exploring and exploiting, conserving and managing the natural resources, whether living or non-living, of the seabed and the subsoil under the seabed, and the waters over the seabed.

(3) The sovereignty and sovereign rights of the Republic of Kiribati under this section shall be exercised in accordance with the rules of international law.

**Rights of other States in marine zones**

**9.** (1) Subject to the succeeding provisions of this section, ships and aircraft of all States have, in accordance with the rules of international law, the right of free passage through and over the territorial seas and archipelagic waters of Kiribati.

(2) The Minister may, in accordance with the rules of international law, by order designate sealanes and air routes suitable for the continuous and expeditious passage of foreign ships and aircraft, through and over the archipelagic waters and the adjacent territorial seas, and may also prescribe traffic separation schemes for the purpose of ensuring the safe passage of ships through narrow channels in such sealanes.

(3) In sealanes and air routes designated under subsection (2) all ships and aircraft may, in accordance with the rules of international law, enjoy the right of navigation and overflight, in their normal modes, for the purpose of continuous, expeditious and unobstructed transit through and over the archipelagic waters and the adjacent territorial seas, from one part of the exclusive economic zone to another part of it.

(4) Until sealanes and air routes are prescribed under section (2) the rights of navigation and overflight referred to in subsection (3) may be exercised through and over all routes normally used for international navigation and overflight.

(5) The rights of navigation and overflight referred to in subsections (3) and (4)

are subject to all laws of Kiribati made in accordance with the rules of international law.

(6)    Subject to this and any other Act and to the rules of international law, all States and their nationals shall enjoy in the exclusive economic zone the high seas freedoms of navigation and overflight and of the laying of submarine cables and pipelines, and all other internationally lawful uses of the sea related to those freedoms, compatible with the rules of international law.

General
regulations as
to the exclusive
economic zone

**10.**    Where no other provision is made in or under any other Act for the purpose, the Minister may make regulations, in accordance with the rules of international law, for all or any of the following purposes:-

(a)    regulating the conduct of scientific research within the exclusive economic zone; and

(b)    regulating the exploration and exploitation of the exclusive economic zone for the production of energy from waters, currents and winds, and for other economic purposes; and

(c)    regulating the construction, operation and use of artificial islands, installations and structures within the exclusive economic zone, including requirements of the establishment of safety zones around islands, installations and structures; and

(d    prescribing measures for the protection and preservation of the marine environment of the exclusive economic zone; and

(e)    providing for such other matters as are necessary or expedient to give effect to the rights and obligations of the Republic of Kiribati in relation to the exclusive economic zone, or are necessary to give full effect to the provisions of this Act.

Charts publicity,
etc.

**11.** (1)  The Minister shall cause all closing lines, baselines and other lines drawn for the purposes of this Act for determining the limits of the internal waters, the archipelagic waters, the territorial seas and the exclusive economic zone of Kiribati to be clearly indicated on charts of a scale or scales adequate for them to be readily determined, and shall give adequate publicity by notice in the Gazette and otherwise.

(2)    A question, whether publicity given to any matter under subsection (2) is adequate, is non-justiciable.

(3)    A copy of each chart referred to in subsection (1) shall be deposited with the Secretary-General of the United Nations and the Secretary-General of the South Pacific Commission.

Evidentiary
provision

**12.** In any proceedings before a court or a person acting judicially, a certificate purporting to be signed by the Marine Superintendent stating that any specific nautical chart of any area is a chart to which Section 11 applies that is held by the Minister is evidence of the matters stated in the certificate, and the chart is evidence of the matters set out in it.

## CHAPTER 33

FISHERIES

ARRANGEMENT OF SECTIONS

### PART I

GENERAL

1. Short title
2. Interpretation
3. Promotion of fisheries

### PART II

LICENSING

4. Licensing of local fishing vessels
5. Entry and fishing by foreign fishing vessels within the fishery limits
6. Fish processing establishment
7. Cancellation and suspension of licences and permits

### PART III

POWERS OF AUTHORISED OFFICERS

8. Power to stop, board, search vessels, etc.
9. Powers of an authorised officer where he reasonably believes an offence committed
10. Obstruction etc. of authorised officers
11. Authorised officers to declare office etc.
12. Non-liability of authorised officers

### PART IV

ADDITIONAL OFFENCES AND LEGAL PROCEEDINGS

13. Throwing overboard or destroying incriminating evidence
14. Fishing with explosives, poison and other noxious substances
15. Forfeiture of gear, fish and vessels
16. Presumption

17. Jurisdiction of the courts
18. Disposal seized goods

## PART V

## MISCELLANEOUS

19. Fishing for scientific purposes
20. Power of the Minister to enter into agreements
21. Protection of native customary rights
22. Regulations

---

22 of 1977
9 of 1978
8 of 1983
9 of 1984

**An Act to make provision for the promotion and regulation of fishing and fishing industries in Kiribati and its fishery limits**

L.N. 27/78

*Commencement: 3ʳᵈ March 1978*

## PART 1

## GENERAL

Short Title      **1.**      This Act may be cited as the Fisheries Act.

Interpretation      **2.**      In this Act, unless the context otherwise requires -

"authorised officer" means any fisheries officer, licensing officer, police officer or officer as defined in the Customs Act, the master of any Government vessel or vessel owned by the Kiribati Shipping Corporation and any other person appointed by the Minister to be an authorised officer for the purposes of this Act;

"explosive" means any powder, gelignite, plastic or other substance used or manufactured with a view to producing a practical effect by explosion;

*Am. 9 of 1984*      "fish" means any aquatic animal, whether piscine or not, and includes any mollusc, crustacean, coral, sponge, seaweed, holothurian (beche de mer), sea urchins, and turtles and their young and eggs;

*Am. 9 of 1984*      "fishing" means the actual or attempted fishing, catching, taking, killing, or harvesting of fish and includes any activity which may reasonably be expected to result in the fishing or attempted fishing or catching, taking, killing or harvesting of fish, or any operations in support of or in preparation for any of the foregoing activity;

*Am. 9 of 1984*      "fish processing establishment" means any land, vessel, or other place on or in which

Case 1:06-cv-00030     Document 96     Filed 10/29/2007     Page 15 of 37

fish are processed for sale within or outside Kiribati;

"fish product" means any product of fish processing;

*Am. 8 of 1983* "fishery limits" means the exclusive economic zone of Kiribati or such part of that zone as is defined by the Minister for the purpose by Notice published in the Gazette;

*Am. 9 of 1984* "fishing vessel" means any vessel used or adapted for use for fishing commercially, and includes support vessels and craft, and helicopters and light aircraft used in fishing operations, but does not include a sailing boat or paddling canoe of native design or a boat, punt or barge having an overall length of less than 7 metres, whether powered by an engine or not;

"foreign fishing vessel" means any fishing vessel that is not a local fishing vessel;

"licensing officer" means a licensing officer appointed under section 3(2) and includes the Chief Fisheries Officer;

"local fishing vessel" means any fishing vessel -
(a)     owned by one or more persons resident and domiciled in Kiribati; or
(b)     owned by any company or fisheries cooperative society registered or incorporated under the laws of Kiribati, and having its principal place of business in Kiribati;

"low-tide" elevation" means a naturally formed area of land that is surrounded by and above water at mean low-water spring tides but is submerged at mean high-water spring tides;

"nautical mile" means the international nautical mile of 1,852 metres;

"operate" in relation to a vessel means to be the master or the owner or charterer of the vessel and in relation to a fish processing establishment means to own or be in charge of the fish processing establishment and, where the fish processing establishment is a vessel, means to be the master or owner or charterer thereof;

"processing" in relation to fish, includes preserving or preparing fish or producing any substance or article from fish by any method;

*Am. 9 of 1984* "territorial sea" means that part of the sea adjacent to the coast of any island of Kiribati which is within 12 nautical miles measured from the low water mark of the seaward side of the reef fronting such coast, or, when a reef is not present, from the low water mark of the coast itself:

Provided that a low-tide elevation that lies wholly or partly within that part of the sea that would be territorial sea if all low-tide elevations were disregarded for the purpose of the measurement of the breadth of the territorial sea shall be treated as an island.

Promotion of fisheries

**3.** (1)    The Minister may take such measures as he shall see fit to promote the development of fishing and fisheries in Kiribati to ensure that the fisheries resources of Kiribati are exploited to the full for the benefit of Kiribati.

(2)    The Minister may appoint a Chief Fisheries Officer and such other fisheries officers and licensing officers as he may consider necessary for carrying out the purposes and provision of this Act.

# PART II

## LICENSING

Licensing of local fishing vessels

**4.** (1) Subject to any discretion given by the Minister a licensing officer may, upon written application in the prescribed form and upon payment of the prescribed fee grant a licence in the prescribed form in respect of any local fishing vessel;

Provided that no licence shall be granted to any local fishing vessel which is a vessel to which section 15(1) of the Shipping Act applies unless there is subsisting a valid unexpired certificate of seaworthiness issued in respect of the fishing vessel under section 13 of that Act.

(2)    Every licence granted under subsection (1) -

*(a)*    shall not, except with the prior written approval of the Minister endorsed on the licence, extend beyond 1 year from the date of issue thereof;

*(b)*    shall be personal to the holder;

*(c)*    shall not be transferable;

*(d)*    shall be subject to such conditions as may be prescribed and to such further conditions as the licensing officer shall think fit to endorse thereon; and

*(e)*    shall not, without the prior written approval of the Minister endorsed on the licence, confer on the licensee any exclusive right to fish.

(3)    It shall be a condition .of every licence panted under subsection (1) that there shall be marked and kept marked on the vessel in respect of which the licence is granted such letters and numbers of identification as may be assigned to that vessel by the licensing officer, in such manner as he may specify or as may be prescribed.

*Am. 9 of 1978*

(4)    Any person who operates or causes or allows to be operated any local fishing vessel within the fishery limits or in the lagoon or inland waters of Kiribati except under a valid licence granted under this section in respect of that vessel and in accordance with the conditions of such licence shall be liable on conviction to a fine of $1,000 and to imprisonment for 3 years.

Entry and fishing by foreign vessels within the fishery limits

**5.** (1)    No foreign fishing vessel shall –

*(a)*    enter within the fishery limits except for a purpose recognised  by international law;

*(b)*    fish or attempt to fish within the fishery limits;

*(c)*    load, unload or transship any fish within the fishery limits;

*(d)*    load or unload any fuel or supplies within the fishery limits; unless authorised to do so under a permit granted under this Act.

(2)    A foreign fishing vessel entering the fishery limits for a purpose recognised by international law without a permit granted under this Act shall return outside those limits as soon as that purpose for which it entered them has been fulfilled.

(3)    The Chief Fisheries Officer may, with the approval of the Minister, grant a permit in the prescribed form in respect of any foreign fishing vessel, authorising such vessel to do such of the things described in subsection (1) as may be provided for in the permit.

