DANIEL BERMAN
BERMAN O'CONNOR & MANN
Suite 503, Bank of Guam Building
111 Chalan Santo Papa
Hagåtña, Guam 96910
Telephone: (671) 477-2778
Facsimile: (671) 477-4366

JAMES P. WALSH (Pro Hac Vice)
DAVIS WRIGHT TREMAINE LLP
505 Montgomery Street, Suite 800
San Francisco, CA 94111-6533
Telephone: (415) 276-6556
Facsimile: (415) 276-6599

Attorneys for Defendant and Claimant:
MARSHALLS 201 and MARSHALL ISLAND FISHING COMPANY

**FILED**
DISTRICT COURT OF GUAM

OCT 29 2007

JEANNE G. QUINATA
Clerk of Court

UNITED STATES DISTRICT COURT

FOR THE TERRITORY OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | CIVIL CASE NO. 06-00030 |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | DECLARATION OF JON VAN |
| ) | DYKE IN SUPPORT OF |
| MARSHALLS 201 ) | DEFENDANT'S MOTION TO |
| ) | DISMISS |
| Defendant. ) | |

## DECLARATION OF JON M. VAN DYKE

I, JON M. VAN DYKE, hereby declare under oath and penalty of perjury that:

1. I am an attorney practicing law at 2515 Dole Street, Honolulu, Hawaii. I am also a Professor of Law at the University of Hawaii where I have taught international law for more than over 30 years. One of my specialties is international law of the sea. I have been retained as an expert on international law by the Defendant in this case. I make this Declaration upon personal knowledge with respect to the matters addressed in this Declaration and, if called

**ORIGINAL**

upon to testify in Court, I could truthfully and competently testify to the following.

2. Based on customary international law and Article 121(3) of the United Nationals Convention on Law of the Sea, it is my opinion that Baker and Howland Islands, protectorates of the United States located in the Pacific Ocean, are uninhabitable and have no economic life of their own, and, therefore, that the United States is not authorized under international law to declare a 200-mile exclusive economic zones (EEZs) around them.

3. Article 121 of the 1982 Law of the Sea Convention reads as follows:

> *Article 121 -- Regime of islands*
> 1. An island is a naturally formed area of land, surrounded by water, which is above water at high tide.
> 2. Except as provided for in paragraph 3, the territorial sea, the contiguous zone, the exclusive economic zone and the continental shelf of an island are determined in accordance with the provisions of this Convention applicable to other land territory.
> 3. Rocks which cannot sustain human habitation or economic life of their own shall have no exclusive economic zone or continental shelf.

4. The term "rock" in Article 121(3) is not otherwise defined in the Law of the Sea Convention, but it is clear that a "rock" is a type of island and that this term has a been defined through subsequent international negotiations and the practice of states. In WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1965 (1971), "rock" is defined as "[a] mass of stone lying at or near the surface of the water" and "a barren islet." Professor Jonathan I. Charney has explained that "the legal definition of 'rocks' need not conform to scientific or dictionary definitions." Jonathan I. Charney, *Rocks That Cannot Sustain Human Habitation*, 93 AMERICAN JOURNAL OF INTERNATIONAL LAW 863, 870 (1999). Whether a particular island or "islet" is a

SFO 375608v1 0081226-000001

"rock" is therefore to be determined by applying the principles in the Law of the Sea Treaty, in light of other international precedents.

5. Article 121(3) of the Law of the Sea Convention makes it clear that a principal determinant regarding whether an insular structure is entitled to generate an exclusive economic zone is whether it can sustain human habitation or economic life of its own. The concept of "human habitation" must refer to some form of habitation that exists apart from a desire to enable an insular structure to generate extended maritime zones. It must be a habitation that exists for its own sake, as part of an ongoing community that sustains itself and continues through the generations. This conclusion is supported by the views of the French diplomat Gidel, who emphasized during the 1934 debates on the status of islands that to qualify as an "island" a location had to have "natural conditions" that permitted a "stable residence of organized groups of human beings." GIDEL, 3 LE DROIT INTERNATIONAL PUBLIC DE LA MER 684 (1934).

