DANIEL J. BERMAN
BERMAN O'CONNOR & MANN
Suite 503, Bank of Guam Building
111 Chalan Santo Papa
Hagåtña, Guam 96910
Telephone: (671) 477-2778
Facsimile: (671) 477-4366

JAMES P. WALSH (PRO HAC VICE)
DAVIS WRIGHT TREMAINE LLP
505 Montgomery Street, Suite 800
San Francisco, CA 94111-6533
Tel: (415) 276-6556
Fax: (415) 276-6599

Attorneys for Defendant and Claimant:
*MARSHALLS 201 and MARSHALL*
*ISLANDS FISHING COMPANY*


# UNITED STATES DISTRICT COURT

# FOR THE TERRITORY OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MARSHALLS 201,<br><br>Defendant. | CIVIL CASE NO. 06-00030<br><br>**DECLARATION OF EUGENE MULLER**<br><br>**RE: INNOCENT OWNER** |

## DECLARATION OF EUGENE MULLER

I, **EUGENE MULLER**, hereby declare under penalty of perjury that:

      1.    I make this Declaration upon personal knowledge unless otherwise stated and will testify in Court as an adult to the following.

      2.    I am manager of operations for the Marshalls 201 on behalf of owner

ORIGINAL

Marshall Islands Fishing Company after February 28, 2006.

      3.     MIFCO was granted its Corporate Charter on February 28, 2006.  See, Corporate Charter of MIFCO, attached as Exhibit "A".

      4.     The MIFCO stock has been issued and distributed in certificates of stock to the shareholders.  See, MIFCO stock certificates, Exhibit "B", attached.

      5.     On February 28, 2006, Marshall Islands Fishing Company (herein "MIFCO") received all ownership rights, title and possession  of the Vessel F/V Marshalls 201 by conveyance of the Bill of Sale and Protocol of Acceptance and Delivery.  See, Bill of Sale; and, Protocol of Delivery and Acceptance, attached as Exhibit "C".

      6.     No knowledge, actual or otherwise constructive, existed in MIFCO of any alleged illegal conduct of the Marshalls 201 or its Master Wen Yueh Lu in charge, on or before September 7, 8 and 9, 2006.

      7.     The only information available to MIFCO regarding the Marshalls 201 location and fishing work is a once a week voyage summary report received by MIFCO  at the end of each seven (7) day period.

      8.     Only after the Marshalls 201 was arrested on September 9, 2006, did I receive any information of an alleged violation of the United States fishing laws.

      9.     At no time prior to the September 9, 2006 arrest of the Marshalls 201 did the Marshalls 201, its Master Wen Yueh Lu or MIFCO suffer or cause to be suffered any arrest of the Marshalls 201, its Master Wen Yueh Lu, or owner MIFCO, for any reason including alleged violations of Unite States fishing laws.

      10.     Master Wen Yueh Lu is unavailable for any court proceedings in the U.S. because, on information and belief, he is at sea under new employment and the U.S. has

DEC Eugene Muller (3) (4)

outstanding threats of criminal charges.

11.     Upon receipt of notice by MIFCO of the alleged violations of the United States fishing laws and the arrest of Marshalls 201, MIFCO terminated the employment of Master Wen Yueh Lu upon its release from arrest in Guam on October 13, 2006. See, Resolution and Minutes of MIFCO, April 16, 2007, attached Exhibit "D". Meetings of the MIFCO Board of Directors are routinely held and written minutes are prepared.

12.     MIFCO has always taken, and takes now, substantial and reasonable steps to prevent any violations of the United States fishing laws.

13.     MIFCO provided Master Wen Yueh Lu and the Marshalls 201, in advance of the September 2006 voyage, with the United States map of its Exclusive Economic Zone and other Pacific Island nations. See, Map, Exhibit "4", Deposition Wen Yueh Lu, p. 22.

14.     Master Wen Yueh Lu of the Marshalls 201 was verbally warned by MIFCO not to fish without a permit in any United States Exclusive Economic Zones in his use of the vessel Marshalls 201.

15.     MIFCO common stock is owned by two shareholders identified as the Marshall Islands Marine Resources Authority ("MIMRA") and Koo's Fishing Company.

16.     After the seller conveyed the Marshalls 201 to MIFCO, the Republic of Marshall Islands Government issued appropriate ship registration, permits and licenses for the Marshalls 201 to do its fishing business in the Pacific Ocean. See, Marshalls 201, Permits and Licenses, collectively attached as Exhibit "E".

17.     The vessel Marshalls 201 is provided a flag and is duly licensed for

DEC Eugene Muller (3) (4)

business by the Government for the Republic of the Marshall Islands.

18.    The vessel Marshalls 201 was licensed to conduct fishing operations in the EEZ waters of the Republic of Kiribati at all relevant times in September 2006.

19.    The United States Government neither requested, nor received, any permission from the Government of the Republic of the Marshall Islands to stop and inspect the vessel Marshalls 201 on September 9, 2006.

20.    MIFCO is not a partnership between MIMRA and Koo's Fishing Company. See, Joint Venture Agreement, dated May, 2005, p. 7, ¶26, attached as Exhibit "F".

21.    The purpose of MIFCO, and in fact its conduct, is to encourage Marshallese' citizens to immerse themselves in the business of tuna fishing, instead of merely supervising the issue of fishing permits to foreign vessels whose owners are located within the United States, Japan, Russia and the Republic of China.

22.    The Marshalls 201 functions as a school providing an education to young Marshallese men training in the contemporary business of tuna fishing.

23.    My duties for MIFCO include the acquisition and purchase of fuel, food and provisions for the vessel; the employment of local Marshallese on board the fishing vessel, who maintain a 90% retention rate for work on subsequent voyages of the fishing vessels; and, receipt and distribution of weekly voyage report summaries from the vessel's operation. See, September 2006 Voyage Location Summary, Exhibit "G", attached.

24.    I am responsible for the renewal and maintenance of the Marshals 201 fishing permits and registration.

25.    I report fishing and catch information from MIFCO to the marine and

DEC Eugene Muller (3) (4)

regulatory authorities of the Marshall Islands Government and the Forum Fisheries Agency in Honiara, Solomon Islands.

26. The once a week frequency of my receipt and distribution of weekly vessel voyage report summaries from the Marshalls 201 is standard in the industry of commercial fishing by purse seine vessels in the Pacific Ocean and is the requirement of Marshall Islands Government and Forum Fisheries Agency.

27. MIFCO paid the $2,950,000.00 Bond for the release of the Marshalls 201 and its fish catch on October 13, 2006.

28. The United States' estimate of market value for the vessel Marshalls 201 was equivalent to $2,600,000.00 and the fish catch in the hold was $350,000.00. See, Captain Unterburg Report, p. 17, ¶C, attached Exhibit "H".

29. At the time of the arrest, the total fish catch on board was 500 metric tons. Id.

Further Declarant Sayeth Naught.

Dated this 26ᵀᴴ day of October, 2007.

BY: _____
     EUGENE MULLER

DEC Eugene Muller (3) (4)

# EXHIBIT "A"



# Republic of the Marshall Islands

## Corporate Charter

WHEREAS, certain persons have associated themselves for the purposes of forming a body corporate to conduct business under the laws of the Republic of the Marshall Islands and have submitted Articles of Incorporation and By-laws and said Articles and By-laws have been reviewed and approved;

NOW, THEREFORE, pursuant to the authority vested in the Registrar of Corporations responsible for resident domestic and authorized foreign corporations by the Associations Law, 18 MIRC, Chapter IA, as amended,

MARSHALL ISLANDS FISHING COMPANY

is hereby constituted a resident domestic body corporate and granted a Charter in its corporate name with full rights to do all things necessary and proper to the scope of its Articles.

Nothing in the Articles of Incorporation of this corporation shall be taken or construed in any way as empowering this corporation to purchase or own any real property in the Republic for the Marshall Islands

This corporation shall and must comply with all laws and regulations pertaining to doing business in the Republic of the Marshall Islands including, but not limited to, those relating to foreign investment and corporations.

