# Attachment E

DANIEL BERMAN
BERMAN O'CONNOR & MANN
Suite 503, Bank of Guam Building
111 Chalan Santo Papa
Hagåtña, Guam 96910
Telephone: (671) 477-2778
Facsimile: (671) 477-4366

JAMES P. WALSH (Pro Hac Vice)
DAVIS WRIGHT TREMAINE LLP
505 Montgomery Street, Suite 800
San Francisco, CA 94111-6533
Telephone: (415) 276-6556
Facsimile: (415) 276-6599

Attorneys for Defendant and Claimant:
*MARSHALLS 201 and MARSHALL ISLAND FISHING COMPANY*

**US Attorney's Office
Districts of Guam & NMI**

NOV 14 2007

Time ___
Receiving name ___
Date keyed in Dbase ___
Entered into Dbase by ___

# UNITED STATES DISTRICT COURT

# FOR THE TERRITORY OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MARSHALLS 201<br><br>Defendant. | ) CIVIL CASE NO. 06-00030<br>)<br>)<br>)<br>)<br>)<br>) **DECLARATION OF JON VAN**<br>) **DYKE IN SUPPORT OF**<br>) **DEFENDANT'S MOTION TO**<br>) **DISMISS**<br>)<br>) |

## DECLARATION OF JON M. VAN DYKE

I, **JON M. VAN DYKE**, hereby declare under oath and penalty of perjury that:

1. I am an attorney practicing law at 2515 Dole Street, Honolulu, Hawaii. I am also a Professor of Law at the University of Hawaii where I have taught international law for more than over 30 years. One of my specialties is international law of the sea. I have been retained as an expert on international law by the Defendant in this case. I make this Declaration upon personal knowledge with respect to the matters addressed in this Declaration and, if called

**Attachment E**

upon to testify in Court, I could truthfully and competently testify to the following.

2. Based on customary international law and Article 121(3) of the United Nationals Convention on Law of the Sea, it is my opinion that Baker and Howland Islands, protectorates of the United States located in the Pacific Ocean, are uninhabitable and have no economic life of their own, and, therefore, that the United States is not authorized under international law to declare a 200-mile exclusive economic zones (EEZs) around them.

3. Article 121 of the 1982 Law of the Sea Convention reads as follows:

> *Article 121 -- Regime of islands*
> 1. An island is a naturally formed area of land, surrounded by water, which is above water at high tide.
> 2. Except as provided for in paragraph 3, the territorial sea, the contiguous zone, the exclusive economic zone and the continental shelf of an island are determined in accordance with the provisions of this Convention applicable to other land territory.
> 3. Rocks which cannot sustain human habitation or economic life of their own shall have no exclusive economic zone or continental shelf.

4. The term "rock" in Article 121(3) is not otherwise defined in the Law of the Sea Convention, but it is clear that a "rock" is a type of island and that this term has a been defined through subsequent international negotiations and the practice of states. In WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1965 (1971), "rock" is defined as "[a] mass of stone lying at or near the surface of the water" and "a barren islet." Professor Jonathan I. Charney has explained that "the legal definition of 'rocks' need not conform to scientific or dictionary definitions." Jonathan I. Charney, *Rocks That Cannot Sustain Human Habitation*, 93 AMERICAN JOURNAL OF INTERNATIONAL LAW 863, 870 (1999). Whether a particular island or "islet" is a

SFO 375668v1 0081226-000001

"rock" is therefore to be determined by applying the principles in the Law of the Sea Treaty, in light of other international precedents.

5. Article 121(3) of the Law of the Sea Convention makes it clear that a principal determinant regarding whether an insular structure is entitled to generate an exclusive economic zone is whether it can sustain human habitation or economic life of its own. The concept of "human habitation" must refer to some form of habitation that exists apart from a desire to enable an insular structure to generate extended maritime zones. It must be a habitation that exists for its own sake, as part of an ongoing community that sustains itself and continues through the generations. This conclusion is supported by the views of the French diplomat Gidel, who emphasized during the 1934 debates on the status of islands that to qualify as an "island" a location had to have "natural conditions" that permitted a "stable residence of organized groups of human beings." GIDEL, 3 LE DROIT INTERNATIONAL PUBLIC DE LA MER 684 (1934).

6. Some have argued that the "human habitation" language does not inevitably require that the insular feature be permanently inhabited, but it must require, at a minimum, that it provide support for a *nearby* stable community. It could, for instance, be visited on a regular basis by fishers from neighboring islands who use it as a base to harvest the living resources of the area. This linkage follows from the unitary nature of the phrase "capable of sustaining human habitation or economic life of their own" in Article 121(3). Something more is required as a commitment to the resources on or surrounding the insular structure greater than sending an occasional explorer or scientist to visit the insular feature.