*ss. 3A - 3D inserted Am. 9 of 1978. Deleted Am. 9 of 1984*

(4)    A permit granted by the Chief Fisheries Officer under this section shall be subject to -
    (a)    such conditions as may be prescribed, and to such further conditions as may be endorsed upon the permit by -the Chief Fisheries Officer, and
    (b)    to the payment of such fees and royalties as may be determined by the Chief Fisheries Officer with the approval of the Minister.

(5)    A permit granted by the Chief Fisheries Officer under this section shall not confer any exclusive right to fish unless the permit expressly so provides.

*Am 9 of 1984*    (6)    The fishing gear of any foreign fishing vessel which is prohibited by this section from fishing within the fishery limits shall, while the vessel is within those limits, be stowed in such a manner as not to be readily accessible for fishing.

*Am. 9 of 1984*    (7)    Where any foreign fishing vessel is used in contravention of any of the provisions of this section, the master, owner and charterer, if any, of such vessel shall each be liable on conviction -
    (a)    in the case of a contravention of subsection (1), to a fine of $250,000; and
    (b)    in the case of a contravention of subsection (2) or subsection (6), to a fine of $50,000.

*Am. 9 of 1984*    (8)    Where any foreign fishing vessel is used in contravention of any of the conditions of a permit granted under this section, the master, owner and charterer, if any, of such vessel shall each be liable on conviction to a fine of $50,000.

Fish processing establishment    **6.** (1)    The Chief Fisheries Officer may with the approval of the Minister and on payment of the prescribed fee grant to any person a licence in the prescribed form to operate a fish processing establishment subject to such conditions as may from time to time be prescribed and to such further conditions as may be endorsed upon the licence by the Chief Fisheries Officer.

(2)    Any person who operates or causes or allows to be operated any fish processing establishment except under a valid licence granted under this section in respect of that fish processing establishment and in accordance with the conditions of such licence shall be liable on conviction to a fine of $200 and to imprisonment for 6 months.

Cancellation and suspension of    **7.** (1)    Where any of the conditions of any licence or permit is contravened the Chief Fisheries Officer may cancel or permit, or suspend licence or permit for such period

licences and
permits

as he may think fit.

(2)    Any person aggrieved by the refusal of any licensing officer to issue any license grand under this Act, or by the cancellation or suspension of any licence or permit granted under this Act may appeal against such refusal, cancellation or suspension to the Minister, whose decision shall be final.

## PART III

## POWERS OF AUTHORISED OFFICERS

Power to stop
board search
vessels, etc

8. For purposes of ascertaining whether there is, or has been, any contravention of the provisions of this Act any authorised officer may-

(a)    at all reasonable hours enter any fish processing establishment and any premises other than premises used exclusively as a dwelling house;

(b    stop, board search -

(i) any foreign or local fishing vessel within the fishery limits; or
(ii) any local fishing vessel, outside the fishery limits

(c)    stop and search any vessel transporting, or reasonably suspected of transporting, fish or fish products;

(d)    make such examination and inquiry as may appear necessary to him concerning any premises, fish processing establishment, vessel or vehicle in relation to which any of the powers conferred by this section have been, or may be, exercised and take samples of any fish, or fish products, found therein;

(e)    require any person to produce his licence or his authority if it appears to the authorised officer that such person is doing any act for which a licence or authority is required under this Act.

Powers of an
authorised officer
where he reason-
ably believes an
offence
committed

9. (1)    Where he has reasonable grounds for believing that an offence against the provisions of this Act has been committed, any authorised officer, without a warrant, may-

(a)    following hot pursuit as recognised by international law and commenced within they fishery limits, stop, board and search outside the fishery limits any foreign fishing vessel which he believes has been used in the commission of an offence within the fishery limits, or in relation to which he believes such offence has been committed, and bring such vessel and all persons and things on board it within the fishery limits;

(b)    within the fishery limits -

(i)    arrest any person whom he believes has committed such offence and, if the authorised officer making such arrest is not a police officer, he shall without necessary delay make over such person to a police officer, or in the absence of a police officer, shall take such person to the nearest police station;

*Am. 9 of 19*

(ii)    in the case of an offence against sections 5(1), 13 or 14(1), size any vessel (together its equipment, stores and cargo bunker) which he believes has been used in the commission of such offence or in respect of which he believes such offence has been committed;

(iii)   seize any fishing gear, instruments or appliances which he believes have

been used in the commission of such offence;

(iv)  seize any fish which he believes have been taken or fish products produced in the commission of such offence; or

(v)  seize any explosive, poison or other noxious substance which he believes has been used, carried, possessed or controlled in contravention of section 14.

(2)  After any vessel has been stopped under the provision of this section any authorised officer may exercise concerning it, or in relation to any fish or fish products therein, any of the powers conferred by paragraph *(d)* or section 8.

(3)  A written receipt shall be given for any thing seized under subsection (1) by the authorised officer concerned to the person from whom he seizure is made.

**Obstruction etc. of authorised officers**

**10.**  Any person who -

*(a)*  willfully obstructs any authorised officer in the exercise of any of his powers under this Act; or

*(b)*  fails to comply with any lawful requirements imposed or to answer any lawful enquiry made by any authorised officer under this Act, including enquiries as to the source of supply of fish;

shall be liable on conviction to a fine of $200 and to imprisonment for 6 months, and is the obstruction or non-compliance takes place on board or alongside a vessel, the master of the vessel shall be liable on conviction to a like penalty.

**Authorised officers to declare office**

**11.**  Any authorised officer acting in the exercise of his powers under this Act shall, on demand, produce such documents of identification or other evidence as may be reasonably sufficient to show that is an authorised officer for the purpose of this Act.

**Non-liability of authorised officers**

**12.**  No authorised officer shall be personally liable in respect of any act done or omitted to be done by him in good faith in the execution or purported execution of his powers and duties under this Act.

## PART IV

### ADDITIONAL OFFENCES AND LEGAL PROCEEDINGS

**Throwing overboard or destroying incriminating evidence**

**13.**  Any person who, being on board any vessel being pursued or about to be boarded by any authorised officer, throws overboard or destroys any fish, fishing gear, explosive, poison, noxious substance or any other thing whatsoever, with intent to avoid the seizure of such fish, fishing gear, explosive, poison, noxious substance or thing, or the detection of any offence against this Act, shall be liable on conviction

*Am. 9 of 1984*

to a fine of $1,000 and to imprisonment for 5 years

**Fishing with explosives, poison and other noxious substances**

**14.** (l) Any person who -

*(a)*  permits to be used, uses or attempts to use any explosive, or any poison or other noxious substance, for the purpose of killing, stunning, disabling or catching fish, or in any way rendering fish more easily caught; or

*(b)*  carries or has in his possession or control any explosive, poison or other noxious such an explosive, poison or other noxious substance is intended to be used for any of the aforesaid purposes shall be liable on conviction to a fine of $200 and to imprisonment for 6 months.

(2)     Any person who, knowing or having reasonable cause to believe that any fish has been taken in contravention of the provisions of this section, without lawful excuse, receives or is found in possession of such fish shall be liable on conviction

(a)     where the circumstances of such receipt or possession raise a reasonable presumption that the fish is intended to be sold in the course of business to a fine of $200 and to imprisonment for 6 months; or

(b)     where no such presumption arises, to a fine of $50 and to imprisonment for 2 months.

**Forfeiture of gear, fish and vessel**    **15.**    Where any person is convicted of an offence against this Act, the court, may in addition to any other penalty it may impose, order that any fish caught or fish product produced in the commission of such offence or the proceeds of sale of such fish product, and any fishing gear, instruments or appliances and, in the case of an offence under section 5(l); section 13 or section 14(l) any vessel (together with its equipment, stores and cargo) used in the commission of such offence or in respect of which such offence has been committed, shall be forfeited to the Government, and if so forfeited such property shall be disposed of in such manner as the Minister of Finance may direct.

**Presumption**    **16.**    All fish found on board any vessel used in the commission of an offence against the provisions of this Act or in respect of which any such offence has been committed, shall, unless the contrary is proved, be presumed to have been caught in the commission of such offence.

**Jurisdiction of the courts**    **17.**    Any offence against any of the provisions of this Act committed within the fishery limits may be dealt with, and judicial proceedings taken, as if the offence had been committed in any place in Kiribati.

**Disposal of seized goods**    **18.** (l)    Any fish, fish product or other article of a perishable nature seized or taken under the provisions of this Act may on the direction of the Chief Fisheries Officer be sold and the net proceeds of sale held pending the outcome of any prosecution brought under this Act, and if no such prosecution is brought such proceeds shall be paid to the owner of the fish, fish product or other article sold.

(2)     Any vessel, fishing gear, instrument or appliance seized under section 9 which is not ordered to be forfeited under section 15 shall be returned to its owner.

(3)     Where any vessel, fishing gear, instrument or appliance, fish or fish product has been seized under section 9 the court may order its release, on receipt of a satisfactory bond or other security from any person claiming such property, conditioned on such person -

(a)    delivering such property to the court upon tie order of the court, without any impairment of its value, and paying in full any fine imposed by the court in pursuance of this Act; or

(b)    paying the monetary value of such property in accordance with an order or judgment of the court together with any fine imposed

# PART V

## MISCELLANEOUS

Fishing for scientific purposes

19. The Minister may, in writing, authorise any fishing vessel to fish within the fishery limits for the purpose of scientific investigations, and may for this purpose exempt such fishing vessel from all or any of the provisions of this Act and, in making such exemption, may impose such conditions as he may think fit.

Power of the Minister to enter into agreements

20. (1) The Minister may enter into an agreement with any person or any government or international agency for the purpose of enabling the Minister to perform any of the functions conferred by or under this Act, or for the purpose of facilitating the performance of those functions, or generally to advance the purposes for which this Act was enacted.

*Am 9 of 1984*

(1A) For the purposes of giving effect to any agreement or arrangement under subsection.(l) the Minister may by order authorise:

  (a) any
      (i) person; or
      (ii) government; or
      (iii) agency of government; or
      (iv) international agency,
      to issue fishing permits under section 5 subject to such conditions as he may specify in the order;

  (b) the doing of any other matter which may be required to be done under such agreement or arrangement.

*Am. 9 of 1978*

(2) The Minister may from time to time by order limit any provision of this Act relating to the fishery limits so far as is necessary to do so to give full effect to any convention including any convention that is adopted by the Third United Nations Convention on the Law of the Sea and to any international agreement or arrangement by which the Government may become bound concerning fishing off the coast of Kiribati.

Protection of native customary rights

21.(l) No person shall take fish in any sea or lagoon area or on any reef forming part of the ancient customary fishing ground of any kainga, utu or other division or subdivision of the people unless he shall be a member thereof or shall first have obtained a licence to do so at the hand of the Minister who may grant or refuse any such licence at his discretion.