6. Some have argued that the "human habitation" language does not inevitably require that the insular feature be permanently inhabited, but it must require, at a minimum, that it provide support for a *nearby* stable community. It could, for instance, be visited on a regular basis by fishers from neighboring islands who use it as a base to harvest the living resources of the area. This linkage follows from the unitary nature of the phrase "capable of sustaining human habitation or economic life of their own" in Article 121(3). Something more is required as a commitment to the resources on or surrounding the insular structure greater than sending an occasional explorer or scientist to visit the insular feature.

7. This conclusion is supported by the opinion issued by Judge Budislav Vukas of the International Tribunal for the Law of the Sea, who recently explained that the underlying purposes for giving exclusive rights over offshore resources to the coastal states through the establishment of the exclusive economic zone was to protect the economic interests of the coastal communities that depended on the resources of the sea, and thus to promote their economic development and enable them to feed themselves. *"Volga" (Russian Federation v. Australia), Prompt Release, Judgment*, Declaration of Judge Vukas, ITLOS Reports 2002, <http://www.itlos.org/start2_en.html>. This rationale, he observed, does not apply to uninhabited islands, because they have no coastal fishing communities that require such assistance. *Id.*

8. State practice that supports the conclusion that isolated uninhabitable islands do not have the capacity to generate exclusive economic zones include:

(a) the decision of the United Kingdom to refrain from declaring an EEZ around Rockall, a towering granite feature located 300 kilometers (190 miles) northwest of the nearest British territory, Fishery Limits Order (United Kingdom), S.I. 1997, No. 1750; *see generally* D.H. Anderson, *British Accession to the UN Convention on the Law of the Sea*, 46 INTERNATIONAL AND COMPARATIVE LAW QUARTERLY 761, 778 (1997) (*citing* House of Commons Hansard, vol. 298, written answers, col. 397);

(b) the statement issued by Republic of China (Taiwan) when ratifying the 1958 Convention on the Continental Shelf, with reference to the Senkaku/Diaoyudao Islands, that "determining the boundary of the continental shelf of the Republic of China, exposed rocks

SFO 37560Rv1 0081226-000001

and islets shall not be taken into account." CLIVE SYMMONS, THE MARITIME ZONES OF ISLANDS IN INTERNATIONAL LAW 136 and 270 n. 539 (1979) (*citing* Allen & Mitchell, *The Legal Status of the Continental Shelf of the East China Sea*, 51 OREGON LAW REVIEW 789, 808 (1972)) (a view that has been joined by a prominent scholar from the People's Republic of China, who has reported that the current position of the People's Republic of China is similar: "China holds that the Diaoyudao Islands are small, uninhabited, and cannot sustain economic life of their own, and that they are not entitled to have a continental shelf." Ji Guoxing, *The Diaoyudao (Senkaku) Disputes and Prospects for Settlement*, 6 KOREAN JOURNAL OF DEFENSE ANALYSIS 285, 306 (1994));

(c) the statements made by the People's Republic of China that Japan's Okinotorishima Island is not entitled to generate an EEZ because it is uninhabitable, *China Says Okinotorishima a Mere Rock, Not an Island*, THE DAILY YOMIURI (TOKYO), April 24, 2004;

(d) the decisions made by both Nicaragua and Honduras that the five small cays east of their coasts (Bobel Cay, Savanna Cay, Port Royal Cay, South Cay, and Edinburgh Cay) should generate only 12 nautical mile territorial seas, and should not generate EEZs, *Case Concerning Territorial and Maritime Dispute Between Nicaragua and Honduras in the Caribbean Sea*, para. 137 (International Court of Justice, October 8, 2007); and

(e) the protests filed by Antigua and Barbuda, St Kitts and Nevis, and Saint Vincent and the Grenadines to the use of tiny and uninhabited Aves Island in the Caribbean as a basepoint for claims to continental shelf and EEZ rights. Robert Bradley, Martin Pratt and

Clive Schofield, *Jane's Exclusive Economic Zones 2000-2001*, at 331 (Coulsdon: Jane's Information Group, 2000).

Dated this 26 day of October, 2007.

BY: _____
JON M. VAN DYKE

SFO 375608v1 0081226-000001