This Charter is subject to amendment, suspension, or revocation by future laws or regulations

IN WITNESS WHEREOF the Registrar of Corporations responsible for resident domestic and authorized foreign corporations in the Republic of the Marshall Islands has hereunto set his hand and affixed the Seal of the Republic of the Marshall Islands this 28th day of FEBRUARY 2006

S. R. BLOOMFIELD
Registrar of Corporations

# EXHIBIT "B"



No. 1

1,470,000 Shares

# CERTIFICATE OF STOCK
## OF
# MARSHALL ISLANDS FISHING COMPANY

This Certificate acknowledges that the corporation has duly approved and issued at $1.00 par value

per share    1,470,000    shares of common stock to:

Marshall Islands Marine Resources Authority ("MIMRA")

_____
Signature Director and/ or Officer

02/27/2006
Date

_____
Signature Director and/ or Officer

02/27/2006
Date



No. 2

# CERTIFICATE OF STOCK

## OF

# MARSHALL ISLANDS FISHING COMPANY

1,530,000 Shares

This Certificate acknowledges that the corporation has duly approved and issued at $1.00 par value

per share     <u>1,530,000</u>    shares of common stock to:

<u>Koo's Fishing Company, Ltd.</u>

Signature Director and/ or Officer     Date    02/27/2006

Signature Director and/ or Officer     Date    02/27/2006

# EXHIBIT "C"



# KOO'S FISHING COMPANY LIMITED

P.O.BOX 321
MAJURO, MH96960
REPUBLIC OF THE MARSHALL ISLANDS

TEL : (692) 625-5310
FAX : (692) 625-5311
E-mail : kfishing@ntamar.net

## BILL OF SALE

| | |
|---|---|
| Name of Ship: | KOO'S 106 |
| Date of Completion: | March, 1999 |
| Port of Registry: | Jaluit, Marshall Islands |
| Registration Number: | 60004 |
| Type of Vessel: | Purse Seine Fishing Vessel |
| Main Engine: | Diesel 3200PS x 600RPM |
| Gross Tonnage: | 1096/TONS |
| Net Tonnage | 416M/TONS |
| Registered Length: | 70.46M |
| Registered Breadth: | 12.20M |
| Registered Depth: | 7.20M |

and as described in more detail in the Certificate of Ship Registration, the Certificate of Ship's Survey, and Survey Report.

We, Koo's Fishing Company Limited (hereinafter called the "SELLER") having our principal place of business at P.O. Box 321, Majuro, MH 96960, Republic of the Marshall Islands in consideration of the sum of United States Dollars One Dollar only paid to us by Marshall Islands Fishing Company (hereinafter called the "BUYER") it's principal place business at P.O. Box 1138, Majuro, MH 96960 the receipt whereof is hereby acknowledged, hereby transfer our whole title to an interest in the ship above particularly described, and in the boats, tackle and other appurtenances belonging to the said ship to the BUYER. Further we, the SELLER for ourselves and our successors covenant with the BUYER and their assignees, that we have power to transfer the said ship and title thereto in manner aforesaid and that the same is free from all debts, encumbrances and maritime liens.

IN WITHNESS WHEREOF we have executed this Bill of Sale this day of February 17, 2006.

SIGNED on behalf of the SELLER by Johnson Chuang in his capacity as President of Seller and in pursuance of a Resolution of the Board Directors of the Seller.

SUBSCRIBED AND SWORN TO BEFORE
ME THIS DAY OF February, 2006.

Asst. Clerk of Courts
Republic Of The Marshall Islands

Koo's Fishing Company Limited

00064 Chuang / President

REPUBLIC OF THE MARSHALL ISLANDS
HIGH COURT SEAL



# KOO'S FISHING COMPANY LIMITED

P.O.BOX 321
MAJURO, MH96960
REPUBLIC OF THE MARSHALL ISLANDS

TEL : (692) 625-5310
FAX : (692) 625-5311
E-mail : kfishing@ntamar.com

## PROTOCOL OF DELIVERY AND ACCEPTANCE OF
## M.V. "KOO'S 106"

KNOW ALL PERSONS BY THESE PRESENTS:

That the undersigned, Koo's Fishing Company Ltd. P.O. Box 321, Majuro, MH96960,
Republic of the Marshall Islands (hereinafter called the "SELLER") has sold and delivered to
Marshall Islands Fishing Company, P.O. Box 1138, Majuro, MH96960, Republic of the
Marshall Islands (hereinafter called the "BUYER") all rights, Title and interest in and to
"KOO'S 106" (hereinafter called the "VESSEL"). Together with those stores and equipments
of whatever nature, now on board the afore mentioned VESSEL, free and clear of any debts,
encumbrances, mortgages, linens, claims, taxes and debts whatsoever in accordance with the
provisions of Sales Contract and Memorandum of Agreement made by and between the Seller
and the BUYLER dated February 17, 2006

The BUYLER does hereby accept delivery, title and risk of and to the afore mentioned
VESSEL as of the date and time set out above and certify that the same is delivered in
accordance the provisions of the said Sales Contract and Memorandum of Agreement.

Finally, this protocol of Delivery and acceptance does not release the SELLER or the BUYER
from their respective responsibilities stated under the said Contract.

SELLER
Koo's Fishing Company Limited

BUYER
Marshall Islands Fishing Company

By:  Johnson Chuang

Date: 02/28/2006

By:

Date: 02/25/2006

SUBSCRIBED AND SWORN TO
ME THIS 28th DAY OF February 2006

00065

Asst. Clerk of Courts
Republic Of The Marshall Islands

# EXHIBIT "D"

# MARSHALL ISLANDS FISHING COMPANY

## DIRECTORS' RESOLUTION

**THE UNDERSIGNED**, being all the Directors of **MARSHALL ISLANDS FISHING COMPANY**, a domestic corporation (the "Corporation"), having formally convened at a duly called meeting of the Board of Directors of the Corporation on March 29, 2007, and do hereby consent to the actions taken or to be taken as set forth in the resolution below.

**WHEREAS**, the President and General Manager have reviewed the activities of Marshall Islands Fishing Company and its vessel Marshalls 201 over the previous one (1) year period;

**WHEREAS**, it is in the best interest of the Marshall Islands Fishing Company that certain actions and policies be confirmed in writing;

**NOW, THEREFORE, BE IT RESOLVED**, that termination of former Captain Wen Yueh Lu from the command of the Marshalls 201 as fish master is hereby ratified;

**RESOLVED FURTHER**, that the hiring and contract for new Captain Yen Hsin-Yi on October 20, 2006 is hereby ratified;

**RESOLVED FURTHER**, that the company policy as previously expressed orally and in writing by this Board of Directors, General Manager, Shareholders and President to its Captains, Fishmasters and officers, to not violate the Exclusive Economic Zone of any nation with Territorial Sea and Exclusive Economic Zone claims in the Pacific Ocean or anywhere in the World is hereby ratified and confirmed;

**RESOLVED FURTHER**, that the deposit of bail bond of $2,950,000.00 in the United States District Court for the Territory of Guam to release from arrest the Marshalls 201 is hereby ratified.

**RESOLVED FURTHER**, that a facsimile copy of a signature of a Director to this Resolution may be relied upon to the full extent as if it were an original signed document.

Dated: _4/13/07_

DIRECTOR

Dated: _4/16/07_

DIRECTOR

Dated: _4/16/07_

DIRECTOR

Dated: _04/16/2007_

DIRECTOR

Dated: _04/16/2007_

DIRECTOR

# Marshall Islands Fishing Co.

P.O. Box 1138
Majuro, Marshall Islands 96960
Tel : (692) 625-7410
Fax: (692) 625-7411
Email: mifco@ntamar.net

## 2nd Regular Board Meeting
## March 29, 2007

1. **call to order**:
   a. Johnson Chuang called to order the meeting and welcomed everyone to the 2nd regular meeting of the Board of Directors of MIFCO.
   b. Agenda adopted.