SFO 375608v1 0081226-000001

7. This conclusion is supported by the opinion issued by Judge Budislav Vukas of the International Tribunal for the Law of the Sea, who recently explained that the underlying purposes for giving exclusive rights over offshore resources to the coastal states through the establishment of the exclusive economic zone was to protect the economic interests of the coastal communities that depended on the resources of the sea, and thus to promote their economic development and enable them to feed themselves. *"Volga" (Russian Federation v. Australia), Prompt Release, Judgment,* Declaration of Judge Vukas, ITLOS Reports 2002, <http://www.itlos.org/start2_en.html>. This rationale, he observed, does not apply to uninhabited islands, because they have no coastal fishing communities that require such assistance. *Id.*

8. State practice that supports the conclusion that isolated uninhabitable islands do not have the capacity to generate exclusive economic zones include:

(a) the decision of the United Kingdom to refrain from declaring an EEZ around Rockall, a towering granite feature located 300 kilometers (190 miles) northwest of the nearest British territory, Fishery Limits Order (United Kingdom), S.I. 1997, No. 1750; *see generally* D.H. Anderson, *British Accession to the UN Convention on the Law of the Sea*, 46 INTERNATIONAL AND COMPARATIVE LAW QUARTERLY 761, 778 (1997) (*citing* House of Commons Hansard, vol. 298, written answers, col. 397);

(b) the statement issued by Republic of China (Taiwan) when ratifying the 1958 Convention on the Continental Shelf, with reference to the Senkaku/Diaoyudao Islands, that "determining the boundary of the continental shelf of the Republic of China, exposed rocks

and islets shall not be taken into account." CLIVE SYMMONS, THE MARITIME ZONES OF ISLANDS IN INTERNATIONAL LAW 136 and 270 n. 539 (1979) (*citing* Allen & Mitchell, *The Legal Status of the Continental Shelf of the East China Sea*, 51 OREGON LAW REVIEW 789, 808 (1972)) (a view that has been joined by a prominent scholar from the People's Republic of China, who has reported that the current position of the People's Republic of China is similar: "China holds that the Diaoyudao Islands are small, uninhabited, and cannot sustain economic life of their own, and that they are not entitled to have a continental shelf." Ji Guoxing, *The Diaoyudao (Senkaku) Disputes and Prospects for Settlement*, 6 KOREAN JOURNAL OF DEFENSE ANALYSIS 285, 306 (1994));

( c) the statements made by the People's Republic of China that Japan's Okinotorishima Island is not entitled to generate an EEZ because it is uninhabitable, *China Says Okinotorishima a Mere Rock, Not an Island*, THE DAILY YOMIURI (TOKYO), April 24, 2004;

(d) the decisions made by both Nicaragua and Honduras that the five small cays east of their coasts (Bobel Cay, Savanna Cay, Port Royal Cay, South Cay, and Edinburgh Cay) should generate only 12 nautical mile territorial seas, and should not generate EEZs, *Case Concerning Territorial and Maritime Dispute Between Nicaragua and Honduras in the Caribbean Sea*, para. 137 (International Court of Justice, October 8, 2007); and

(e) the protests filed by Antigua and Barbuda, St Kitts and Nevis, and Saint Vincent and the Grenadines to the use of tiny and uninhabited Aves Island in the Caribbean as a basepoint for claims to continental shelf and EEZ rights. Robert Bradley, Martin Pratt and

SFO 375698v1 0081226-000001

Clive Schofield, *Jane's Exclusive Economic Zones 2000-2001*, at 331 (Coulsdon: Jane's Information Group, 2000).

Dated this 26 day of October, 2007.

BY: _____

**JON M. VAN DYKE**

SFO 375668v1 0081226-000001

# Attachment F

1     TIN THE UNITED STATES DISTRICT COURT

2      FOR THE TERRITORY OF GUAM

3  UNITED STATES OF AMERICA,  ) CIVIL NO. 06-00030

4      Plaintiff,  )

5    vs.        )

6  MARSHALLS 201,    )

7      Defendant.  )

8  _____)

9

10     DEPOSITION OF ROBERT W. SMITH

11 Taken on behalf of Defendant at the Offices of

12 NOAA Office of General Counsel, Suite 1110, 1601

13 Kapiolani Boulevard, Honolulu, Hawaii  96814,

14 commencing at 8:57 a.m., on Friday, November 2nd,

15 2007, pursuant to Notice.