(2) A person who contravenes subsection (1) shall be liable on conviction to a fine of $200 and to imprisonment for 6 months.

Regulations

22. The Beretitenti may make such regulations as may seem to him expedient for the carrying into effect of any of the purposes or provisions of this Act, and, without prejudice to the generality of the foregoing, such regulations may prescribe or provide for all or any of the following purposes -

(a) the training of fishermen;

(b) regulating the procedure relating to the issue of licences and permits and prescribing the forms thereof and forms of application therefor;

(c) conditions and procedure to be observed by foreign fishing vessels while within the fishery limits;

(d) conservation and protection of all species of fish;

(e) the establishment of closed seasons for any area of Kiribati or any species of fish therein specified;

(f) the placing of a limit on the amount, size or weight of fish or any species of fish, which may be caught or traded;

(g) the designation of prohibited fishing areas for all fish or certain species of fish or certain methods of fishing;

(h) the prohibition of certain types of fishing gear or methods of fishing;

(i) in relation to fish nets, minimum mesh sizes;

(j) the organisation of sport fishing;

(k) the licensing of fish farms and the regulation or importation of live fish;

*Am. 9 of 1978* (ka) regulating the importation of fish or fish products;

(l) the organisation and regulation of marketing, distribution and export from Kiribati of fish or fish products;

(m) controlling the handling, landing and transportation of fish or fish products;

(n) methods of procedures to be adopted in relation to fish storage and processing;

(o) substances and materials to be used in fish processing;

(p) the inspection of fish processing establishments and fish products;

(q) minimum standards in relation to the quality of fish or fish products;

(r) methods of analysis of fish or fish products;

(s) the grant of exemption to any vessel or class of vessel or fish processing establishment from all or any of the provisions of this Act;

(t) the prohibition of any practices or methods, or employment of equipment or apparatus or materials, which are likely to be injurious to the maintenance the development of a stock of fish;

*Am. 9 of 1978*
20; (ta) the implementation of any agreement or arrangement entered into under section

(tb) regulating the taking of coral and seaweed;

(u) anything required to be prescribed by this Act;

(v) the provision of penalties for contraventions thereof of terms of imprisonment for 6 months and fines of $1,000.

## SUBSIDIARY LEGISLATION

### Proclamation of fishery limits under section 2

L.N. 31/79    The following limits have been defined and declared by a proclamation dated 18 April 1979.

1.    As from the 19th April Lg.979 the fishery limits of Kiribati shall extend 200 nautical miles from the baseline of Kiribati.

2.    Notwithstanding paragraph 1, where any part of the median line is less than 200miles from the nearest part of the baseline referred to in paragraph 1, that part of the median line shall be the fisheries limit Kiribati.

3.    The Republic will exercise the same exclusive rights in respect of fishery within the said fishery limits outside the territorial waters of Kiribati as it has in respect of fishery in the territorial waters of Kiribati subject to such provisions as may be made by law for the control and regulation of fishing within the said limits.

4.    In this Proclamation -

"baseline of Kiribati" means the low water mark of the seaward side of the reef fronting the coast of any part of Kiribati or bounding any lagoon waters adjacent to such coasts or, where a reef is not present the law water mark of the coast itself of any part of Kiribati;

"median line" means a line every point of which is equidistant from the nearest points of, on the one hand, the baseline of Kiribati and, on the other hand, the corresponding baseline of any other country;

"mile" means the international nautical mile.

### Regulations under section 22

L.N. 61/78
L.N. 77/78

### PROHIBITED FISHING AREAS (DESIGNATION) REGULATIONS

*Commencement: 31ˢᵗ July 1978*

Citation    1.    These regulations may be cited as the Prohibited Fishing Areas (Designation) Regulations.

Prohibition of fishing    2.    Fishing is prohibited in the areas specified in the Schedule to these Regulations (referred to as "prohibited fishing areas").

Penalty    3.    Any person who fishes in a prohibited fishing area commits an offence and shall be liable to imprisonment for 6 months and to a fine of $1,000.

---

### SCHEDULE

Azur Lagoon
Pelican Lagoon
Isles Lagoon
The Tongan Channel and the adjoining Artemia Ponds.

L.N. 3/79

## FISHERIES CONSERVATION AND PROTECTION
## (ROCK LOBSTERS - PANULIRUS SPECIES) REGULATIONS

*Commencement: 11th June 1979*

Citation | 1.    These Regulations may be cited as the Fisheries Conservation and Protection (Rock Lobsters - Panulirus Species) Regulations.

Interpretation | 2.    In these Regulations -

(a)    "rock lobster" (sometimes known as crayfish) means the species of crustacean known by the scientific name of *Panulirus; and*

(b)    a rock lobster shall be deemed to be immature if the length of its carapace is less than 85 millimetres measured from its eyes; and

(c)    "carapace" means the inflexible shell covering the forepart of a rock lobster.

Protection of certain rock lobsters | 3.    Any person who catches, takes, kills, has in his possession, sells, exposes for sale, buys for sale or consigns to any person for the purpose of sale -

(a)    any immature rock lobster;

(b)    any female rock lobster bearing its eggs,

shall be guilty of an offence and liable to a fine of $100 or imprisonment for 3 months.

L.N. 41/81

## FISHERIES (PROCESSING AND EXPORT) REGULATIONS

In exercise of the powers conferred by section 22 of the Fisheries Ordinance, the Beretitenti acting in accordance with the advice of the Cabinet hereby makes the following Regulations:-

## PART I

## PRELIMINARY

Short title | 1.    These Regulations may be cited as the Fisheries (Processing and Export) Regulations, 1981.

Interpretation | 2.    In these Regulations -

"the Act" means the Fisheries Act;

"class" means any one of the classes of fish-processing establishment set out in Schedule 2 to these Regulations.

## PART II

## FORMS AND FEES

Forms and fees | 3.    The licence set out in Schedule 1 to these Regulations shall be the licence prescribed for the purposes of section 6 of the Act and the fees set out in Schedule 2 to these Regulations shall be the fees prescribed for the purposes of section 6 of the Act.

*Fisheries*

## PART III

### FISH-PROCESSING ESTABLISHMENTS

Application
for licence

**4.** An application for a licence under section 6(1) of the Act shall be in writing and shall specify the class and the premises in respect of which a licence is required and shall contain such further particulars as the Chief Fisheries Officer may require.

Condition of
licence

**5.** Every licence granted under section 6(1) of the Ordinance:-

(1) shall not extend beyond 1 year from the date of issue thereof; and

(2) shall be personal to the holder; and

(3) shall not be transferable; and

(4) shall be subject to such conditions as may be prescribed and to such other conditions as the Chief fisheries Officer may in his absolute discretion endorse thereon; and

(5) shall be conspicuously displayed on the premises in respect of which it was granted; and

(6) shall extend only to those operations or activities set out in Schedule 2 to these Regulations in relation to the class in respect of which the licence was granted; and

(7) shall be conditional upon compliance with the Pure Foods Act, the Public Health Act and any other applicable statutory provision.

Cancellation
or suspension

**6.** In the event of cancellation or suspension of a licence under section 7 of the Act a licensing officer may seize any such licence or endorse any such licence to that effect.

Endorsements

**7.** A licensing officer who has entered a fish processing establishment in pursuance of section 8 of the Act or of any condition endorsed upon a licence granted under section 6(1) of the Act may if he is satisfied that there has been no contravention of any provision of the Act or of any such condition endorse such licence to that effect

Water source

**8.** All water used in a fish processing establishment whether used for ice-making, fish-cleaning or otherwise shall be a potable quality and shall contain no more than 3000 coliforms in each 100 millilitres and shall be treated in such manner as a licensing officer may from time to time direct.

Operating
requirements

**9.** (1) Fish processing establishments shall conform to the requirements set out in Schedule 4 of these Regulations.

(2) Sub-paragraph (1) shall not apply to a fish processing establishment in respect of which the Chief Fisheries Officer has granted an exemption in writing.

## PART IV

### EXPORT

Certificates
of quality

**10.** No fish or fish product processed at a fish-processing establishment may be exported for sale outside Kiribati unless it is accompanied by a duly completed certificate of quality in the appropriate form set out in Schedule 3 to these Regulations.

Prohibited
fish

**11.** No fish or fish product in respect of which a licensing officer has issued a notice of prohibition in the form set in Schedule 3 to these Regulations may be processed in a fish-processing establishment for sale in or outside Kiribati as the notice may specify.

Samples

**12.** On payment or tender to any person operating a fish processing establishment or

his servant or agent of the current market price or at a rate of payment which may be prescribed a licensing officer may select and take or obtain samples of a fish or fish product for the purposes of the Act or these Regulations.

Destruction of unfit fish **13.** A licensing officer may seize and destroy any fish or fish product intended for sale for human or other consumption if he is satisfied on reasonable grounds that such fish or fish product is unfit for its intended purpose and an owner of such seized and destroyed fish or fish product shall be entitled to compensation at the current market price of such fish or fish product (only if he can show that there were no such reasonable grounds).

## PART V

## SAMPLES AND OFFENCES

Offences **14.** Any person who contravenes or operates or causes or allows to be operated a fish-processing establishment in contravention of Regulation 8 or Regulation 9 or who contravenes Regulation 10 or Regulation 11 shall be liable on conviction to a fine of $200 and to imprisonment for 6 months.

## SCHEDULE 1

## Fish Processing Establishment Licence
## (Omitted)

## SCHEDULE 2

| Class | Operation or Activities which may be carried on by the establishment | Fee payable for licence |
|-------|----------------------------------------------------------------------|-------------------------|
| A | Processing by canning, pickling, marinating, fermenting, cooking, or smoking if it is intended that the smoked fish product should be eaten uncooked. | $50 |
| B | Chilling, freezing or other storage of raw fish which is intended for human consumption | $40 |
| C | Salting, drying, smoking if it is intended that the smoked fish product should be cooked before human consumption. | $25 |
| D | Processing if the resulting fish products are not intended for human consumption. | $10 |
| E | Processing for the manufacture of animal foodstuffs | $10 |
| F | The operations and activities listed in relation to Class C if all the resulting fish products intended for sale outside Kiribati are delivered to a fish processing establishment in respect of which a Class C licence has been granted. | $10 |

In the event that the operations and activities carried on by a fish processing establishment are listed is more than one class the Chief Fisheries Officer shall decide which class shall apply to the licence granted and the conditions attached to the licence shall apply to the whole of the premises of the fish processing establishment

## SCHEDULE 3

### Forms

## SCHEDULE 4

### Regulation 9

### Requirements for Fish Processing Establishment

## In all Class A and Class B Fish Processing Establishments

1. In any part of the premises where fish is gutted, filleted or otherwise handled all surfaces and walls shall be constructed of materials which may be cleaned easily and effectively.