2. **Present**:
   a. Mr. Kwang Ming Koo, Chairman
   b. Mr. Johnson Chuang, member
   c. Minister John M. Silk, member
   d. Mr. Glen Joseph, member

3. **Apologies**:
   a. Johnson apologized for the absence of Mr. Shimizu, as he is in Japan for operations and marketing work.

4. **Chairman's remarks**:
   a. Mr. Koo made opening remarks and made apologies for the U.S. case against the joint venture vessel F/V Marshalls 201.
   b. Mr. Koo pointed out that a settlement with the U.S. was not reached in Guam due to excessive demands by the U.S. and the negative impression U.S. has on the company.
   c. Further, Mr. Koo reiterated that the vessel is in its first year of operation under the joint venture and the U.S. case contributes to its negative performance.

5. **Response to Chairman's remarks**:
   a. Minister Silk, as chairman of the MIMRA Board, welcomed Mr. Koo and Johnson and thanked Mr. Koo for his remarks. Further, Minister Silk thanked Mr. Koo for the opportunity for MIMRA through the joint venture, noting that it made a profit even in its first year of operation.

6. **Review of 2006 operations**:
   a. In light of the Chairman's remarks on the issue, Johnson informed the Board that the Taipei office Manager and the Captain of the vessel have been terminated and penalized.
   b. Johnson presented the FSMA Eligibility Criteria assessment that was conducted by Deloitte and Touche, noting that Marshalls 201 qualified for 35 points under the FSM Arrangement.

    c.   Johnson presented the 2006 catch reports.
    d.   Currently, the vessel is out fishing with a new Captain, who's learning quickly about the operation.

7. **Review of Financial Statements**:
    a.   Johnson presented the financial statements of MIFCO which were compiled by an independent firm.
    b.   Based on the operation, a projection of eight years would be required to enable the net returns for the parties.

8. **Update on litigation U.S. v. Marshalls 201**:
    a.   Johnson presented a summary prepared by the counsel Berman, O'Connor & Mann on the progress of the case.
    b.   After deliberation on the efforts as outlined by the counsel, it was generally agreed to leave the matter with the attorneys.

9. **New Business**:
    a.   *Fleet expansion*:
        i.   Johnson pointed out that the intention is to expand the number of vessels in the fleet. Unfortunately, the present case may shake the foundation of the future growth of MIFCO, and so, he wishes to seek the views of the other party. Co-financing arrangements with Taiwan's ICDF was also mentioned.
           ii.   In response, the Minister noted that business expansion is generally supported. However, it would need a proposal for review by MIMRA and the RMI Government.

    b.   *Local crew*:
        i.   The issue of FNTC graduates getting sea time training on Marshalls 201 was discussed.
           ii.   Johnson maintained that they can accommodate trainees for the purpose of fulfilling the FNTC's certificate requirements.

10. **Other matters**:
    a.   The issue of the 2 Koo's vessels that are tied up in Taiwan was discussed.

11. **Adjournment**:
    a.   There being no other matters to discuss, the chairman thanked everyone and adjourned the meeting.

**Attestation**:

_____
Chairman

_____
Secretary

# EXHIBIT "E"

## THE FEDERATED STATES OF MICRONESIA
## ARRANGEMENT FOR REGIONAL FISHERIES ACCESS

# Regional Access Licence

The vessel described in this licence is hereby authorised to engage in fishing in the Arrangement Area for the period of the validity of this licence, in accordance with the terms and conditions referred to in Annex V of the Federated States of Micronesia Arrangement for Regional Fisheries Access.

REGIONAL ACCESS LICENCE NUMBER: **RA34105-363MI**

VESSEL NAME: **MARSHALLS 201**

INTERNATIONAL RADIO CALL SIGN: **V7CN4**

COUNTRY OF REGISTRATION (FLAG): **MARSHALL ISLANDS**

COUNTRY OF REGISTRATION NUMBER: **60004**

NAME OF VESSEL MASTER: **HSIN-YI YEN**

HOME PARTY: **MARSHALL ISLANDS**

This licence is valid from 15 October, 2006 to 30 September, 2007 (inclusive).

Signature of Issuing Officer: _____ Dated: 13 October, 2006



REPUBLIC OF THE MARSHALL ISLANDS

# MARSHALL ISLANDS MARINE RESOURCES AUTHORITY

P.O. Box 860 • Majuro, Marshall Islands MH 96960

March 22, 2006

Feleti Teo
Director
Forum Fisheries Agency
Honiara, Solomon Islands

Subject: License for Marshalls 201 under the FSM Arrangement

Dear Feleti,

This is in reference to the application of the above subject vessel, for your further consideration and action in granting its license under the FSM Arrangement.

The vessel operator, Marshall Islands Fishing Co., has submitted to my office the attached detailing the point assessments of the vessel. We have reviewed the assessments and considered them satisfactory, with respect to the criteria prescribed under the Arrangement.

Your continued assistance and support is appreciated. Further, should you have any questions or comments regarding the applications, or any other matter, please contact us at your earliest convenience.

Sincerely,

Glen Joseph
DIRECTOR
MIMRA

Phone: (692) 625-8262/5632   Fax: (692) 625-5447   Email: mimra@ntamar.net   website: http://www.mimra.com

# The Republic Of The Marshall Islands
## MARSHALL ISLANDS MARINE RESOURCES AUTHORITY (MIMRA)



# DOMESTIC FISHING LICENSE

| | |
|---|---|
| *FISHING LICENSE NO.:* | **MH06-C34105S-01** |
| *FFA REGISTRATION NO.:* | **34105** |

**This FISHING license is issued by
the Marshall Islands Marine Resources
Authority pursuant to Revised Act of 1997**

| | |
|---|---|
| NAME OF VESSEL: | **MARSHALLS 201** |
| CALL SIGN OR SIGNAL LETTERS: | **V7CN4** |
| NATIONAL REGISTRATION NO: | **34105** |
| TYPE OF FISHING: | **Purse seine** |

| | |
|---|---|
| GROSS TONNAGE: | **1096 tons** |
| REGISTERED LENGTH: | **70.46 metres** |
| PORT OF REGISTRY: | **Marshall Islands** |

| | |
|---|---|
| NAME OF OPERATOR: | **Marshall Islands Fishing Co.** |
| ADDRESS OF OPERATOR: | **P.O Box 1138, Majuro MH 96960** <br><br> **Marshall Islands** |
| EFFECTIVE DATE OF LICENSE: | **March 17, 2006** |

_____
DIRECTOR
MARSHALL ISLANDS MARINE RESOURCES AUTHORITY

_March 20, 06_
DATE

*The validity of this license expires __March 16, 2007__ This license entitles the vessel to OPERATE within the Fishery Waters of the Marshall Islands as delineated on charts approved by the Government of the Republic of the Marshall Islands and is issued subject to the conditions set out in the Fishing Agreement, and the Laws Of the Republic of the Marshall Islands. Any violation of these conditions may result in the cancellation of the license.*

# AJURO ATOLL LOCAL GOVERNMENT
### P. O. BOX 796
### MAJURO, MARSHALL ISLANDS 96960
### TEL: (692) 625-8147/48   FAX: (692) 625-3757

| Cash Receipt | DATE | NUMBER |
|---|---|---|
| | 3/2/2006 | 5110 |

## REVENUE RECEIPT          51102

Marshall Is. Fi

Marshall Is. Fishing Co.