16

17

18

19      **US Attorney's Office**
       **Districts of Guam & NMI**

20

       **NOV 26 2007**
     Time _
21    Receiving name _____
     Date keyed in Dbase _____
22    Entered into Dbase by: _____

23 BEFORE:  PATRICIA ANN CAMPBELL, CSR 108

24      Certified Shorthand Reporter

25      Notary Public, State of Hawaii

**Attachment F**

1    conform to article seven of straight baselines.
2    They do not form a fringe of islands along the
3    vicinity of the mainland coast, nor do they
4    obviously create a deep indentation. But it's a
5    way, it's one of those dichotomies within some of
6    the Law of the Sea provisions that a country can get
7    around 121 three and actually use perhaps what might
8    very well be an uninhabitable island that can not
9    sustain human habitation or have an economic life of
10   its own by incorporating it into a straight baseline
11   system.

12          A couple of the examples that I believe
13   you brought out in Mr. Van Dyke's deposition the
14   other day was like China has definitely used rocks
15   as part of its straight baseline system, and these
16   in my mind would come under a 121 three application,
17   but they are able to use it.

18          So, yes, I mean, one of the very
19   important countries in the Law of the Sea
20   negotiations, Fiji, they have a little feature,
21   Ceva-Ri, that sets apart from the rest of the Fijian
22   islands that I truly believe could come under a 121
23   three application, but it has used it specifically
24   in their national law.

25          Q.     Are you familiar with Professor Van

1    presently uninhabited or uninhabitable?

2        A.    Clearly the word that is in there is

3    uninhabitable, not presently uninhabited.

4        Q.    And would that include the opportunity

5    that an island could be inhabited?

6        A.    Correct, you know, given the technology,

7    given the various views of the coastal state that

8    owns it, you know, the priorities they give it to,

9    yes.

10        Q.    Now, this 121 three that's been applied

11    once by one state at Rockall, how large was that

12    island?

13        A.    That rock, you know, I don't have the

14    dimensions in front of me, but I believe it is on

15    record, but, you know, it comes more in line with

16    the Hodgson definition of being like 50 meters

17    across sort of thing.  I mean, truly in anybody's

18    definition of a rock would fit that definition.  I

19    mean, this is one of these kind of articles that

20    it's like beauty, you know it when you see it.  But

21    Rockall I truly believe was what was behind people's

22    minds when they negotiated this paragraph.

23        Q.    There's a statement that you can stand

24    on one leg?

25        A.    Yeah, you know, there are many features

1    -- under our sovereignty from which we have

2    developed maritime zones around.  I have never

3    visited those islands.  I have never been on those

4    islands, but I have read reports, Department of

5    Interior reports.  I like many others have gone on

6    the web sites to, you know, read what's out there.

7    I have -- you know, I do know it's under US

8    sovereignty.

9        Q.    And how do they compare with Rockall?

10       A.    They are clearly larger.  I mean, they

11   do have dimensions.  They do have some sort of

12   vegetation, granted not much, but there is scrub

13   stuff.  There have been people on them in the past

14   prior to World War II.  There have been inhabitants.

15   There is a runway on one of them.  So people have

16   lived on that island, those islands, the two of

17   them.

18       Q.    And is that the only criteria under 121

19   three?

20       A.    The criteria is sustain -- the ability

21   to sustain human habitation or have an economic life

22   of their own.

23       Q.    Now, I don't recall this exactly, but

24   there was an article that was cited by Professor Van

25   Dyke where he cited it as supporting his

# Attachment G

1          IN THE UNITED STATES DISTRICT COURT

2             FOR THE TERRITORY OF GUAM

3    UNITED STATES OF AMERICA,    ) CIVIL NO. 06-00030

4              Plaintiff,        )

5         vs.                    )

6    MARSHALLS 201,              )

7              Defendant.        )

8    _____)

9

10          DEPOSITION OF SCOTT BENTON EDMONDS

11   Taken on behalf of Plaintiff at the Offices of

12   NOAA Office of General Counsel, Suite 1110, 1601

13   Kapiolani Boulevard, Honolulu, Hawaii  96814,

14   commencing at 9:02 a.m., on Thursday, November 1st,

15   2007, pursuant to Notice.

16

17

18

19                          US Attorney's Office
                            Districts of Guam & NMI

20                              NOV ___ ___

21                          Receiving part ___ ___
                            Date keyed in ___ ___
                            Entered into ___ ___

22

23   BEFORE:   PATRICIA ANN CAMPBELL, CSR 108

24             Certified Shorthand Reporter

25             Notary Public, State of Hawaii

Attachment
G

Ralph Rosenberg Court Reporters, Inc.
2460 American Savings Bank, 1001 Bishop Street
Honolulu, Hawaii  96822  (808) 524-2090

1    right --

2         Q.    Okay.

3         A.    -- because it's stated to be an

4    equidistance line, so one of the first jobs that I

5    had was to verify is it an equidistance line?

6         Q.    And you did verify that, right?

7         A.    I did.  It's in map number one of my

8    report, and I found two minor discrepancies at both

9    ends of the line.