2. Adequate fly-screening and/or closing doors shall he provided in any processing area.

3. All internal walls and floors and any surface which fish is processed shall be kept clean with a disinfectant of not less than 50 ppm chlorine or with or by any other material or method which may be approved by a licensing officer.

4. Cold stores in which fish are kept shall be maintained at temperatures approved by a licensing officer and -
    (a) chill rooms shall be at an operating temperature of not more than 3° centigrade; and
    (b) freezer stores shall be at an operating temperature of not more than minus 18" centigrade.

5. All fish products shall satisfy a licensing officer on visual bacteriologic or chemical examination of their fitness for human.

6. Any person handling fish or fish product shall wear protective clothing of a type approved by a licensing officer.

7. Wash basins and any other sanitary equipment which a licensing officer may consider necessary shall be provided.

## In all Class C fish processing establishments.

Fish and fish products shall be protected from attack by flies, rats and other vermin and shall be stored in such manner as a licensing officer may from time to time prescribe.

L.N. 40/81 **FISHERIES (VESSEL LICENCES) REGULATIONS 1981**

*Commencement: 11ᵗʰ December 1981*

## PART

### PRELIMINARY

Short Title 1.   These Regulations may be cited as the Fisheries (Vessel Licences) Regulations 1981.

2.   In these Regulations "the Act" means the Fisheries Act.

## PART II

### FORMS AND FEES

Prescribed
forms and fees      The form and licence set out in schedule 1 to these Regulations shall be the form and licence for the purposes of section 4 of the Act and the fees set in Schedule 2 to these Regulations shall be the fees prescribed for the purposes of section 4 of the Act, provided that the Chief Fisheries Office may exempt any class of local fishing vessel from the payment of all or any part of such fees in accordance with any directions which may be given by the Minister under section 4(1) of the Act.

---

### SCHEDULE 1

*Am. L.N. 13/82* Application for a local Fishing Vessel licence [omitted]

Local Fishing Vessel Licence [omitted]

### SCHEDULE 2

| | |
|---|---|
| Vessels of 40 metres and over L.O.A. at the rate of | $1 per ton of displacement weight to the nearest ton per annum |
| Vessels of 20 metres and over and under 40 metres L.O.A. | $100 per annum |
| Vessel of under 20 metres L.O.A. | $ 50 per annum |

### REPUBLIC OF KIRIBATI

FISHERIES (PACIFIC ISLAND STATES' TREATY WITH THE
UNITED STATES OF AMERICA) ACT 1988

## ARRANGEMENT OF SECTIONS

1. Short title
2. Interpretation
3. Treaty to have the force of law
4. Savings
5. Power of Minister to make orders
6. Offences and penalties, etc.

---

**An Act to give effect to the Treaty on Fisheries Between the Governments of Certain
Pacific Island States and the Government of the United States of America and for
connected purposes**

*Commencement:*

**MADE** by the Maneaba ni Maungatabu and assented to by the Beretitenti

| | |
|---|---|
| Short title | This Act may be cited as the Fisheries (Pacific Island States' Treaty with the United States of America) Act 1988 and shall come into force on such date as the Minister may appoint by notice. |
| Interpretation | 2. (1)    In this Act, unless the context otherwise requires - |

"applicable national law" has the meaning assigned to it in the Treaty;

"Pacific Island State" has the meaning assigned to it in the Treaty;

"Treaty" means the treaty between the Governments of Certain Pacific Island States and
    the Government of the United States of America, to which Kiribati is a party, a copy
    of which is set out in the Schedule to this Act.

## Fisheries (Pacific Island State's Treaty
## with the United State') Act 1988

| | |
|---|---|
| Treaty to have force<br>the force of law | **3.** (1) Subject to the Constitution and the provisions of this Act the Treaty shall have the of law in Kiribati. |

(2) If there is any inconsistency between the provisions of any applicable national law in force in Kiribati and the provisions of the Treaty, the provisions of the Treaty shall, to the extent of such inconsistency, prevail.

| | |
|---|---|
| Savings accruing | **4.** This Act shall not affect any legal proceedings begun or any rights or liabilities or arising out of an occurrence before the date of commencement of this Act. |

| | |
|---|---|
| Power of Minister may,<br>to make orders | **5.** Without prejudice to the powers of the Minister under any other law the Minister by order, make such provisions not inconsistent with the Constitution or this Act or the as be may consider necessary or expedient for giving full effect to the provisions of the Treaty. |

| | |
|---|---|
| Offences and penalties<br>vessel | **6.** (1) Where a fishing vessel to which the Treaty applies is used in contravention of the Treaty or any applicable national law the master, owner and charterer, if any, of such |

shall (without prejudice to any other penalty prescribed by or contained in such applicable national law) each be guilty of an offence and be liable on conviction to a fine not exceeding $250,000.

(2) The master, owner, charterer or any member of the crew of a fishing vessel to which the Treaty applies shall not be liable to imprisonment or corporal punishment on conviction for an offence under the Treaty or any applicable national law.

(3) Where the master, owner, charterer or any member of the crew of a fishing vessel to which the Treaty applies is in pre-trial custody in respect of an offence which amounts to a breach of the Treaty or any applicable national law, he shall be promptly released if he enters into a bond for a reasonable amount or furnishes a reasonable security to appear before the appropriate court for trial.

### SCHEDULE

[omitted]

# EXHIBIT "2"

12. If you were a Cabinet Secretary, would you hire this person to be a key member of your staff?

13. What would you expect this candidate to be doing in 15 to 20 years?

**Privacy Act and Paperwork Reduction Act Statements**

Pursuant to the Freedom of Information Act (5 U.S.C. 552, as amended) and the Privacy Act (5 U.S.C. 552a), the President's Commission on White House Fellowships operates its competitive application process and collects personal information for its use in evaluating applicants under authority of Executive Order 11183, as amended. Submission of the information is voluntary; however, failure to furnish all the requested information may result in delay or elimination of consideration for a Fellowship. All files, records, and other material submitted by or in behalf of any applicant, or collected or obtained with regard to an applicant, are used by those persons associated with the Commission for the purpose of screening and evaluating applications. The information may also be disclosed to a congressional office in response to an inquiry from that office made at the request of that individual. Executive Order 9397 provides for the collection of Social Security Numbers to identify individual records. Furnishing your Social Security Number is voluntary; however, failure to do so may delay the processing of your application.

This request is in accordance with the clearance requirements of the Paperwork Reduction Act (44 U.S.C. 3507). The information is being collected in order to evaluate your qualifications for a Fellowship. Your response is required to make this determination. Public reporting burden for this collection of information is estimated to average five (5) hours per response, including time for reviewing instructions, gathering the requested personal evaluations, and completing the application. Please send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing the burden, to the President's Commission on White House Fellowships, Washington, DC 20415.

**Records Retention**

The application forms of persons selected as White House Fellows may be circulated to appropriate Executive Branch officials incident to placing Fellows in assignments for the Fellowship year and subsequently may be retained, along with other applicant file materials, by the Commission in its permanent files on persons who are selected as White House Fellows. These permanent records are accessible to the individuals concerned.

Sixty days after a letter has been mailed to an applicant advising that he or she has been eliminated from the competition, all materials in the applicant's file will be destroyed and this procedure will be repeated after each stage of the selection process.

The Commission cannot assume responsibility for the return of applications or supporting documents. Applicants are therefore advised to retain copies of their application forms and not to submit irreplaceable documents or other materials with applications.

[FR Doc. 95–20947 Filed 8–22–95; 8:45 am]
BILLING CODE 6325–01–M

---

**DEPARTMENT OF STATE**

[Public Notice 2237]

**Exclusive Economic Zone and Maritime Boundaries; Notice of Limits**

By Presidential Proclamation No. 5030 made on March 10, 1983, the United States established an exclusive economic zone, the outer limit of which is a line drawn in such a manner that each point on it is 200 nautical miles from the baseline from which the breadth of the territorial sea is measured.

The Government of the United States of America has been, is, and will be, engaged in consultations and negotiations with governments of neighboring countries concerning the delimitation of areas subject to the respective jurisdiction of the United States and of these countries.

The limits of the exclusive economic zone of the United States as set forth below are intended to be without prejudice to any negotiations with these countries or to any positions which may have been or may be adopted respecting the limits of maritime jurisdiction in such areas. Further, the limits of the exclusive economic zone set forth below are without prejudice to the outer limit of the continental shelf of the United States where that shelf extends beyond 200 nautical miles from the baseline in accordance with international law.

The following notices have been published which have defined the United States maritime boundaries and fishery conservation zone established March 1, 1977: Public Notice 506, **Federal Register,** Vol. 41, No. 214, November 4, 1976, 48619–20; Public Notice 526, **Federal Register,** Vol. 42, No. 44, March 7, 1977, 12937–40; Public Notice 544, **Federal Register,** Vol. 42, No. 92, May 12, 1977, 24134; Public Notice 4710–01, **Federal Register,** Vol. 43, No. 7, January 11, 1978, 1658; Public Notice 585, **Federal Register,** Vol. 43, No. 7, January 11, 1978, 1659; Public Notice 910, **Federal Register,** Vol. 49, No. 155, August 9, 1984, 31973.

This Public Notice supersedes all limits defined in the above Public Notices.

Therefore, the Department of State on behalf of the Government of the United States hereby announces the limits of the exclusive economic zone of the United States of America, within which the United States will exercise its sovereign rights and jurisdiction as permitted under international law, pending the establishment of permanent maritime boundaries by mutual agreement in those cases where a boundary is necessary and has not already been agreed.

Publication of a notice on this subject which is effective immediately upon publication is necessary to effectively exercise the foreign affairs responsibility of the Department of State. (See Title 5 U.S.C. 553 (a)(1)(B).)

Unless otherwise noted, the coordinates in this notice relate to the Clarke 1866 Ellipsoid and the North American 1927 Datum ("NAD 27"). Unless otherwise specified, the term "straight line" in this notice means a geodetic line.

**U.S. Atlantic Coast and Gulf of Mexico**

In the Gulf of Maine area, the limit of the exclusive economic zone is defined by straight lines connecting the following coordinates[1]:

1. 44°46′35.346″ N., 66°54′11.253″ W.
2. 44°44′41″ N., 66°56′17″ W.
3. 44°43′56″ N., 66°56′26″ W.
4. 44°39′13″ N., 66°57′29″ W.
5. 44°36′58″ N., 67°00′36″ W.
6. 44°33′27″ N., 67°02′57″ W.
7. 44°30′38″ N., 67°02′38″ W.
8. 44°29′03″ N., 67°03′42″ W.
9. 44°25′27″ N., 67°02′16″ W.
10. 44°21′43″ N., 67°02′33″ W.
11. 44°14′06″ N., 67°08′38″ W.
12. 44°11′12″ N., 67°16′46″ W.
13. 42°53′14″ N., 67°44′35″ W.
14. 42°31′08″ N., 67°28′05″ W.
15. 40°27′05″ N., 65°41′59″ W.