New Business Lic. for 2006-07/Purse
Seins Fishing./BOM CK#5058

| Description | Amount |
|---|---|
| New Business Lic. for 2006-07/Purse Seins Fishing | 1,500.00 |

OVED BY: _____

| | Total Amount | $1,500.00 |
|---|---|---|



# Forum Fisheries Agency Vessel Register

## FFA *Certificate of Registration*

Registration as at 31 August 2006

This is to certify that the following vessel has achieved good standing on the FFA Vessel Register

### Vessel details

| | |
|---|---|
| Vessel Identifier (FFA VID) | 34105 |
| Name of vessel in English | MARSHALLS 201 |
| Flag | Marshall Islands |
| Vessel Type | Single Purse Seine |
| International Radio Call Sign | V7CN4 |
| Flag State Registration number | 60004 |
| Length Overall (m) | 70.46 |
| Gross Tonnage | 1096 |
| Current Status | Good Standing |

### FFA VMS Automatic Location Communicator (ALC) details

| | |
|---|---|
| Inmarsat Mobile Number (IMN) | 453825610 |
| Manufacturer | TRIMBLE |
| Make | GALAXY INMARSAT-C/GP |
| Model | TNL 7001 |
| Serial number | 0200010192 |
| FFA Security Seal numbers | 01544X, 01545X, 01546X |

### Applicant details

**Company name**     Marshall Islands Fishing Company

**Address**     1138
Majuro
Marshall Islands

Signature of authorised officer     Marcel Kroese

The period of good standing on the FFA Vessel Register covered by this Certificate of Registration is 01 September 2006 to 31 August 2007.



## THE REPUBLIC OF
## THE MARSHALL ISLANDS
**Maritime Administrator**

| THIS SPACE FOR OFFICIAL USE ONLY | |
|---|---|
| OFFICIAL NO. | |
| CALL SIGN | |

# APPLICATION FOR OFFICIAL NUMBER, CALL SIGN AND REGISTRATION OF VESSEL
## PART 1. GENERAL

FOR COMMERCIAL YACHTS ONLY – DESIRED PORT OF REGISTRY: (SELECT ONE) ☐ JALUIT ☐ BIKINI

| NAME | PRESENT NAME | IMO NUMBER |
|---|---|---|
| ...rshalls 201 | Koo's 106 | 9206982 |

| ...SENT COUNTRY OF REGISTRY | SHIP TYPE | CLASSIFICATION SOCIETY |
|---|---|---|
| ...rshall Islands | Purse Seiner | Non-Class |

| ...ME OF OWNER(S) | IMO OWNER NUMBER | EXPECTED DATE OF REGISTRATION |
|---|---|---|
| ...rshall Islands Fishing Co. | | March 10, 2006 |

| ...MICILE | CITIZENSHIP | PERCENTAGE |
|---|---|---|
| ...rshall Islands | Marshall Islands | 100% |

## PART 2. GENERAL PARTICULARS

| ...LT BY | HULL NO. | YEAR BUILT | PLACE BUILT |
|---|---|---|---|
| ...ng Kuo Shipbuilding Co. | | 1999 | Kaohsiung, Taiwan |

| ...MBER OF MASTS | NUMBER OF DECKS | HULL MATERIAL | DATE AND PLACE OF CONVERSION |
|---|---|---|---|
| | 2 | Steel | |

| ...OPELLING POWER | NUMBER AND TYPE OF ENGINES | NAME OF ENGINE MANUFACTURER | AUTOMATED EN/RM |
|---|---|---|---|
| ...36 KW | One Diesel Engine | Daihatsu | Yes: ☐  No: ☒ |

| ...NGTH | BREADTH | DEPTH | AIR DRAFT (HEIGHT) | HULL TYPE |
|---|---|---|---|---|
| ...71 M | 12.20 M | 7.20 M | | |

| ...ROSS TONS | NET TONS | DEADWEIGHT TONS | | |
|---|---|---|---|---|
| ...096 | 416 | | | |

## PART 3. DECISION-MAKER

...e Decision-Maker for the vessel, available on a 24-hour basis, is:

| ...ame and address of Decision-Maker | Telephone | (692)625-7410 |
|---|---|---|
| ...ugene D. Muller | Telefax | (692)625-7411 |
| ...O. Box 1138 | | |
| ...ajuro, Marshall Islands | E-mail | mifco@ntamar.net |

## PART 4. CORRESPONDENCE/BILLING

...eneral Correspondence and Billing should be sent to the following:

| ...ame and address | Telephone | (692)625-7410 |
|---|---|---|
| ...ugene D. Muller | Telefax | (692)625-7411 |
| ...O. Box 1138 | | |
| ...ajuro, Marshall Islands | E-mail | mifco@ntamar.net |

## PART 5. MORTGAGE DATA

...lease indicate if applicant intends to grant a preferred mortgage on the vessel in continuation of a prior ...reign mortgage in accordance with Section 303 of the Marshall Islands Maritime Act:  Yes: ☐   No: ☒

...one or more ship mortgages (or assignments thereof) are to be recorded against the vessel, please provide as much of the following data as is presently known:

| | FIRST PREFERRED MORTGAGEE | SECOND PREFERRED MORTGAGEE |
|---|---|---|
| ...ame of Mortgagee | | |
| ...otal Amount of Mortgage | | |
| ...ischarge Amount | | |
| ...ate of Maturity | | |

## PART 6. RADIO COMMUNICATIONS

A contract has been (or will be) entered into with _____Singapore Telecommunications (SingTel)_____

radio company will be responsible for all communications accounts and for the obtaining of a Marshall Islands Ship Radio Station License.

g the effective date of such contract and the issuance of said license, responsibility for payment of accounts and correspondence relative to

iotelegraphy/telephony service of the vessel is hereby assumed by applicant owner(s).

## RT 7. OATH OF OFFICER OF AN INCORPORATED COMPANY AND AFFIRMATION RE SURRENDER OF FOREIGN DOCUMENTS AND MAKING OF MARKINGS

I, ___Eugene D. Muller___ a citizen of ___Marshall Islands___ residing

NOTE 1) ___Majuro, Marshall Islands___ , swear or affirm, as

 red by Section 209 (1) of the Marshall Islands Maritime Act, that I am the (SEE NOTE 2) ___Manager___

rized in writing of ___Marshall Islands Fishing Co.___

poration organized and existing under the laws of ___Republic of the Marshall Islands___

offices at (SEE NOTE 1) ___P.O. Box 1138 Majuro, Marshall Islands___

said corporation is or will be owner of the vessel called ___Marshalls 201___

ial Number ___60004___ , net tonnage ___416 tons___ , built in ___1999___

___Kaohsiung, Taiwan___ ; that the names and residences of the owner(s)

ospective owner(s) and his/her (their) respective citizenship(s) and proportion(s) of ownership in the vessel is(are) as follows:

| Name | Residence | Citizenship | Proportion |
|---|---|---|---|
| shall Islands Fishing Co. | Majuro, Marshall Islands | Marshall Islands | 100% |
| | | | |
| | | | |
| | | | |

d that ___Lu, Wen-Yueh___ , the present or prospective Master of said

ssel, is a citizen of ___Taiwan___ , and further, that the Master has been ordered

d instructed, upon receipt of the vessel's Marshall Islands Certificate of Registry and other Documents, to surrender

e vessel's outstanding documents issued by the Government of ___Republic of the Marshall Islands___

d to make the Markings required by Section 230 of the Marshall Islands Maritime Act, as amended.

_____
Manager
(TITLE)

ubscribed and Sworn Before me

his _3'_ day of _March_ 20 _04_

t _Majuro High Court_

_____
SIGNATURE OF NOTARY PUBLIC, OR OTHER OFFICER AUTHORIZED
BY MARSHALL ISLANDS LAW TO ADMINISTER OATHS

Notes:
1. Enter street address and country.
2. Enter President, Vice-President, Secretary, Assistant Secretary, Agent, Attorney-in-Fact, whichever title applies.