10        Q.    Were those significant at all to this

11   case?

12        A.    I said that they weren't --

13        Q.    Right.

14        A.    -- no.

15        Q.    So you looked first at the Federal

16   Register, that was your first job to do?

17        A.    That's correct, I looked at the

18   coordinates of the Federal Register, and part of the

19   assessment process is to create a base map which I

20   could plot everything on, so I began by setting out

21   the potential maritime claims for both Baker and

22   Howland Island and Phoenix group, and --

23        Q.    You said potential maritime claims.  Are

24   you aware of what the maritime claims are of Howland

25   and Baker and Kiribati?

1       A.     I am aware of the claims that the US

2    Government has to an equidistance line between the

3    two.

4       Q.     And how about Kiribati?

5       A.     I'm aware that in their maritime

6    legislation that they claim that where they overlap

7    neighboring states that it would be an equidistance

8    line.

9       Q.     Okay, so that's the law in Kiribati that

10   you found out about?

11      A.     That's my understanding, yes.

12      Q.     So you knew that there was a median line

13   in the Kiribati law, and that there was a line in

14   the US law?

15      A.     I knew that their position was an

16   equidistance line if they overlapped with

17   neighboring states.  Now, I never saw a set of

18   coordinates that they had published.

19      Q.     Oh, okay, okay.  So what did your

20   research find about the equidistant line of the

21   United States?

22      A.     Well, I found that from point two to

23   point fourteen, my equidistance line and the

24   coordinates of the United States matched almost

25   perfectly.





Lat: 0.195, Lon: -176.475

# Baker Island



- STS092-715-36
- 21 October 2001
- 00:26 UTC



DEPOSITION
EXHIBIT

Baker Island, located only 20 km km north of the equator in the central Pacific, lies to the northeast of the Phoenix Islands (of which Baker Island can be considered as a distant outlier) and 58 km south of Howland (its nearest neighbour). Both Baker and Howland are unincorporated territories of the US under the jurisdiction of the US Fish & Wildlife Service. The USFWS manage the island as the Baker Island National Wildlife Refuge.

The island is a low and flat, oval-shaped coralline island of 1.6 km² in area, with a circumference of nearly 5 km. Baker Island displays many of the features that are common among the remote islands of the central Pacific: the island is surrounded by a narrow fringing reef, has no central lagoon. and rises from the shoreline in a steep beach-crest before descending to an interior depression. Beaches on the island are composed of coral rub' shingle and coarse sands.

climate is dry and windy — a fact that is reflected by the islands sparse vegetation cover. Vegetation ts of low grasses (such as *Digitaria pacifica*), vines such as the Puncture vine (*Tribulus cistoides*) and

low shrubs such as the Purslane (*Portulaca lutea*).

The Baker Island National Wildlife Refuge protects mainly the marine environment around the island. In a some 123 km² of shallow water habitats are protected, providing refuge for a wide range of corals, inverteb and fish species as well as for both the Green and Hawksbill Turtles. On land the NWR protects nesting ha for around 20 species of bird, including Lesser Frigate birds (*Fregatta ariel*), Sooty Tern (*Sterna fuscata*), d Booby (*Sula dactylatra*), Red-footed Booby (*S. sula*) and Brown Booby (*S. leucogaster*).

copyright © 2007 oceandots.com all rights reserved
image: earth sciences and image analysis laboratory, nasa johnson space center.

# main

- Home
- Arctic Ocean
- Atlantic Ocean
- Indian Ocean
- Pacific Ocean
- Southern Ocean

# additional images



December 2004 image

# tools

- View in Google Earth
- View in Google Maps
- View on Yahoo Maps
- View in Live Local



- >
- >
- >
- large size image

# aker Island



- ISS010-E-9285
- 03 December 2004
- 18:56 UTC

image:

You are not logged in

Home     Accommodation     My World66     About

Search

# Baker Island Travel Guide

Ads by Google

- Baker Island Travel Guide
  Economy
- People
- [Add Section]

Baker Island is an uninhabited island, in the central Pacific, near the equator, some 2500 km south west of Hawaii. The arid coral island was discovered in 1832 by Capt. Michael Baker, an American, and was claimed by the United States in 1856. Like Jarvis Island and Howland Island, Baker was worked for guano by both American and British companies during the 19th cent. In 1935 it was colonized by Americans from Hawaii in order to establish U.S. control against British claims. The colonists were removed during World War II. Baker Island is administered under the U.S. Dept. of the Interior.

Add Region or City

More information on … and … at Wikitravel.org


western edge of baker island

## Atlantic Ci Hotels

Savings on Atlan

City Lodging, Qu

compare prices

f atures.

This work is licensed under a … Additional …

partner sites: A…

… For more information read our … are available in ten languages at wikitravel.org. 08:31:20