Between points 15 and 16, the limit of the exclusive economic zone is 200 nautical miles seaward from the baseline from which the territorial sea is measured.

In the area of the Blake Plateau, the Straits of Florida, and Eastern Gulf of Mexico, the limit of the exclusive economic zone shall be determined by

---

[1] The limits of the U.S. exclusive economic zone from points 1 to 12 in areas adjacent to Canada do not correspond to limits of the Canadian fishery zone as defined in the Canada Gazette of January 1, 1977, due to the dispute between the United States and Canada relating to the sovereignty over Machias Seal Island and North Rock. The line defined by points 12 through 15 reflects the International Court of Justice Award of October 14, 1984, establishing a United States-Canada maritime boundary, pursuant to the Treaty between the Government of Canada and the Government of the United States of America to Submit to Binding Dispute Settlement the Delimitation of the Maritime Boundary in the Gulf of Maine Area, TIAS 10204.

straight lines connecting the following coordinates:[2]

16. 28°17′10″ N. 76°36′45″ W.
17. 28°17′10″ N. 79°11′24″ W.
18. 27°52′54″ N. 79°28′36″ W.
19. 27°26′00″ N. 79°31′38″ W.
20. 27°16′12″ N. 79°34′18″ W.
21. 27°11′53″ N. 79°34′56″ W.
22. 27°05′58″ N. 79°35′19″ W.
23. 27°00′27″ N. 79°35′17″ W.
24. 26°55′15″ N. 79°34′39″ W.
25. 26°53′57″ N. 79°34′27″ W.
26. 26°45′45″ N. 79°32′41″ W.
27. 26°44′29″ N. 79°32′23″ W.
28. 26°43′39″ N. 79°32′20″ W.
29. 26°41′11″ N. 79°31′33″ W.
30. 26°38′12″ N. 79°31′33″ W.
31. 26°36′29″ N. 79°31′07″ W.
32. 26°35′20″ N. 79°30′50″ W.
33. 26°34′50″ N. 79°30′46″ W.
34. 26°34′10″ N. 79°30′38″ W.
35. 26°31′11″ N. 79°30′15″ W.
36. 26°29′04″ N. 79°29′53″ W.
37. 26°25′30″ N. 79°29′58″ W.
38. 26°23′28″ N. 79°29′55″ W.
39. 26°23′20″ N. 79°29′54″ W.
40. 26°18′56″ N. 79°31′55″ W.
41. 26°15′25″ N. 79°33′17″ W.
42. 26°15′12″ N. 79°33′23″ W.
43. 26°08′08″ N. 79°35′53″ W.
44. 26°07′46″ N. 79°36′09″ W.
45. 26°06′58″ N. 79°36′35″ W.
46. 26°02′51″ N. 79°38′22″ W.
47. 25°59′29″ N. 79°40′03″ W.
48. 25°59′15″ N. 79°40′08″ W.
49. 25°57′47″ N. 79°40′38″ W.
50. 25°56′17″ N. 79°41′06″ W.
51. 25°54′03″ N. 79°41′38″ W.
52. 25°53′23″ N. 79°41′46″ W.
53. 25°51′53″ N. 79°41′59″ W.
54. 25°49′32″ N. 79°42′16″ W.
55. 25°48′23″ N. 79°42′23″ W.
56. 25°48′19″ N. 79°42′24″ W.
57. 25°46′25″ N. 79°42′44″ W.
58. 25°46′15″ N. 79°42′45″ W.
59. 25°43′39″ N. 79°42′59″ W.
60. 25°42′30″ N. 79°42′48″ W.
61. 25°40′36″ N. 79°42′27″ W.
62. 25°37′23″ N. 79°42′27″ W.
63. 25°37′07″ N. 79°42′27″ W.
64. 25°31′02″ N. 79°42′12″ W.
65. 25°27′58″ N. 79°42′11″ W.
66. 25°24′03″ N. 79°42′12″ W.
67. 25°22′20″ N. 79°42′20″ W.
68. 25°21′28″ N. 79°42′08″ W.
69. 25°16′51″ N. 79°41′24″ W.
70. 25°15′56″ N. 79°41′31″ W.
71. 25°10′38″ N. 79°41′31″ W.
72. 25°09′50″ N. 79°41′36″ W.
73. 25°09′02″ N. 79°41′45″ W.
74. 25°03′53″ N. 79°42′30″ W.
75. 25°02′58″ N. 79°42′57″ W.
76. 25°00′28″ N. 79°44′06″ W.
77. 24°59′01″ N. 79°44′49″ W.
78. 24°55′26″ N. 79°45′58″ W.
79. 24°44′16″ N. 79°49′25″ W.
80. 24°43′02″ N. 79°49′39″ W.
81. 24°42′32″ N. 79°50′51″ W.
82. 24°41′45″ N. 79°52′58″ W.
83. 24°38′30″ N. 79°59′59″ W.
84. 24°36′25″ N. 80°03′52″ W.
85. 24°33′16″ N. 80°12′44″ W.
86. 24°33′03″ N. 80°13′22″ W.
87. 24°32′11″ N. 80°15′17″ W.
88. 24°31′25″ N. 80°16′56″ W.
89. 24°30′55″ N. 80°17′48″ W.
90. 24°30′12″ N. 80°19′22″ W.
91. 24°30′04″ N. 80°19′45″ W.
92. 24°29′36″ N. 80°21′06″ W.
93. 24°28′16″ N. 80°24′36″ W.
94. 24°28′04″ N. 80°25′11″ W.
95. 24°27′21″ N. 80°27′21″ W.
96. 24°26′28″ N. 80°29′31″ W.
97. 24°25′05″ N. 80°32′23″ W.
98. 24°23′28″ N. 80°36′10″ W.
99. 24°22′31″ N. 80°38′57″ W.
100. 24°22′05″ N. 80°39′52″ W.
101. 24°19′29″ N. 80°45′22″ W.
102. 24°19′14″ N. 80°45′48″ W.
103. 24°18′36″ N. 80°46′50″ W.
104. 24°18′33″ N. 80°46′55″ W.
105. 24°09′49″ N. 80°59′48″ W.
106. 24°09′46″ N. 80°59′52″ W.
107. 24°08′56″ N. 81°01′08″ W.
108. 24°03′28″ N. 81°01′52″ W.
109. 24°08′24″ N. 81°01′58″ W.
110. 24°07′26″ N. 81°03′07″ W.
111. 24°02′18″ N. 81°09′06″ W.
112. 23°59′58″ N. 81°11′16″ W.
113. 23°55′30″ N. 81°12′55″ W.
114. 23°53′50″ N. 81°19′44″ W.
115. 23°50′50″ N. 81°30′00″ W.
116. 23°50′00″ N. 81°40′00″ W.
117. 23°49′03″ N. 81°50′00″ W.
118. 23°49′03″ N. 82°00′12″ W.
119. 23°49′40″ N. 82°10′00″ W.
120. 23°51′12″ N. 82°25′00″ W.
121. 23°51′12″ N. 82°40′00″ W.
122. 23°49′40″ N. 82°48′54″ W.
123. 23°49′30″ N. 82°51′12″ W.
124. 23°49′22″ N. 83°00′00″ W.
125. 23°49′50″ N. 83°15′00″ W.
126. 23°51′20″ N. 83°25′50″ W.
127. 23°52′25″ N. 83°33′02″ W.
128. 23°54′02″ N. 83°41′36″ W.
129. 23°55′45″ N. 83°48′12″ W.
130. 23°58′36″ N. 84°00′00″ W.
131. 24°09′35″ N. 84°29′28″ W.
132. 24°13′18″ N. 84°38′40″ W.
133. 24°16′39″ N. 84°46′08″ W.
134. 24°23′28″ N. 85°00′00″ W.
135. 24°26′35″ N. 85°06′20″ W.
136. 24°38′55″ N. 85°31′55″ W.
137. 24°44′15″ N. 85°43′12″ W.
138. 24°53′55″ N. 86°00′00″ W.
139. 25°12′25″ N. 86°33′12″ W.

Between points 139 and 140, the limit of the exclusive economic zone is 200 nautical miles seaward from the baseline from which the territorial sea is measured.

In the central Gulf of Mexico, the limit of the exclusive economic zone is determined by straight lines connecting the following coordinates:[3]

140. 25°41′56.52.88″ N. 88°23′05.54″ W.

[2] The line defined by points 113 through 139 is that line delimited in the maritime boundary treaty signed with Cuba December 16, 1977. Senate Executive H, 96th Cong., 1st Sess. The treaty has been applied provisionally since January 1, 1978.

[3] The lines defined by points 140–142 and 143–146 reflect the exchange of Notes Effecting Agreement on the provisional Maritime Boundary with Mexico done on November 24, 1976, TIAS 8805, 29 UST 196. The U.S.-Mexico Maritime Boundary Treaty, signed on May 4, 1978, Senate Executive F, 96th Congress, 1st Sess., defines boundary using the same turning points.

141. 25°46′52.00″ N. 90°29′41.00″ W.
142. 25°42′13.05″ N. 91°05′24.89″ W.

Between points 142 and 143, the limit of the exclusive economic zone is 200 nautical miles seaward from the baseline from which the territorial sea is measured.

In the western Gulf of Mexico, the limit of the exclusive economic zone is determined by straight lines connecting the following coordinates:

143. 25°59′48.28″ N. 93°26′42.19″ W.
144. 26°00′30.00″ N. 95°39′26.00″ W.
145. 26°00′31.00″ N. 96°48′29.00″ W.
146. 25°58′30.57″ N. 96°55′27.37″ W.

From point 146, the limit of United States jurisdiction is the territorial sea boundary with Mexico established by the United States of America and the United Mexican States in Article V(A) and annexes of the Treaty to Resolve Pending Boundary Differences and Maintain the Rio Grande and Colorado River as the International Boundary, signed at Mexico City, November 23, 1970, and entered into force April 18, 1972, TIAS No. 7313, 23 UST 371.

## U.S. Pacific Coast (Washington, Oregon, and California)

In the area seaward of the Strait of Juan de Fuca, the limit of the exclusive economic zone shall be determined by straight lines connecting the points with the following coordinates:[4]

1. 48°29′37.19″ N. 124°43′33.19″ W.
2. 48°30′11″ N. 124°47′13″ W.
3. 48°30′22″ N. 124°50′21″ W.
4. 48°30′14″ N. 124°54′52″ W.
5. 48°29′57″ N. 124°59′14″ W.
6. 48°29′44″ N. 125°00′06″ W.
7. 48°28′09″ N. 125°05′47″ W.
8. 48°27′10″ N. 125°08′25″ W.
9. 48°26′47″ N. 125°09′12″ W.
10. 48°20′16″ N. 125°22′48″ W.
11. 48°18′22″ N. 125°29′58″ W.
12. 48°11′05″ N. 125°53′48″ W.
13. 47°49′15″ N. 126°40′57″ W.
14. 47°36′47″ N. 127°11′58″ W.
15. 47°22′00″ N. 127°41′23″ W.
16. 46°42′05″ N. 128°51′56″ W.
17. 46°31′47″ N. 129°07′39″ W.