# Republic of the Marshall Islands

## Office of the Maritime Administrator



# Provisional Certificate of Registry

**OFFICIAL NUMBER:** 60004    **CALL LETTERS:** V7CN4    **SERVICE:** Fishing Vessel

**VESSEL NAME:** MARSHALLS 201    **HOME PORT:** Jaluit

THIS IS TO CERTIFY THAT pursuant to the provisions of the Marshall Islands Maritime Act 1990, EUGENE D. MULLER having submitted the required declaration of ownership does depose and say that:

| NAME | RESIDENCE | CITIZENSHIP | PROPORTION |
|---|---|---|---|
| MARSHALL ISLANDS FISHING COMPANY | Majuro, Marshall Islands | Marshall Islands | 100% |

is (are) the sole owner(s) of the herein named and described vessel

**FORMER NAME:** KOO'S 106    **YEAR BUILT:** 1999

**BUILT BY:** FONG KUO SHIPBUILDING CO.    **PLACE BUILT:** KAOHSIUNG, TAIWAN

**CLASS SOCIETY:** NOT APPLICABLE    **GROSS TONS:** 1096   **NET TONS:** 416

(DUAL TONNAGE VESSEL) **GROSS TONS:** N/A   **NET TONS:** N/A

**ENGINE MANUFACTURER:** DAIHATSU DIESEL ENGINE CO.

**NO. AND TYPE OF ENGINES:** ONE DIESEL ENGINE    **PROPELLING POWER (KW):** 2336

**NUMBER OF MASTS:** 1   **NUMBER OF DECKS:** 2   **HULL MATERIAL:** Steel

**LENGTH:** 60.71   **BREADTH:** 12.20   **DEPTH:** 7.20   **HEIGHT (if applicable):** N/A

and WHEREAS the Maritime Administrator, on behalf of the Government of the Marshall Islands approved the application of the aforesaid owner for registration of the vessel and whereas the owner has complied with the requirements for registration and submitted same, the vessel is therefore duly registered under the Laws and Flag of the Republic of the Marshall Islands.

This Provisional Certificate of Registry and all rights and privileges accorded thereunder, shall expire on the 6th day of September, 2006.

Issued by the Authority of the Government of the Republic of the Marshall Islands at Majuro, Marshall Islands this 7th day of March, 2005.

*E. C. Maitland*

Guy E. C. Maitland
Senior Deputy Commissioner

James M. Myazoe
Deputy Commissioner

MI-200 (Rev. 6/05)



# REPUBLIC OF THE MARSHALL ISLANDS

### OFFICE OF THE
### MARITIME ADMINISTRATOR

## EXTENSION TO CERTIFICATE OF REGISTRY

| Name of Vessel: | Official Number: | Call sign: | Type of Vessel: | Home Port: |
|---|---|---|---|---|
| MARSHALLS 201 | 60004 | V7CN4 | FISHING VESSEL | JALUIT |

**This is to certify that** the period of validity of Provisional Certificate of Registry Number 105-06-MAJ issued on 07-MAR-2006 to the herein named vessel is extended for a period of three (3) months to expire on 06-JUN-2007.

Issued by Authority of the Government of
the Republic of the Marshall Islands
under my hand and seal at

<u>Majuro, Marshall Islands</u>

on this 6th day of March, 2007.

MARITIME ADMINISTRATOR



By: _____
James M. Myazoe
Deputy Commissioner

**THIS EXTENSION CERTIFICATE SHALL BE AFFIXED TO THE PROVISIONAL CERTIFICATE OF REGISTRY TO WHICH IT RELATES.**

Distribution:
Original to vessel owner.
One (1) copy to Vessel file.



| Name of Vessel | Call Sign | Official Number | Gross Tonnage |
|---|---|---|---|
| Marshalls 201 | V7CN4 | 60004 | 1096 |

Licensee

| | | | | | |
|---|---|---|---|---|---|
| 1 | Name of Applicant | Eugene D. Muller | | | |
| | Address: Street | P.O.Box 1138 Majuro, MH96960 | City  Majuro | | Country   RMI |
| 2 | Owner of Vessel | Marshall IslandsFishing Company | | | |
| 3 | Agent or Managers | Name   Eugene D. Muller | | | |
| | | Address   P.O. Box 1138 Majuro, MH 96960 | | | |
| 4 | Accounting Authority | Name   Eugene D. Muller | | | |

5.   Description of transmitting apparatus for which license is desired:  (For GMDSS installations also see Section 7.)

| | | Manufacturer | Type No. | Radiated Power in Antenna (Watts) | Frequency Range | Emission |
|---|---|---|---|---|---|---|
| Telephone | | FURUNO | FS-5000 | 400W | 1.6-27.5MHZ | H3E, J3E |
| MF/HF | | | | | | |
| VHF | 1 | JRC | JHS-25 | 25W | 156-163MHZ | G3E |
| | 2 | | | | | |
| | 3 | | | | | |
| Radar | 1 | FURUNO | FR2165DS | 60KW | 3050MHZ | PON |
| | 2 | FURUNO | FR2155 | 50KW | 9415MHZ | PON |
| Satellite | 1 | JRC | JUE-3108 | 33DBW | 1626.5-1646.5 | QPSKBPS |
| | 2 | | | | | |
| | 3 | | | | | |
| EPIRB | 1 | | | | | |
| | 2 | | | | | |
| SART | 1 | | | | | |
| | 2 | | | | | |
| Onboard Portable | | | | | | |
| | VHF | | | | | |
| | UHF | | | | | |
| Aeronautical | | | | | | |
| Miscellaneous | | JRC | JAX-9 | | 2-2499MHZ | |
| | | ICOM | IC-M700PRO | 150W | 1.6-29.9MHZ | AM/CW/FS |

6.   Description of receiving apparatus:

| | Manufacturer | Type No. | Frequency Range |
|---|---|---|---|
| NAVTEX | | | |
| GPS | FURUNO | GP-90 | 1575.42MHZ |
| Miscellaneous | JRC | NRD-545 | |
| | | | |
| | | | |
| | | | |

# 00067

Case 1:06-cv-00030    Document 100    Filed 10/29/2007    Page 28 of 45

7. Description of GMDSS radio installation:

| | Manufacturer | Type No. | Radiated Power in Antenna (Watts) | Frequency Range | Emission |
|---|---|---|---|---|---|
| VHF radio telephony | JRC | JMS-25 | 29W | 156-163.1MHZ | G3E |
| VHF/DSC encoder | | | | | |
| VHF/DSC watch receiver | | | | | |
| MF radio telephony | | | | | |
| MF/DSC encoder | | | | | |
| MF/DSC watch receiver | | | | | |
| MF/HF radio telephony | JRC | JSS-196 | 250W | 1.6-27.5MHZ | H3E/F1B |
| MF/HF/DSC encoder | | | | | |
| MF/HF/DSC watch receiver | | | | | |
| Direct printing radio telegraphy | | | | | |
| INMARSAT S.E.S. | TRIMBLE | TNL-7001 | 14DBW | 1626-1646MH | Q1B/F1B |
| NAVTEX | JRC | NT-900 | - | 518KHZ | FIB |
| EGC receiver | TRIMBLE | TNL-7001 | 14DBW | 1626-1646MH | Q1B/F1B |
| HF direct printing telegraphy | | | | | |
| Satellite EPIRB | ALDEN | SATFIND-406 | 5W/25MW | 406-121.5MH | G1B/A3X |
| VHF EPIRB | | | | | |
| Radar transponder | CEIS&LESSEY | TR-28 | 400MW | 9.2-9.5GHZ | PON |
| Portable two-way transceivers | JRC | JHS-105 | 1W | 156-163MH | G3E |
| Lifeboat VHF | | | | | |
| UAIS | | | | | |
| SSAS Fitted?   Yes ☐   No ☐ | | | | | |
| Miscellaneous | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

8.   Emergency power supply:   ☒ Storage batteries   and/or   ☐ Generator

9.   Type of Inter-Communications System   PUBLIC ADDRESSOR   Type of clock _____   No. of Emergency Lights in Radio room   2

10.   The application confirms that the ship radio station installation and electronic navigational equipment conform to current ITU Radio Regulations and current IMO/SOLAS requirements.