Between point 17 and 18, the limit of the exclusive economic zone is 200 nautical miles seaward from the baseline from which the breadth of the territorial sea is measured. In the area off the Southern California coast, the limit of the exclusive economic zone shall be determined by straight lines connecting the following points:[5]

[4] The limit of the U.S. exclusive economic zone from points 1 to 17 adjacent to Canada in the area seaward of the Strait of Juan de Fuca do not correspond to limits of the Canadian fishery zone as defined in the Canada Gazette of January 1, 1977.

[5] The line defined by points 18 through 21 reflect the Exchange of Notes Effecting Agreement on the Provisional Maritime Boundary with Mexico done on November 24, 1976. The U.S.-Mexico Maritime

18. 30°32′31.20″ N. 121°51′58.37″ W.
19. 31°07′58.00″ N. 118°36′18.00″ W.
20. 32°37′37.00″ N. 117°49′31.00″ W.
21. 32°35′22.11″ N. 117°27′49.42″ W.

From point 21 to the coast, the limit of United States jurisdiction is the territorial sea boundary with Mexico established by the United States of America and the United Mexican States in Article V(B) and annexes of the Treaty to Resolve Pending Boundary Differences and Maintain the Rio Grande and Colorado River as the International Boundary, signed at Mexico City, November 23, 1970, and entered into force April 18, 1972.

## Alaska

Off the coast of Alaska, in the area of the Beaufort Sea, the limit of exclusive economic zone shall be determined by straight lines, connecting the following coordinates: [6]

1. 69°38′48.88″ N. 140°59′52.7″ W.
2. 69°38′52″ N. 140°59′51″ W.
3. 69°39′37″ N. 140°59′01″ W
4. 69°40′10″ N. 140°58′34″ W.
5. 69°41′30″ N. 140°57′00″ W.
6. 69°46′25″ N. 140°49′45″ W.
7. 69°47′54″ N. 140°47′07″ W.
8. 69°51′40″ N. 140°42′37″ W.
9. 70°09′26″ N. 140°19′22″ W.
10. 70°11′30″ N. 140°18′09″ W.
11. 70°29′07″ N. 140°09′51″ W.
12. 70°29′19″ N. 140°09′45″ W.
13. 70°37′31″ N. 140°02′47″ W.
14. 70°48′25″ N. 139°52′32″ W.
15. 70°58′02″ N. 139°47′16″ W.
16. 71°01′15″ N. 139°44′24″ W.
17. 71°11′58″ N. 139°33′58″ W.
18 71°23′10″ N. 139°21′46″ W.
19. 72°12′18″ N. 138°26′19″ W.
20. 72°46′39″ N. 137°30′02″ W.
21. 72°56′49″ N. 137°34′08″ W.

Between point 21 and point 22, the limit of the exclusive economic zone is 200 nautical miles seaward from the baseline from which the territorial sea is measured. In the Chukchi Sea, Bering Strait, and northern Bering Sea, the limit of the exclusive economic zone shall be determined by straight lines connecting the following coordinates: [7]

22. 72°46′29″ N. 168°58′37″ W.
23. 65°30′00″ N. 168°58′37″ W.
24. 65°19′58″ N. 168°21′38″ W.
25. 65°09′51″ N. 169°44′34″ W.
26. 64°59′41″ N. 170°07′23″ W.

27. 64°49′26″ N. 170°30′06″ W.
28. 64°39′08″ N. 170°52′43″ W.
29. 64°28′46″ N. 171°15′14″ W.
30. 64°18′20″ N. 171°37′40″ W.
31. 64°07′50″ N. 172°00′00″ W.
32. 63°59′27″ N. 172°18′39″ W.
33. 63°51′01″ N. 172°38′13″ W.
34. 63°42′33″ N. 172°55′42″ W.
35. 63°34′01″ N. 173°14′07″ W.
36. 63°25′27″ N. 173°32′27″ W.
37. 63°16′50″ N. 173°50′42″ W.
38. 63°08′11″ N. 174°08′52″ W.
39. 62°59′29″ N. 174°26′58″ W.
40. 62°50′44″ N. 174°44′59″ W.
41. 62°41′56″ N. 175°02′56″ W.
42. 62°33′06″ N. 175°20′48″ W.
43. 62°24′13″ N. 175°38′36″ W.
44. 62°15′17″ N. 175°56′19″ W.
45. 62°06′19″ N. 176°13′59″ W.
46. 61°57′18″ N. 176°31′34″ W.
47. 61°48′14″ N. 176°49′04″ W.
48. 61°39′08″ N. 177°06′31″ W.
49. 61°29′59″ N. 177°23′53″ W.
50. 61°20′47″ N. 177°41′11″ W.
51. 61°11′33″ N. 177°58′26″ W.
52. 61°02′17″ N. 178°15′36″ W.
53. 60°52′57″ N. 178°32′42″ W.
54. 60°43′35″ N. 178°49′45″ W.
55. 60°34′11″ N. 179°06′44″ W.
56. 60°24′44″ N. 179°23′38″ W.
57. 60°15′14″ N. 179°40′30″ W.
58. 60°11′39″ N. 179°46′49″ W.

Between points 58 and 59 the limit of the exclusive economic zone is 200 nautical miles seaward from the baseline from which the territorial sea is measured. In the southern Bering Sea and north Pacific Ocean, the limit of the exclusive economic zone shall be determined the straight lines connecting the following coordinates:

59. 56°16′31″ N. 174°00′19″ E.
60. 56°15′07″ N. 173°56′56″ E.
61. 56°04′39″ N. 173°41′08″ E.
62. 55°53′59″ N. 173°25′22″ E.
63. 55°43′22″ N. 173°09′37″ E.
64. 55°32′42″ N. 172°53′55″ E.
65. 55°21′59″ N. 172°38′14″ E.
66. 55°11′14″ N. 172°22′36″ E.
67. 55°00′26″ N. 172°06′59″ E.
68. 54°49′36″ N. 171°51′24″ E.
69. 54°38′43″ N. 171°35′51″ E.
70. 54°27′48″ N. 171°20′20″ E.
71. 54°16′50″ N. 171°04′50″ E.
72. 54°05′50″ N. 170°49′22″ E.
73. 53°54′47″ N. 170°33′56″ E.
74. 53°43′42″ N. 170°18′31″ E.
75. 53°32′46″ N. 170°05′29″ E.
76. 53°21′48″ N. 169°52′32″ E.
77. 53°10′49″ N. 169°39′49″ E.
78. 52°59′49″ N. 169°26′53″ E.
79. 52°48′46″ N. 169°14′12″ E.
80. 52°37′43″ N. 169°01′36″ E.
81. 52°26′38″ N. 168°49′05″ E.
82. 52°15′31″ N. 168°36′39″ E.
83. 52°04′23″ N. 168°24′17″ E.
84. 51°53′14″ N. 168°12′01″ E.
85. 51°42′03″ N. 167°59′49″ E.
86. 51°30′51″ N. 167°47′42″ E.
87. 51°22′15″ N. 167°38′28″ E.

From point 87 to point 88, the limit of the exclusive economic zone is 200 nautical miles from the baseline from which the territorial sea is measured.

From point 88, the southern limit of the exclusive economic zone off the coast of Alaska shall be determined by straight lines connecting the following coordinates:[8]

88. 53°28′27″ N. 138°45′20″ W.
89. 54°00′01″ N. 135°45′57″ W.
90. 54°07′30″ N. 134°56′24″ W.
91. 54°12′45″ N. 134°25′03″ W.
92. 54°12′57″ N. 134°23′47″ W.
93. 54°15′40″ N. 134°10′49″ W.
94. 54°20′33″ N. 133°49′21″ W.
95. 54°22′01″ N. 133°44′24″ W.
96. 54°30′06″ N. 133°16′58″ W.
97. 54°31′02″ N. 133°14′00″ W.
98. 54°30′42″ N. 133°11′28″ W.
99. 54°30′10″ N. 133°07′43″ W.
100. 54°30′03″ N. 133°07′00″ W.
101. 54°28′32″ N. 132°56′28″ W.
102. 54°28′25″ N. 132°55′54″ W.
103. 54°27′23″ N. 132°50′42″ W.
104. 54°27′07″ N. 132°49′35″ W.
105. 54°26′00″ N. 132°44′12″ W.
106. 54°24′54″ N. 132°39′46″ W.
107. 54°24′34″ N. 132°38′16″ W.
108. 54°24′39″ N. 132°26′51″ W.
109. 54°24′41″ N. 132°24′35″ W.
110. 54°24′41″ N. 132°24′29″ W.
111. 54°24′52″ N. 132°23′39″ W.
112. 54°21′51″ N. 132°02′54″ W.
113. 54°26′41″ N. 131°49′28″ W.
114. 54°28′18″ N. 131°45′20″ W.
115. 54°30′32″ N. 131°38′01″ W.
116. 54°29′53″ N. 131°33′48″ W.
117. 54°36′53″ N. 131°19′22″ W.
118. 54°39′09″ N. 131°16′17″ W.
119. 54°40′52″ N. 131°13′54″ W.
120. 54°42′11″ N. 131°13′00″ W.
121. 54°46′16″ N. 131°04′43″ W.
122. 54°45′39″ N. 131°03′06″ W.
123. 54°44′12″ N. 130°59′44″ W.
124. 54°43′46″ N. 130°58′55″ W.
125. 54°43′00″ N. 130°57′41″ W.
126. 54°42′34″ N. 130°57′09″ W.
127. 54°42′27″ N. 130°56′18″ W.
128. 54°41′26″ N. 130°53′39″ W.
129. 54°41′21″ N. 130°53′18″ W.
130. 54°41′05″ N. 130°49′17″ W.
131. 54°41′06″ N. 130°48′31″ W.
132. 54°40′46″ N. 130°45′51″ W.
133. 54°40′41″ N. 130°44′59″ W.
134. 54°40′42″ N. 130°44′43″ W.
135. 54°40′03″ N. 130°42′22″ W.
136. 54°39′48″ N. 130°41′55″ W.
137. 54°39′14″ N. 130°39′18″ W.
138. 54°39′54″ N. 130°38′58″ W.
139. 54°41′09″ N. 130°38′58″ W.
140. 54°42′22″ N. 130°38′26″ W.
141. 54°42′47″ N. 130°38′06″ W.
142. 54°42′58″ N. 130°37′57″ W.
143. 54°43′00″ N. 130°37′55″ W.
144. 54°43′15″ N. 130°37′44″ W.
145. 54°43′24″ N. 130°37′39″ W.