EUGENE D. MULLER
Applicant – must correspond with item 1

_____ , MANAGER
Signature and Title

Eugene D. Muller
Clearly Print or Type the Above Signature

Date: _____ MARCH 2 _____ 20 _06_

## 00068

Rev. 3/04                                        2 of 2                                        MI-104

# The Republic of the Marshall Islands
## Office of the Maritime Administrator

## APPLICATION FOR MINIMUM SAFE MANNING CERTIFICATE

| | |
|---|---|
| Owner/Operator Name:<br>Marshall Islands Fishing Company | Address:<br>P.O. Box 1138 Majuro, MH96960 |
| Phone Number: 692-625-7410 | Fax Number: 692-625-7411 |
| Vessel Name:<br>Marshalls 201 | Previous Vessel Name:<br>Koo's 106 |
| Official Number: 60004 | IMO Number 9206982 |
| Type: Perse Seine | Date Built: 1999 |
| Gross Tonnage: 1096 | Net Tonnage: 416 |
| Trading Route: N/A | |
| Number of Main Engines: 1 set (Daihatsu 8DL-32) | Type of Boilers: NA |
| KW Propulsion: 2336 | Automated Machinery ☐ Yes ☒ No |
| Steam: ☐ Yes ☒ No | Motor ☐ Yes ☒ No |
| Indicate Class Notations for Unattended Machinery Operation if any. | |
| Classification Society: | |
| Number of Lifeboats: | Number of Rescue Boats: |
| Number of Life Rafts: 4 SETS | Life Rafts with Launching Appliances |

### FOR NEW REGISTRATIONS ONLY

Expected Date of Registration: _____

Expected Location of Registration _____

Comments: _____

Application will be reviewed by Seafarers' Documentation and a Minimum Manning Certificate under the authority of Maritime Regulation 7.38(5), will be issued subject to all necessary information requested being provided.

Print Name of Submitter: EUGENE D. MULLER

(Submitter should be a nominated Decision Maker for the above Vessel)

Signature of Submitter: _____

Title: MANAGER    Date: March 2, 2006

Mail Application To:    Office of the Maritime Administrator
The Republic of the Marshall Islands
c/o Marshall Islands Maritime and Corporate Administrators, Inc.
Attn: Seafarers' Documentation
11495 Commerce Park Drive
Reston, Virginia 20191-1507 USA
Telephone: +1-703-620-4880   Fax: +1-703-476-8522

## 00069

# EXHIBIT "F"

# JOINT VENTURE AGREEMENT

This Joint Venture Agreement (the "Agreement") is made and entered into as of May, 2005, between **Koo's Fishing Company, Ltd.** (Hereinafter referred to as "KFC"), a resident domestic corporation duly organized and existing under the laws of the Republic of the Marshall Islands (hereinafter "the Republic") with its head office at Box 321, Majuro, MH 96960, and the **Marshall Islands Marine Resources Authority** (hereinafter referred to as "MIMRA"), a statutory corporation duly organized in the Republic pursuant to the Marshall Islands Marine Resources Act 1997, found at Title 51, Chapter 1 of the Marshall Islands Revised Code, with its head office at Box 860, Majuro, MH 96960.

WHEREAS, KFC and MIMRA (hereinafter individually referred to as a "party" and collectively referred to as "parties") foresee opportunities within the Republic in the purse seine fishing industry and consider that each can compliment and assist the other to take advantage of these opportunities; and

WHEREAS, the parties agree to form a Joint Venture as an ongoing association (hereinafter referred to as "the Joint Venture") for the purpose of engaging in the purse seine fishing business and for related activities on the terms and conditions set forth in the Agreement.

NOW, THEREFORE, IT IS HEREBY AGREED AS FOLLOWS:

1.      Definitions.  In the Agreement the following expressions shall have the following meanings;

      a.      "Committee" shall mean the Joint Venture Management Committee constituted by Section 8.

      b.      "Profit" shall mean the excess of revenues over expenses. "Loss" shall mean the excess of expenses over revenues.

      c.      "Work" shall mean all activities undertaken by the Joint Venture in performing the purse seine fishing business or related Joint Venture activities.

2.      Business Purpose. The purpose of the Joint Venture shall be to engage in the purse seine fishing business and related activities.

3.      Name. The Joint Venture shall be known as the Marshall Islands Fishing Corporation.

4.      Term of the Agreement. The Joint Venture shall commence on the date this agreement is executed and shall continue in existence until such time the parties mutually agree to terminate it or it is otherwise terminated, liquidated, or dissolved by law. Further, MIMRA

1

00014

shall have the option to withdraw from the Agreement 3 years after the start of fishing operations.

5.     Allocation of Profit and Loss.  Commencing on the date hereof and ending on the termination of the business of the Joint Venture, the parties shall be entitled to share in the net profit of the Joint Venture in the proportions set out hereunder:

KFC          51%
MIMRA        49%

During the first 3 years of operation, MIMRA shall not be liable for any losses exceeding its share of starting capital.  All expenditures authorized or approved for the performance of the parties' obligations under this Agreement shall be an expense or obligation of the Joint Venture. Provided that except as otherwise provided herein expenditure shall not include indirect costs of the parties except and to the extent that such indirect costs are included within the prices for the Work or are specifically agreed to by the Committee as being a Joint Venture expense.  If MIMRA withdraws from the Agreement after 3 years, MIMRA shall be paid its share of profits for the first 3 years, less 3% annual interest on the starting capital.

6.     Working Capital.

a.     Subject to the terms of this Agreement the parties agree that they will promptly furnish, in the proportions set out in Section 5, all working capital, and that they will pay for, in the same proportions, and furnish promptly or promptly make such back to back arrangements between themselves as may be necessary for any deposits, bonds, or other security which may be required in connection with the Work.

b.     Each party may make its contribution to working capital in the form of equipment, material, or other services at values agreed between the parties, and such contributions and the values thereof, and any cash to be contributed, shall be recorded in writing as an addendum hereto.

c.     30% of profit shall be reserved for working capital each year.

d.     The parties agree that MIMRA's contribution to working capital will be provided by KFC or through KFC by other parties and shall be classified as a loan provided to MIMRA at an annual rate of 3% ("Working Capital Loan").  The parties agree to adjust the annual interest rate should the need arise.  For the first 2 years of operation of the Joint Venture, 100% of MIMRA's share of the profits (after deduction of the 30% reserve for working capital), if any, of the Joint Venture shall be used to pay off the Working Capital Loan.  For each year after the 2nd year of operation of the Joint Venture 50% of MIMRA's share of the profits (after deduction of the 30% reserve for working capital), if any, of the Joint Venture shall be used to pay off the Working Capital

2

Loan. These payback provisions shall continue until such time as the Working Capital Loan has been re-paid in full.

7.     <u>Managing Partner</u>.  For the purpose of the Joint Venture, the Managing Partner shall be KFC. The Managing Partner shall have, and is hereby delegated, such powers, authorities, duties, and responsibilities, including powers of attorney, as may be appropriate to enable it to properly perform the work required. In respect of its work as Managing Partner, KFC will be paid an annual management fee of 2% of the gross revenue of the Joint Venture. The management fee shall be charged by KFC to the Joint Venture annually and shall be a cost to the Joint Venture payable by the Joint Venture to KFC within 60 days of the charge having been made.

8.     <u>Joint Venture Management Committee</u>.

      a.     The parties hereby establish a Joint Venture management committee, which shall consist of 3 members to be designated by KFC and 2 members to be designated by MIMRA. A party may change, at any time, its designated members by sending written notice of the change to the other party. The first members of the Committee shall be:

| For KFC: | Kwang-Ming Koo | For MIMRA: |
| | Richard Koo | Chairman, MIMRA Board of Directors |
| | Johnson Chuang | Director, MIMRA |

      b.     The members of the Committee shall have full authority to act for and bind the party which those members represent in any and all matters involving the Work. The duties and responsibilities of the Committee shall be to resolve any special problems which may arise from time to time in carrying out the Work. The Committee is authorized to consider and decide action to be taken to resolve such special problems. Decisions of the Committee shall be made by majority vote of its members.

      c.     Meetings of the Committee may be called by any party on 5 days notice (excluding weekends) by fax or hand delivered letter.

      d.     Each member of the Committee shall be indemnified out of the funds of the Joint Venture against all liabilities suffered or incurred by the member in the *bona fide* discharge of his duties as a member of the Committee.

      e.     The Committee shall arrange for the opening of such bank accounts as may be appropriate and the parties shall pay to the credit of such account such sums as shall be necessary to provide working capital for the Joint Venture in the agreed proportions.