---

Boundary Treaty, signed on May 4, 1978, defines the boundary using the same turning points.

[6] The limit of the U.S. exclusive economic zone in areas adjacent to Canada in the Beaufort Sea do not correspond to limits of the Canadian fishery zone, as defined in the Canada Gazette of January 1, 1997.

[7] The line defined by points 22–58 and 59–87 is that line delimited in the maritime boundary treaty signed with the former Soviet Union (now applicable to Russia) June 1, 1990. Senate Treaty Doc. 102–22, and applied provisionally pending the exchange of instruments of ratification, by an exchange of notes effective June 15, 1990.

[8] The limit of the U.S. exclusive economic zone in and seaward of the Dixon Entrance do not correspond to the limits of the Canadian fishery zone, as defined in the Canada Gazette of January 1, 1977. Where the claimed boundaries published by the United States and Canada leave an unclaimed area within Dixon Entrance, the United States will exercise fishery management jurisdiction to the Canadian claimed line where that line is situated southward of the United States claimed line, until such time as a permanent maritime boundary with Canada is established in the Dixon Entrance.

146. 54°43′30.15″ N. 130°37′37.01″ W.

## Caribbean Sea

The seaward limit of the exclusive economic zone around the Commonwealth of Puerto Rico and the Virgin Islands of the United States is a line 200 nautical miles from the baseline from which the breadth of the territorial sea is measured, except that to the east, south, and west, the limit of the exclusive economic zone shall be determined by straight lines connecting the following coordinates: [9]

1. 21°48′33″ N. 65°50′31″ W.
2. 21°41′20″ N. 65°49′13″ W.
3. 20°58′05″ N. 65°40′30″ W.
4. 20°48′56″ N. 65°38′14″ W.
5. 19°57′29″ N. 65°27′21″ W.
6. 19°37′29″ N. 65°20′57″ W.
7. 19°12′25″ N. 65°06′08″ W.
8. 18°45′14″ N. 65°00′22″ W.
9. 18°41′14″ N. 64°59′33″ W.
10. 18°29′22″ N. 64°53′50″ W.
11. 18°27′36″ N. 64°53′22″ W.
12. 18°25′22″ N. 64°52′39″ W.
13. 18°24′31″ N. 64°52′19″ W.
14. 18°23′51″ N. 64°51′50″ W.
15. 18°23′43″ N. 64°51′23″ W.
16. 18°23′37″ N. 64°50′18″ W.
17. 18°23′48″ N. 64°49′42″ W.
18. 18°24′11″ N. 64°49′01″ W.
19. 18°24′29″ N. 64°47′57″ W.
20. 18°24′18″ N. 64°47′00″ W.
21. 18°23′14″ N. 64°46′37″ W.
22. 18°22′38″ N. 64°45′21″ W.
23. 18°22′40″ N. 64°44′42″ W.
24. 18°22′42″ N. 64°44′36″ W.
25. 18°22′37″ N. 64°44′24″ W.
26. 18°22′40″ N. 64°43′42″ W.
27. 18°22′30″ N. 64°43′36″ W.
28. 18°22′25″ N. 64°42′58″ W.
29. 18°22′27″ N. 64°42′28″ W.
30. 18°22′16″ N. 64°42′03″ W.
31. 18°22′23″ N. 64°40′59″ W.
32. 18°21′58″ N. 64°40′15″ W.
33. 18°21′51″ N. 64°38′22″ W.
34. 18°21′22″ N. 64°38′16″ W.
35. 18°20′39″ N. 64°38′32″ W.
36. 18°19′16″ N. 64°38′13″ W.
37. 18°19′07″ N. 64°38′16″ W.
38. 18°17′24″ N. 64°39′37″ W.
39. 18°16′43″ N. 64°39′41″ W.
40. 18°11′34″ N. 64°38′58″ W.
41. 18°03′03″ N. 64°38′03″ W.
42. 18°02′57″ N. 64°29′35″ W.
43. 18°02′52″ N. 64°27′03″ W.
44. 18°02′30″ N. 64°21′08″ W.
45. 18°02′31″ N. 64°20′08″ W.
46. 18°02′01″ N. 64°15′39″ W.
47. 18°00′12″ N. 64°02′29″ W.
48. 17°59′58″ N. 64°01′02″ W.
49. 17°58′47″ N. 63°57′00″ W.
50. 17°57′51″ N. 63°53′53″ W.
51. 17°56′37″ N. 63°53′20″ W.
52. 17°39′48″ N. 63°54′54″ W.
53. 17°37′15″ N. 63°55′11″ W.
54. 17°30′28″ N. 63°55′57″ W.
55. 17°11′43″ N. 63°58′00″ W.
56. 17°05′07″ N. 63°58′42″ W.
57. 16°44′49″ N. 64°01′08″ W.
58. 16°43′22″ N. 64°06′31″ W.
59. 16°43′10″ N. 64°06′59″ W.
60. 16°42′40″ N. 64°08′06″ W.
61. 16°41′43″ N. 64°10′07″ W.
62. 16°35′19″ N. 64°23′39″ W.
63. 16°23′30″ N. 64°45′54″ W.
64. 15°39′31″ N. 65°58′41″ W.
65. 15°30′10″ N. 66°07′09″ W.
66. 15°14′06″ N. 66°19′57″ W.
67. 14°55′48″ N. 66°34′30″ W.
68. 14°56′06″ N. 66°51′40″ W.
69. 14°58′27″ N. 67°04′19″ W.
70. 14°58′45″ N. 67°05′17″ W.
71. 14°58′35″ N. 67°06′11″ W.
72. 14°59′10″ N. 67°07′00″ W.
73. 15°02′32″ N. 67°23′40″ W.
74. 15°05′07″ N. 67°36′23″ W.
75. 16°10′38″ N. 68°03′46″ W.
76. 15°11′06″ N. 68°09′21″ W.
77. 15°12′33″ N. 68°27′32″ W.
78. 15°12′51″ N. 68°28′56″ W.
79. 15°46′46″ N. 68°26′04″ W.
80. 17°21′30″ N. 68°17′53″ W.
81. 17°33′01″ N. 68°16′46″ W.
82. 17°50′24″ N. 68°16′11″ W.
83. 17°58′07″ N. 68°15′52″ W.
84. 18°02′28″ N. 68°15′40″ W.
85. 18°06′10″ N. 68°15′27″ W.
86. 18°07′27″ N. 68°15′33″ W.
87. 18°09′12″ N. 68°14′53″ W.
88. 18°17′06″ N. 68°11′28″ W.
89. 18°19′20″ N. 68°09′40″ W.
90. 18°22′42″ N. 68°06′57″ W.
91. 18°24′39″ N. 68°04′58″ W.
92. 18°25′25″ N. 68°04′09″ W.
93. 18°28′08″ N. 68°00′59″ W.
94. 18°31′27″ N. 67°56′57″ W.
95. 18°32′58″ N. 67°55′07″ W.
96. 18°34′34″ N. 67°52′53″ W.
97. 18°54′37″ N. 67°46′21″ W.
98. 19°00′42″ N. 67°44′25″ W.
99. 19°10′00″ N. 67°41′24″ W.
100. 19°19′03″ N. 67°38′19″ W.
101. 19°21′20″ N. 67°38′01″ W.
102. 19°59′45″ N. 67°31′52″ W.
103. 20°00′59″ N. 67°31′35″ W.
104. 20°01′17″ N. 67°31′29″ W.
105. 20°02′49″ N. 67°31′04″ W.
106. 20°03′30″ N. 67°30′52″ W.
107. 20°09′28″ N. 67°29′11″ W.
108. 20°48′18″ N. 67°17′50″ W.
109. 21°22′48″ N. 67°02′34″ W.
110. 21°30′18″ N. 66°59′05″ W.
111. 21°33′47″ N. 66°57′30″ W.
112. 21°51′24″ N. 66°49′30″ W.

**Navassa Island.** The limits of the exclusive economic zone around Navassa Island remain to be determined.

## Central and Western Pacific

**Northern Mariana Islands and Guam.** The seaward limit of the exclusive economic zone is 200 nautical miles from the baseline from which the breadth of the territorial sea is measured, except that to the north of the Northern Mariana Islands, the limit of the exclusive economic zone shall be determined by straight lines connecting the following points [10]

1. 23°53′35″ N. 145°05′46″ E.
2. 23°44′32″ N. 144°54′05″ E.
3. 23°33′52″ N. 144°40′23″ E.
4. 23°16′11″ N. 144°17′47″ E.
5. 22°50′13″ N. 143°44′57″ E.
6. 22°18′13″ N. 143°05′02″ E.
7. 21°53′58″ N. 142°35′03″ E.
8. 21°42′14″ N. 142°20′39″ E.
9. 21°40′08″ N. 142°18′05″ E.
10. 21°28′21″ N. 142°03′45″ E.
11. 20°58′24″ N. 141°27′33″ E.
12. 20°52′51″ N. 141°20′54″ E.

and, except that to the south of Guam, the limit of the exclusive economic zone shall be determined by straight lines connecting the following points:

13. 11°38′25″ N. 147°44′42″ E.
14. 11°36′53″ N. 147°31′03″ E.
15. 11°31′48″ N. 146°55′19″ E.
16. 11°27′15″ N. 146°25′34″ E.
17. 11°22′13″ N. 145°52′36″ E.
18. 11°17′31″ N. 145°22′38″ E.
19. 11°13′32″ N. 144°57′26″ E.
20. 11°13′23″ N. 144°56′29″ E.
21. 10°57′03″ N. 143°26′53″ E.
22. 10°57′30″ N. 143°03′09″ E.
23. 11°52′33″ N. 142°15′28″ E.
24. 12°54′00″ N. 141°21′48″ E.
25. 12°54′17″ N. 141°21′33″ E.
26. 12°57′34″ N. 141°19′17″ E.
27. 13°06′32″ N. 141°12′53″ E.

**Hawaii and Midway Island.** The seaward limit of the exclusive economic zone is 200 nautical miles from the baselines from which the territorial sea is measured.

**Johnston Atoll.** The seaward limit of the exclusive economic zone is 200 nautical miles from the baselines from which the territorial sea is measured.

**American Samoa.** The seaward limit of the exclusive economic zone shall be determined by straight lines connecting the following points [11]:

1. 11°02′17″ S. 173°44′48″ W.