3

     f.     The Committee shall keep at a convenient place full and proper books of account and records relating to the Joint Venture, and such books and records shall be available at all reasonable times for inspection by any party.

     g.     On April 30, 2006, and April 30 of each succeeding year, or on such other date as the parties may agree, the Committee shall take an account of all assets and liabilities of or relating to the Joint Venture and shall prepare a balance sheet and profit and loss account of which copies shall be supplied to each party.

9.     <u>Bank Accounts</u>.

     a.     All sums received by any party or to its credit in connection with the Work shall promptly be paid to the credit of such account(s) as set forth in Section 8(e).

     b.     No payments shall be made or moneys withdrawn from any such banking account except for the purposes of the Joint Venture and authorized by the Committee.

     c.     All moneys from time to time required by the parties for the purposes of the Joint Venture shall be drawn or paid from the said banking account.

     d.     The said banking account shall be operated by and checks drawn in accordance with instructions from the Committee.

10.     <u>Disposition of Property After Termination</u>.  Within 6 months after the date of termination of this Agreement, all equipment, materials, and other real or personal property acquired by the parties for the purposes of the Joint Venture shall, unless otherwise agreed by the parties, be sold by tender or auction. Any party may bid or tender for such property.  Koo's Fishing Company, Ltd shall have the first right to bid or tender for such property.  The proceeds of such sale shall be paid to the credit of the bank account as herein described.

11.     <u>Interim Returns of Working Capital</u>.  Interim returns of working capital subscribed by the parties, and other funds surplus to the requirements of and for the time being in the control of the party and the distributions of profit shall be made at such time and in such manner as the Committee shall from time to time determine; provided, however, that any interim payments shall be deemed to be provisional payments only and subject to adjustments at the time of the final statement of accounts of the Joint Venture.

12.     <u>Final Statement of Accounts</u>.  At the end of the Joint Venture pursuant to Section 4 and on completion of payment to the parties of all moneys due to them and on receipt of all proceeds of the sale of equipment, materials, and other real or personal property sold pursuant to Section 10, the Committee shall cause a final account to be prepared showing, after deduction of such management expenses as have been agreed, the total net profit earned or loss incurred by them jointly in connection with the Joint Venture. Upon such account being agreed by both

4

parties, such total net profit (if any) shall be divided between them in their percentage shares as aforesaid, and the said bank account shall be closed after any outstanding balance therein due to either partyhall have been paid out of it. Nothing herein shall prevent interim division of profits by mutual agreement between the parties on account of their said respective shares.

13.    Dissolution.

      a.    In the event that one of the parties (hereinafter the "Defaulting Party") becomes insolvent or bankrupt, voluntarily goes into liquidation, has a winding-up order made against it, or has a receiver appointed, the Joint Venture shall thereupon cease and determine but without prejudice to the rights and liabilities of the parties against or towards each other at the time of such determination.

      b.    After such determination, the other party (hereinafter the "Continuing Party") shall have the right:

          i.    To wind up the affairs of the Joint Venture and to carry on and complete any outstanding obligations of the Joint Venture without further participation by the Defaulting Party;

          ii.    To operate the said bank account alone and without reference to the Defaulting Party;

          iii.    To retain, for the purpose of completing such outstanding obligations of the Joint Venture, all equipment and materials purchased and all assets owned by the Joint Venture or by the Defaulting Party but in the possession of the Joint Venture at the time of the determination until the completion of the outstanding obligations.

The Defaulting Party shall do and execute all acts, documents, and such other things necessary or expedient to facilitate the exercise of such rights.

      c.    Upon completion of the aforesaid outstanding obligations and receipt of all amounts due to the Joint Venture, the Continuing Party shall account to the Defaulting Party, and the Defaulting Party shall be entitled to receive an amount equal to the sums provided by it towards the working capital of the Joint Venture plus its proportionate share of any profit earned to the date of termination of the Joint Venture. Such profit earned to the date of termination of the Joint Venture shall be in the same proportion to the whole profit as the amount of Work done at such time bears to the total of all Work done upon the completion of the outstanding obligations. The proportionate share of the Defaulting Party of the profit so computed shall be that referred to in Section 5.

5

      d.     Any losses on the Work in such final account shall be borne by the parties in the proportions referred to in Section 5 provided that the Continuing Party shall be entitled to claim against the Defaulting Party (and to deduct from the share or any profit on the Work allocated to the Defaulting Party) any additional expenses or losses suffered by the Continuing Party as a result of the liquidation or receivership and determination of the Joint Venture.

      e.     In the event that the share of losses chargeable to the Defaulting Party in liquidation or receivership exceeds the sums provided by the Defaulting Party towards the working capital of the Joint Venture, then the Defaulting Party shall promptly pay the excess to the Continuing Party.

      f.     The audited books of account of the Joint Venture shall be conclusive in establishing whether a profit has been realized or a loss sustained, the amount thereof, and the proportionate amount of Work doe as of any given date.

14.    **Obligations of Parties.**

      a.     Each party shall not unreasonably refuse or decline to make available to the Joint Venture such resources of equipment, personnel, licensing, permits, and expertise contained within its respective organization as may be requested by the Committee.

      b.     Except as otherwise expressly provided herein, neither party shall commit nor obligate the other party to perform any services or accept any responsibilities without prior written consent by the other part.

15.    **Exclusivity.** From the date of this Agreement and in accordance with the terms hereof the parties shall co-operate exclusively with each other in relation to achieving the purpose for which this joint venture was formed. Neither party shall enter into any other arrangement with another entity in respect of the purpose for which this joint venture was formed during the term of this Agreement without prior written approval of the other party.

16.    **Indemnification.** A party shall have no liability to the other for any loss suffered by the other which arises out of any action or inaction of the party if, in good faith, it is determined that such course of conduct was in the best interests of the Joint Venture and such course of conduct did not constitute negligence or misconduct. The parties to this Agreement shall each be indemnified by the other against losses, judgments, liabilities, expenses and amounts paid in settlement of any claims sustained by it in connection with the Joint Venture.

17.    **No Assignability.** Neither party shall assign, dispose of, or transfer to any third party all or any part of its rights, benefits, or liabilities without first obtaining the consent in writing of the other party.

18.    Disputes and Arbitration.  Any dispute arising out of or in connection with this Agreement shall be settled amicably. In the event such amicable settlement does not occur, such dispute shall be referred to arbitration in the Republic for final settlement pursuant to the Arbitration Act 1980, found at Title 30, Chapter 3 of the Marshall Islands Revised Code.

19.    Other Business Interests.   The parties to this Agreement may have interests in businesses other than the Joint Venture business. The Joint Venture shall not have the right to the income or proceeds derived from such other business interests and such business interests shall not be deemed wrongful or improper.

20.    Other Instruments. The parties hereto covenant and agree that they each will execute such other and further instruments and documents as are or may become reasonably necessary or convenient to effectuate and carry out the purposes of this Agreement.

21.    Notice. The parties to this agreement elect to receive notice at the following mailing addresses:

Koo's Fishing Company, Ltd.                    MIMRA
Box 321                                        Box 860
Majuro, MH 96960                               Majuro, MH 96960

22.    Complete Agreement, Amendment. This Agreement constitutes the entire understanding and agreement among the parties hereto with respect to the subject matter hereof, and there are no agreements, understandings, restrictions or warranties among the parties other than those set forth herein provided for. It cannot be amended except by a written instrument subsequently executed by the parties.

23.    Applicable Law. This Agreement shall be governed by and construed in accordance with the laws of the Republic.

24.    Severability. If any provision of this Agreement is held invalid, it shall not affect the other provisions of this Agreement which shall remain in full force and effect without such provision.