---

[9] The line defined by points 1–50 is that line delimited in the maritime boundary treaty signed with the United Kingdom (for the British Virgin Islands) at London on November 4, 1993. Senate Treaty Doc. 103–23, and entered into force on June 1, 1995. The line defined by points 50–51 is that line delimited in the maritime boundary treaty signed with the United Kingdom (for Anguilla) at London on November 4, 1993. Senate Treaty Doc. 103–23, and entered into force June 1, 1995. The line from point 1 to point 51 is on the North American Datum 1983 (NAD 83). The line defined by points 57–78 is that line delimited in the maritime boundary treaty signed with Venezuela at Caracas on March 28, 1978; the treaty entered into force on November 24, 1980. TIAS 9890, 32 UST 3100.

[10] The line defined by points 1–12 constitutes the line of delimitation between the maritime zones of the United States and Japan as reflected in an Exchange of Notes effective July 5, 1994. Points 1–12 are on the World Geodetic System 1984 (WGS 84). In this regard, users should be aware that the Government of Japan defines points 1–12 on the Tokyo Datum and the coordinate values will differ slightly from those published in this Notice.

[11] The line defined by points 1–8 is that line delimited in the maritime boundary treaty with New Zealand (for Tokelau) signed at Atafu on December 2, 1980; this treaty entered into force on September 3, 1983, TIAS 10775. The line defined by points 8–32 is that line delimited in the maritime boundary treaty with the Cook Islands signed at Rarotonga on June 11, 1980; this treaty entered into force on September 8, 1983. TIAS 10774. Points 1–32 are on the World Geodetic System 1972 (WGS 72).

2. 10°46′15″ S. 173°03′53″ W.
3. 10°25′26″ S. 172°11′01″ W.
4. 10°17′50″ S. 171°50′58″ W.
5. 10°15′17″ S. 171°15′32″ W.
6. 10°10′18″ S. 170°16′10″ W.
7. 10°07′52″ S. 169°46′50″ W.
8. 10°01′26″ S. 168°31′25″ W.
9. 10°12′44″ S. 168°31′02″ W.
10. 10°12′49″ S. 168°31′02″ W.
11. 10°52′31″ S. 168°29′42″ W.
12. 11°02′40″ S. 168°29′21″ W.
13. 11°43′53″ S. 168°27′58″ W.
14. 12°01′55″ S. 168°10′24″ W.
15. 12°28′40″ S. 167°25′20″ W.
16. 12°41′22″ S. 167°11′01″ W.
17. 12°57′51″ S. 166°52′21″ W.
18. 13°11′25″ S. 166°37′02″ W.
19. 13°14′03″ S. 166°34′03″ W.
20. 13°21′25″ S. 166°25′42″ W.
21. 13°35′44″ S. 166°09′19″ W.
22. 13°44′56″ S. 165°58′44″ W.
23. 14°03′30″ S. 165°37′20″ W.
24. 15°00′09″ S. 165°22′07″ W.
25. 15°14′04″ S. 165°18′29″ W.
26. 15°38′47″ S. 165°12′03″ W.
27. 15°44′58″ S. 165°16′36″ W.
28. 16°08′42″ S. 165°34′12″ W.
29. 16°18′30″ S. 165°41′29″ W.
30. 16°23′29″ S. 165°45′11″ W.
31. 16°45′30″ S. 166°01′39″ W.
32. 17°33′28″ S. 166°38′35″ W.
33. 17°31′45″ S. 166°42′07″ W.
34. 16°56′20″ S. 168°26′05″ W.
35. 16°37′55″ S. 169°18′19″ W.
36. 16°37′36″ S. 169°19′12″ W.
37. 16°34′58″ S. 169°55′59″ W.
38. 16°39′17″ S. 170°19′09″ W.
39. 16°48′46″ S. 171°12′29″ W.
40. 16°49′33″ S. 171°17′03″ W.
41. 16°13′29″ S. 171°37′41″ W.
42. 16°04′47″ S. 171°42′37″ W.
43. 15°58′20″ S. 171°46′06″ W.
44. 15°50′48″ S. 171°50′23″ W.
45. 15°50′12″ S. 171°50′44″ W.
46. 15°14′19″ S. 171°37′37″ W.
47. 15°01′58″ S. 171°31′37″ W.
48. 14°46′48″ S. 171°24′21″ W.
49. 14°27′02″ S. 171°14′46″ W.
50. 14°06′18″ S. 171°04′48″ W.
51. 14°03′28″ S. 171°03′06″ W.
52. 14°03′27″ S. 171°03′05″ W.
53. 14°03′05″ S. 171°02′53″ W.
54. 13°56′54″ S. 170°59′34″ W.
55. 13°54′30″ S. 170°58′20″ W.
56. 13°53′43″ S. 170°57′57″ W.
57. 13°50′40″ S. 170°56′24″ W.
58. 13°13′56″ S. 170°44′20″ W.
59. 13°09′05″ S. 170°42′39″ W.
60. 12°36′18″ S. 170°30′44″ W.
61. 12°36′11″ S. 170°31′35″ W.
62. 12°35′21″ S. 170°36′26″ W.
63. 12°29′47″ S. 171°08′24″ W.
64. 12°27′27″ S. 171°17′25″ W.
65. 12°23′34″ S. 171°25′18″ W.
66. 12°17′36″ S. 171°37′14″ W.
67. 12°14′01″ S. 171°44′25″ W.
68. 12°13′49″ S. 171°44′47″ W.
69. 12°05′27″ S. 172°00′55″ W.
70. 11°54′06″ S. 172°22′53″ W.
71. 11°53′57″ S. 172°23′09″ W.
72. 11°40′49″ S. 172°48′17″ W.
73. 11°26′56″ S. 173°08′46″ W.
74. 11°22′08″ S. 173°15′50″ W.
75. 11°02′28″ S. 173°44′37″ W.
76. 11°02′17″ S. 173°44′48″ W.

Palmyra Atoll-Kingman Reef. The seaward limit of the exclusive economic zone is 200 nautical miles from the baseline from which the territorial sea is measured, except that to the southeast of Palmyra Atoll and Kingman Reef the limit of the exclusive economic zone shall be determined by straight lines connecting the following points:

1. 7°55′04″ N. 159°22′29″ W.
2. 7°31′05″ N. 159°39′30″ W.
3. 7°09′43″ N. 159°54′35″ W.
4. 6°33′40″ N. 160°19′51″ W.
5. 6°31′37″ N. 160°21′18″ W.
6. 6°25′31″ N. 160°25′40″ W.
7. 6°03′05″ N. 160°41′42″ W.
8. 5°44′12″ N. 160°55′13″ W.
9. 4°57′25″ N. 161°28′19″ W.
10. 4°44′38″ N. 161°37′18″ W.
11. 3°54′25″ N. 162°12′56″ W.
12. 2°39′50″ N. 163°05′14″ W.

Wake Island. The seaward limit of the exclusive economic zone is 200 nautical miles from the baseline from which the territorial sea is measured, except that to the south of Wake Island the limit of the exclusive economic zone shall be determined by straight lines connecting the following points:

1. 17°56′15″ N. 169°54′00″ E.
2. 17°46′02″ N. 169°31′18″ E.
3. 17°37′47″ N. 169°12′53″ E.
4. 17°11′18″ N. 168°13′30″ E.
5. 16°41′31″ N. 167°07′39″ E.
6. 16°02′45″ N. 165°43′30″ E.

Jarvis Island. The seaward limit of the exclusive economic zone is 200 nautical miles from the baseline from which the territorial sea is measured, except that to the north and east of Jarvis Island, the limit of the exclusive economic zone shall be determined by straight lines connecting the following points:

1. 2°01′00″ N. 162°22′00″ W.
2. 2°01′42″ N. 162°01′35″ W.
3. 2°03′20″ N. 161°41′33″ W.
4. 2°02′30″ N. 161°36′20″ W.
5. 2°00′13″ N. 161°22′24″ W.
6. 1°50′18″ N. 160°20′42″ W.
7. 1°45′46″ N. 159°52′59″ W.
8. 1°43′31″ N. 159°39′27″ W.
9. 0°58′53″ N. 158°59′04″ W.
10. 0°46′58″ N. 158°48′24″ W.
11. 0°12′36″ N. 158°18′06″ W.
12. 0°00′17″ S. 158°07′27″ W.
13. 0°24′23″ S. 157°49′44″ W.
14. 0°25′44″ S. 157°48′43″ W.
15. 0°58′15″ S. 157°24′52″ W.
16. 2°13′26″ S. 157°49′01″ W.
17. 3°10′40″ S. 158°10′30″ W.

Howland and Baker Islands. The seaward limit of the exclusive economic zone is a line 200 nautical miles from the baseline from which the territorial sea is measured, except to the southeast and south of Howland and Baker Islands the limit of the exclusive economic zone shall be determined by straight lines connecting the following points:

1. 0°14′30″ N. 173°08′00″ W.

2. 0°14′32″ S. 173°27′28″ W.
3. 0°43′52″ S. 173°45′30″ W.
4. 1°04′06″ S. 174°17′41″ W.
5. 1°12′39″ S. 174°31′02″ W.
6. 1°14′52″ S. 174°34′48″ W.
7. 1°52′36″ S. 175°34′51″ W.
8. 1°59′17″ S. 175°45′29″ W.
9. 2°17′09″ S. 176°13′58″ W.
10. 2°32′51″ S. 176°38′59″ W.
11. 2°40′26″ S. 176°51′03″ W.
12. 2°44′49″ S. 176°58′01″ W.
13. 2°44′53″ S. 176°58′08″ W.
14. 2°56′33″ S. 177°16′43″ W.
15. 2°58′45″ S. 177°26′00″ W.

Dated: August 10, 1995.

**David A. Colson,**

*Deputy Assistant Secretary for Oceans*

[FR Doc. 95–20794 Filed 8–22–95; 8:45 am]

BILLING CODE 4710–09–M

# DEPARTMENT OF STATE IN CONJUNCTION WITH DEPARTMENT OF THE INTERIOR

[Public Notice 2243]

## Participation in Working Group To Elaborate a U.N. Declaration on Indigenous Rights

The Economic and Social Council (ECOSOC) of the United Nations has approved establishment of an open-ended, inter-sessional working group of the Commission on Human Rights to elaborate a draft declaration on indigenous rights. The goal of the Working Group is to prepare a declaration for consideration and adoption by the General Assembly during the International Decade of the World's Indigenous People (1994–2004). [The Working Group will consider the draft prepared by the independent experts who comprise the Working Group on Indigenous Populations, which is entitled "United Nations draft declaration on the rights of indigenous peoples."]

ECOSOC also approved adoption of a special procedure to authorize participation in the Working Group by organizations of indigenous people, including tribal governments, not in consultative status with ECOSOC. Interested organizations should apply to the Coordinator of the International Decade at the following address: The Honorable Ibrahima Fall, Assistant Secretary General for Human Rights, Human Rights Center, Office of the United Nations in Geneva, Palais des Nations, 8–14 Avenue de la Paix, 1211 Geneva, Switzerland.

Applications must include the following information about the organization concerned:

(a) The name, headquarters or seat, address and contact person for the organization;