25.    Exclusive Arrangement. The terms and conditions herein shall apply only to this Agreement.

26.    No Partnership. Nothing in this Agreement or in the relationship of the parties hereto shall be construed as in any sense creating a partnership between the parties, or giving to either party any of the rights of, or subjecting either party to any of the liabilities of, a partner.

7

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and written below.

Dated: May _____, 2005.                        Dated: May _____, 2005.

**Koo's Fishing Company, Ltd.**                  **Marshall Islands Marine Resource Authority**
**by its Chairman, Kwang-Ming Koo**              **by its Chairman, John M. Silk,**
                                                 **Minister of Resources and Development**

8

# EXHIBIT "G"

FROM 453825610=NIUF X  3-SEP-2006 02:41:05UTC MSG272279 SENTOSA C POR

F/V MARSHALLS 201001 457651610 0903 0247.780S 17611.970E 24613 0240 G
001 457651610 0903 0247.780S 17611.970E 24613 0240 G
001 457651610 0903 0247.780S 17611.970E 24613 0240 G

Last Page : Total Page(s) 1

FROM 453825610=NIUF X  4-SEP-2006 02:41:06UTC MSG278897 SENTOSA C POR

F/V MARSHALLS 201001 457651610 0904 0201.884S 17633.002E 07613 0240 G
001 457651610 0904 0201.884S 17633.002E 07613 0240 G
001 457651610 0904 0201.884S 17633.002E 07613 0240 G

Last Page : Total Page(s) 1

FROM 453825610=NIUF X  5-SEP-2006 02:41:14UTC MSG286963 SENTOSA C POR

F/V MARSHALLS 201001 457651610 0905 0107.969S 17755.370E 11812 0240 G
001 457651610 0905 0107.969S 17755.370E 11812 0240 G
001 457651610 0905 0107.969S 17755.370E 11812 0240 G

Last Page : Total Page(s) 1

FROM 453825610=NIUF X  6-SEP-2006 02:41:18UTC MSG294931 SENTOSA C POR

F/V MARSHALLS 201001 457651610 0906 0215.402S 17857.042W 19201 0240 G
001 457651610 0906 0215.402S 17857.042W 19201 0240 G
001 457651610 0906 0215.402S 17857.042W 19201 0240 G

Last Page : Total Page(s) 1

**00088**

# EXHIBIT "H"

M/V " MARSHALLS 201 "

GUA-J-06-2842-CS

CONDITION AND EVALUATION
SURVEY REPORT
for

NOAA

# OCEANEER ENTERPRISES Inc.



CAPT. JÜRGEN
UNTERBERG
*MARINE SURVEYOR*
*MASTER MARINE*

ORIGINAL

Guam Office: 1026 Cabras Highway, Suite 113, Piti, Guam 96925
Tel: Home: (671) 789-5339   Office: (671)477-9490   Fax: (671) 477-1645

GUA-J-06-2842-CS

THIS IS TO CERTIFY ,that the undersigned Marine Surveyor did,
upon the request of NOAA , Mr.Chuck Raterman , attend to the detained Tuna
Purse Seiner " MARSHALLS 201 " of JALUIT , R.M.I. and 1,096 Gross Tonnage ,
Official No. 60004 , Call sign V7CN4 , on the 20st day of september 2006 and sub-
sequent dates ,while the vessel lay afloat at the Casamar Pier at Guam Apra Harbor,
in order to examine the vessel relative to her condition and value and report as
follows :

## 1. Vessels Identification :

Name , Home port        : MARSHALLS 201   , Jaluit ,Rep.of the Marshall Islands .
ex                      : KOO'S 106 ,Jaluit , Rep.of the Marshall Islands
Official No., IMO NO.   : 60004 ,  9206982
Call sign               : V7CN4
Gross Tonnage , NRT     : 1,096 , 416
Year built , Place      : 1999 , Taiwan , Fong Kuo Shipbuilding Co.,Kaohsiung
LOA                     : 70.46m (231.16ft)
LR                      : 60.71m (199.19ft)
Beam                    : 12.20m (40.02 ft)
MD                      :  7.20m (23.62 ft)
Top speed               : 15.4 kn

The vessel is an all welded steel construction with Cruiser type raised bow and
ramped stern , with single mast and superstructure . The vessel is considered  a
hybrid type Tuna Purse Seiner as her cargo holds are a mix of two different systems
which are brine type fish wells (US style) and drychambers (Japanese Style)
The vessel carries a single Mainskiff on her stern ramp and 1 net boat on her
stbd side work deck in davids and two net boats ,also david launched  on her stbd
side boats deck .
The vessel is coated white with blue trim on gunwhales and boom tops .
The vessel is fitted with a main boom and a port and stbd side cargo boom  all
hinged to her mast .The mast is fittedwith a fully enclosed crows nest and a upper
and lower look out  covered with canvass .
The vessel is owned by the Marshall Island Fishing Company with company head
quarters in Majuro  ,R.M.I. .
Company adress is P.O. Box 321 , Majuro , MH 96960 ,Republic of the Marshall Islands.
The vessel was last drydocked in Taiwan from  february to march 2006 at which
time regular drydocking items had been  carried out .

## 2. Review of Vessels Documentation :

Undersigned reviewed following documents aboard the vessel :
Registration ,Rep.of the Marshall Islands ,Interim extended til 6.December 2006
Foreign Fisheries Forum Agency Registration No.34105 ,
Domestic  Fishing License MH06-0341055-01, effective 3-17-06 ,exp.3-16-07
Tonnage Certificate  (TM69) issued 9.March 2006 (no expiration)
IOPP Certificate : issued 3-25-06, exp. 3-25-2011 .

201 - 292

Consultant
Services:   REPAIRS OF VESSELS, DRYDOCKING, SALVAGE MASTER AND SALVAGE OPERATIONS

# OCEANEER ENTERPRISES Inc.



## CAPT. JÜRGEN UNTERBERG
*MARINE SURVEYOR*
*MASTER MARINE*

Guam Office: 1026 Cabras Highway, Suite 113, Piti, Guam 96925
Tel: Home: (671) 789-5339  Office: (671)477-9490  Fax: (671) 477-1645

GUA-J-06-2842-CS ,cont.from page sixteen :


Present market value also includes all three net boats  as being part
of the permanent equipment abaord the vessel .
Also taken in to consideration were the electronics aboard which are mostly
original models from 1998/1999 with a few excemptions .

Remark : It is undersigned surveyors opinion ,that  if this vessel should
have to be sold , no good price could be obtained under the present
market condition  and it may even be the case that potential buyers
would attempt to buy the unit far below market price.


C.  Market value of fish catch aboard :

Under normal circumstances the price for the catch aboard the vessel at this
time  and taking in to consideration its fairly good quality  would bring in
between US $ 300 000.00 of up to US $ 350 000.00 depending on species of
the fish .(SJ or YF )
However it may turn out to be very difficult to sell the catch here on Guam
as no longer any Reefer vessel carrying tuna comes here for transshipment .
It may be a good idea to take into consideration to bring the cargo for
discharge to Pohnpei and trans ship it there .Transport in Reefer containers
would be too costly and not enough containers are available eiether here in
Guam .(about 25 units are needed roughly)

This survey and report was carried out without prejudice . No warranties are
given or implied . Findings were reported as found at time of survey .
No machinery was opened up for internal inspections and no tanks were opened
up either as this is not possible under the present conditions. Values were
calculated as per international accepted methods and take under consideration
all necessary parts for such evaluations. It can not be guaranteed that buyers
are willing to actually pay the calculated present market value !
There are items which should be repaired as indicated in this report .Some
information was received from sources thought to be reliable but can not be
guaranteed .This report does not free any intrested party in the vessel from
their duties to keep the vessel in a seaworthy and safe condition .

Attachment : photos              -THE END -

Capt. J.Unterberg,Ph.D.
Marine Surveyor ,Cargo Surveyor ,Guam

201 - 308

Services:  REPAIRS OF VESSELS, DRYDOCKING, SALVAGE MASTER AND SALVAGE OPERATIONS