DANIEL J. BERMAN, ESQ.
BERMAN O'CONNOR & MANN
Suite 503, Bank of Guam Building
111 Chalan Santo Papa
Hagåtña, Guam 96910
Telephone: (671) 477-2778
Facsimile: (671) 477-4366

JAMES P. WALSH (Pro Hac Vice)
DAVIS WRIGHT TREMAINE LLP
Suite 600, One Embarcadero Center
San Francisco, California 94111
Telephone: (415) 276-6500
Facsimile: (415) 276-6599

Attorneys for Defendant and Claimant:
*MARSHALLS 201 and MARSHALL ISLANDS FISHING COMPANY*

**FILED**
DISTRICT COURT OF GUAM
JAN 1 1 2008
JEANNE G. QUINATA
Clerk of Court

## UNITED STATES DISTRICT COURT
## FOR THE TERRITORY OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> MARSHALLS 201 and MARSHALL ) <br> ISLANDS FISHING COMPANY, ) <br> ) <br> Defendants. ) <br> _____ ) | CIVIL CASE NO. 06-00030 <br><br> DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS FOR LACK OF JURISDICTION |

### SUMMARY OF REPLY

The Defendant, the vessel F/V MARSHALLS 201 (or the "Vessel"), and its owner, the Claimant Marshall Islands Fishing Company (together "the Defendants"),

moved to dismiss the Complaint for Forfeiture, and void the Order of Arrest of the Vessel, for lack of jurisdiction because the United States has no legal authority under customary international law to claim and enforce a 200-mile exclusive economic zone ("EEZ") around Baker and Howland Islands in the Pacfic Ocean, the alleged legal basis for the Complaint and Order of Arrest in this case. The basis of the motion is purely legal: Does customary international law (which is incorporated into domestic law) preclude an assertion of such jurisdiction around two isolated small islets that are "rocks" within the meaning of customary international law and Article 121(3) of the United Nations Law of the Sea Convention? The issue of jurisdiction arises under domestic law based on the principle enunciated by the Supreme Court in *Paquette Habana*, 175 U.S. 677, 700 (1900) ("International law is part of the law of the United States"). That case stands for the well-established proposition that the United States may not seize vessels, or assert maritime jurisdiction, in circumstances contrary to customary international law.

Plaintiff's first response is to claim, improperly, that Defendants are seeking, in this motion with respect to jurisdiction, to pursue a "cause of action" (implied or otherwise) based on a treaty, and therefore lack standing. This argument fundamentally misunderstands the law of jurisdiction, the nature of causes of action, standing, and the legal proposition raised by the motion. Defendants are not seeking to pursue a cause of action based on international law. Defendants are seeking a ruling from this Court, based on domestic law (of which customary international law

is a part) that Plaintiff lacked the requisite jurisdiction (both to regulate and to enforce) over the geographic ocean area in question necessary to seize and forfeit a foreign-flag vessel. That is the fundamental rule set forth in the *Paquette Habana* case. Plaintiff's standing argument is therefore ill-conceived. It was Plaintiff that seized the Vessel, then sued to forfeit it. Challenging jurisdiction, based on domestic law, is an appropriate legal response by Defendants, one protected by principles of constitutional due process.

Second, the United States has stated, on several occasions, that the elements of the United Nations Law of the Sea Treaty reflect customary international law, which apply here as a matter of domestic law. Article 121(3) of that Treaty states that ocean features referred to as "rocks" and which cannot sustain human habitation or economic life of their own shall have no exclusive economic zone or continental shelf. Therefore, if a feature qualifies as a "rock" under the Treaty, the United States may not assert a 200-mile EEZ around such a "rock." Provisions of the Magnuson-Stevens Act, originally enacted in 1977, do not clearly mandate that the United States must claim an EEZ around Baker and Howland Islands. Moreover, customary international law developed after that enactment modified the United States' right to claim such a zone, if those islands qualify as "rocks." Finally, Congress' recent amendments to the Magnuson-Stevens Act do not indicate any intent to derogate from the international rule governing "rocks." See, *United States v. Aguilar*, 883 F.2d 662, 679 (9th Cir. 1989) (Congress may legislate contrary to international law, if that is the intent).

Third, Plaintiff's interpretation of the meaning of "habitation" is specious. Here, the Government claims that if a "rock" can ever be made habitable, it is not a "rock." But the plain, dictionary meaning of the word "habitation" belies that highly elastic interpretation of the customary rule of law at issue and is reinforced by use of the word "sustain" in the text. The word "habitation" is generally defined as the act of actually living in a place, with some relative permanance: the act of dwelling in or living permanently in a place. Merriam-Webster Online (2008). "Sustain" means to keep in existence, to maintain. Merriam-Webster Online (2008) (also means "to supply with sustenance; to keep up, prolong"). The facts with respect to Baker and Howland Islands are not in dispute. No one lives permanently (or even periodically) on either island; present government policy forbids habitation in order to create natural reserves on the island. Earlier attempts at sustaining human "habitation" on the islands failed. No one disputes that both islands currently lack any economic life of their own.

Fourth, Defendants' position on these issues is supported by two independent experts on maritime boundaries and international law, Mr. Scott Edmonds and Professor Jon Van Dyke. In contrast, Plaintiff submits the expert opinion of Mr. Robert Smith, an individual who spent nearly his entire life as a U.S. State Department employee and who admitted at deposition that he would probably never take a position contrary to the EEZ policy of the United States,[1] and Mr. J. Ashley Roach, an attorney currently employed by the U.S. State Department. Mr. Smith was designated

---

[1] See, Exhibit 1, Deposition of Robert W. Smith; 42:4 to 42:16, attached hereto.

as an expert in this case by Plaintiff; Mr. Roach was not. While these individuals unquestionably set forth the political position of the United States with respect to the jurisdictional question at issue, they are hardly the kind of independent experts who can assist this Court in determining a critical question of customary international law. Neither of them is qualified to give opinons about customary international law that this Court may consider under the principles set forth in the *Paquette Habana*.

Fifth, the United States' assertion of an EEZ around Baker and Howland Islands stands merely as a claim under international law. Silence as to that claim by other nations, including the Republic of Kiribati, is not considered recognition of that claim. In this regard, Plaintiff submits, as support for its position, that a State Department cable purporting to describe the official position of the Republic of Kiribati is clearly hearsay. No official statement from the Republic of Kiribati has been presented to this Court on the question at hand.

Sixth, Plaintiff has misrepresented the recent practice of nations with respect to the recognition of the "rock" concept in practice. As clear precedent, the United Kingdom's decision in the *Rockall* case sets the standard. Other examples put forward by Professor Jon Van Dyke indicate that the principles set forth in Article 121(3) are alive and well among the practice of nations with respect to ocean jurisdiction.

Finally, the United States' claim to a 200-mile EEZ around Baker and Howland Islands conflicts with customary international law and the seizure of the Vessel was an improper and unconstitutional exercise of extraterritorial jurisdiction.

# REPLY TO SPECIFIC POINTS

### 1. Defendants May Challenge Jurisdiction Over the Vessel

The legal premise of this case is the allegation that the Vessel was physically located and engaged in fishing within the EEZ of the United States, therefore it may be seized and subject to forfeiture in a court of the United States. Due process generally requires that a federal court have an adequate basis over the party sought to be bound by the court's judgment or decree. *Shaffer v. Heitner*, 433 U.S. 186, 207 (1977); *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). In addition, a valid seizure of property at issue in a civil forfeiture is a prerequisite for initiation of such proceedings. *Republic Nat'l Bank of Miami v. United States*, 506 U.S. 80, 85 (1992). If the Vessel was not within the legitimate geographic jurisdiction of the United States, it was not subject to United States law and could not be validly seized by the United States Coast Guard. If so, this Court may not then exercise adjudicative jurisdiction with respect to the Vessel. Defendants have a right to contest jurisdiction on this pivotal legal point.

Plaintiff suggests that Defendants may not argue that customary international law limits U.S. jurisdiction in this case, citing the cases of *United States v. Li*, 206 F.3d 56, 60-61 (1st Cir. 2000) (issue: does treaty create individual right to consular notification and access) and *United States v. Mann*, 827 F.2d 849, 882 (9th Cir. 1987) (issue: does treaty create right to challenge authenticity of certification). Opposition at 9. Neither case relates to jurisdiction; both dealt with whether an implied treaty-

created private right of action was available to a particular defendant. An implied cause of action is a concept whereby a court may determine that a particular law creates a private right to bring an action, even though no explicit remedy is found in the law. A good example is *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971) (an individual may sue for an unreasonable search and seizure, a right not recognized in statute but implied from the importance of the right involved). Defendants do not pursue here an implied private right of action under the United Nations Law of the Sea Treaty. They pursue their right to challenge the court's jurisdiction under domestic law based on due process and the application of customary international law as the law of the United States.

Plaintiff also makes the vague assertion that the limit of U.S. jurisidiction is a matter purely for the Executive Branch to determine. Opposition at 10. The Department of State did publish the limit of the United States exclusive economic zone at issue here. However, assertion of an EEZ around Baker and Howland Islands is also based, to some degree, on the definition of the term "state" and "Pacific Insular Area" in the Magnuson-Stevens Act. 16 U.S.C. §§ 1802(35) and (41). Thus, both Congress and the Executive have played a role in the U.S. claim to fishery management jurisdiction around Baker and Howland Islands and it is now being properly challenged in this domestic lawsuit. This Court has a constitutional obligation to decide its jurisdiction in this case. Plaintiff's argument that the issue is a non-justiciable political question goes nowhere, in light of the Supreme Court decision

in *Paquette Habana*. Plaintiff has engaged in an improper and unconstitutional exercise of extraterritorial jurisdiction with respect to the Vessel.

### 2. Article 121(3) of the Law of Sea Treaty Is Customary International Law

Plaintiff argues that the United Nations Law of the Sea Treaty is not self-executing, and therefore of no legal force. Opposition at 11. That is not the precise question here. The question is whether the provisions of that Treaty, particularly Article 121(3), are reflective of customary international law. Several courts have already arrived at this conclusion. *United States v. Royal Caribbean Cruises*, 24 F.Supp.2d 155, 159 (D.P.R. 1997) ("Although the ... convention is currently pending ratification before the Senate, it nevertheless carries the weight of law from the date of its submission by the President to the Senate," because such submission "expresses to the international community the United States' ultimate intention to be bound by the pact"); *United States v. Alaska*, 503 U.S. 569, 588 n. 10 (1992) ("The United States has not ratified [the Law of the Sea Convention], but has recognized that its baseline provisions reflect customary international law"); *Mayaquezanos por la Salud y el Ambiente v. United States*, 198 F.3d 297, 305 n.14 (1st Cir. 1999) (noting that because the Executive Branch has agreed to be bound by the Treaty, even though it is not yet ratified, the United States "is obligated to refrain from acts that would defeat the object and purpose of the agreement") *Mansel v. Baker Hughes, Inc.*, 203 F.Supp.2d 745, 746 n. 1 (S.D.Texas 2002) (same). Notably, Mr. Roach, the State Department lawyer, makes no reference to any of these court decisions. Moreover, Mr. Roach has pointed to no

statement or reservation by the United States that Article 121(3) is not binding on the United States. His statements are mere arguments by another lawyer for the United States, not authoritive declarations of a qualified (or even identified) expert about applicable international law for this case.

### 3. The Practice of Nations Reinforces Article 121(3) As Customary Law

Professor Van Dyke in his Declaration in Suppport of Motion to Dismiss (at ¶ 8) cites five examples of the practice of nations with respect to small islets that qualify as "rocks." Mr. Roach's description of "state practice" is much too limited. Where there is a pattern of state practice, undertaken out of a sense of legal obligation, customary international law is created. It is not necessary to link that practice directly to a particular treaty provision. All that is necessary is that there is a pattern of actions that support the idea that not every small island can generate an EEZ of its own.

Professor Van Dyke's position is well-reasoned and long-held. In contrast, the positions of Mr. Smith and Mr. Roach were generated purely for this litigation. The best recent example of state practice is the Nicaragua/Honduras case. That Court decision recognized that the boundary dispute involved sovereignty over certain islands and/or rocks:

> 112. The maritime area in the Caribbean Sea to be delimited comprises a number of islands, which may generate territorial sea, exclusive economic zone and continental shelf, and <u>a number of rocks which may generate territorial sea</u>. ... (emphasis supplied).

Judgment, International Court of Justice, <u>Case Concerning Territorial and Maritime Dispute between Nicaragua and Honduras in the Caribbean Sea</u>, 34, October 8, 2007. <u>See</u>, Exhibit 2, attached hereto. By this reference, the Court confirmed application of the concept of rocks, which only generate a territorial sea, in that recent case. Plaintiff's reference to paragraph 303 (Opposition at 16) is not relevant to this basic point.

Plaintiff's other comments on "state practice" are unavailing and misleading. The fact remains that, if a rock meets the definition in Article 121(3), international practice will mean that that feature may not generate an EEZ or continental shelf of its own.

### 4. Baker and Howland Islands Are "Rocks" Under International Law

Neither side in this case dispute the facts with respect to Baker and Howland Islands. Neither island is inhabited; neither has an economic life of its own. Plaintiff, however, in seeking to stretch the plain meaning of Article 121(3), tries to foist on the Court an interpretation that, in effect, requires that Defendant prove a negative: that a particular feature cannot, under any circumstances, ever sustain habitation now or in the future. Opposition at 12-13. Plaintiff's simplistic response to their own formulation of the question is to say that there is no evidence that they might not support habitation in the future, which of course notes clearly the absence of such evidence. Opposition at 13. Evidence, by its very nature, looks back, unless there is admissible expert evidence establishing that future events are very like to occur. The

"opinion" of a State Department lawyer and a former State Department employee do not comprise such evidence.

Baker and Howland Islands are very small, isolated islets far from the United States that have never been able to sustain human habitation or have an economic life of their own. These facts cannot be reasonably intepreted otherwise.

### 5. The Claim To an EEZ Around Baker and Howland Islands Does Not Conform to International Law

Defendants' challenge to the United States' claim to an EEZ around Baker and Howland Islands is not "idiosyncratic, unsupported, and wrong." Opposition at 1. As shown in Defendants' Opening Brief and in this Reply, Defendants' position is consistent with customary international law. Should the Motion be granted, the United States will not experience a "massive loss of jurisdiction" but will simply be prevented from seizing and forfeiting the Vessel in this case, in circumstances where there was really no jurisdiction to lose. In fact, the jurisdictional character of the Baker and Howland territorial sea and the islands themselves would remain completely unchanged. The prediction of any other consequences to the United States or any other nation is purely a matter of speculation.

//
//
//
//

# CONCLUSION

Defendants' Motion to Dismiss for Lack of Jurisdiction should be granted.

DATED this 11th day of January, 2008.

        DANIEL BERMAN
        BERMAN O'CONNOR & MANN
        Suite 503, Bank of Guam Building
        111 Chalan Santo Papa
        Hagatna, Guam 96910

        JAMES P. WALSH (PRO HAC VICE)
        DAVIS WRIGHT TREMAINE LLP
        505 Montgomery Street, Suite 800
        San Francisco, California, 94111

Counsel for Defendant MARSHALLS 201 and Claimant MARSHALL ISLANDS FISHING COMPANY

By: *[signature]*
     **DANIEL J. BERMAN**

# EXHIBIT 1

## DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS FOR LACK OF JURISDICTION

```
                    7IN THE UNITED STATES DISTRICT COURT

                         FOR THE TERRITORY OF GUAM

UNITED STATES OF AMERICA,    ) CIVIL NO. 06-00030
                             )
          Plaintiff,         )
                             )
     vs.                     )
                             )
MARSHALLS 201,               )
                             )
          Defendant.         )
_____)


               DEPOSITION OF ROBERT W. SMITH

Taken on behalf of Defendant at the Offices of

NOAA Office of General Counsel, Suite 1110, 1601

Kapiolani Boulevard, Honolulu, Hawaii  96814,

commencing at 8:57 a.m., on Friday, November 2nd,

2007, pursuant to Notice.




     BEFORE:    PATRICIA ANN CAMPBELL, CSR 108
                Certified Shorthand Reporter
                Notary Public, State of Hawaii
```

EXHIBIT 1

Ralph Rosenberg Court Reporters, Inc.
2460 American Savings Bank, 1001 Bishop Street
Honolulu, Hawaii 96822  (808) 524-2090

Case 1:06-cv-00030  Document 123  Filed 01/11/2008  Page 14 of 19

```
 1    mark this next as Exhibit 3.
 2              (Deposition Exhibit 3 was marked for
 3              identification.)
 4       Q.     (By Mr. Walsh)  If you could take a look
 5    at this, and tell me if you recognize this document?
 6       A.     I do recognize it.
 7       Q.     Now, Mr. Smith, did you participate with
 8    respect to the development of the Department of
 9    State's various declarations about the extent of the
10    US EEZ?
11       A.     I did.
12       Q.     So you actually participated in
13    preparing this document?
14       A.     I did.
15       Q.     And in preparing this document, would it
16    be fair to say that your office did extensive review
17    of every one of these coordinates?
18       A.     I would hope so.
19       Q.     Yes or no?
20       A.     Yes.
21       Q.     And it would be fair to say that your
22    personal judgment was involved in selecting many of
23    these coordinates?
24       A.     Yes.
25              MR. SCHWAB:  Object, vague and ambiguous
```

as to personal.

MR. WALSH: He answered the question, thank you.

Q. (By Mr. Walsh) So I think would it be fair to say that it's unlikely that you will ever testify that these were wrong?

MR. SCHWAB: Objection, assumes evidence not having been presented.

A. So am I supposed to --

Q. (By Mr. Walsh) You can answer the question.

MR. SCHWAB: You can answer.

Q. (By Mr. Walsh) Is it possible that you would ever testify in court that any part of this declaration was wrong?

A. I don't think so.

Q. Thank you. Let's take a look at this document, if you would, and mostly I am interested in the preparatory language of the first paragraph, and I am not going to ask you to read it into the record, but what I would like to do is just state what I think my understanding of the text is and see if you agree or disagree.

My understanding of the preparatory statements here is that the United States Government

Ralph Rosenberg Court Reporters, Inc.
2460 American Savings Bank, 1001 Bishop Street
Honolulu, Hawaii 96822 (808) 524-2090

Case 1:06-cv-00030 Document 123-22 Filed 01/11/2008 Page 16 of 19

# EXHIBIT 2

# DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS FOR LACK OF JURISDICTION

INTERNATIONAL COURT OF JUSTICE

YEAR 2007

2007
8 October
General List
No. 120

8 October 2007

CASE CONCERNING TERRITORIAL AND MARITIME DISPUTE BETWEEN
NICARAGUA AND HONDURAS IN THE CARIBBEAN SEA

(NICARAGUA v. HONDURAS)

JUDGMENT

Present: President HIGGINS; Vice-President AL-KHASAWNEH; Judges RANJEVA, SHI, KOROMA, PARRA-ARANGUREN, BUERGENTHAL, OWADA, SIMMA, TOMKA, ABRAHAM, KEITH, SEPÚLVEDA-AMOR, BENNOUNA, SKOTNIKOV; Judges ad hoc TORRES BERNÁRDEZ, GAJA; Registrar COUVREUR.

In the case concerning territorial and maritime dispute between Nicaragua and Honduras in the Caribbean Sea,

between

the Republic of Nicaragua,

represented by

H.E. Mr. Carlos José Argüello Gómez, Ambassador of the Republic of Nicaragua to the Kingdom of the Netherlands,

as Agent, Counsel and Advocate;

H.E. Mr. Samuel Santos, Minister for Foreign Affairs of the Republic of Nicaragua;



109. The Court observes that, from a formal point of view, the claim relating to sovereignty over the islands in the maritime area in dispute, as presented in the final submissions of Nicaragua, is a new claim in relation to the claims presented in the Application and in the written pleadings.

110. However, the mere fact that a claim is new is not in itself decisive for the issue of admissibility. In order to determine whether a new claim introduced during the course of the proceedings is admissible the Court will need to consider whether, "although formally a new claim, the claim in question can be considered as included in the original claim in substance" (*Certain Phosphate Lands in Nauru (Nauru v. Australia), Preliminary Objections, Judgment, I.C.J. Reports 1992*, pp. 265-266, para. 65). For this purpose, to find that the new claim, as a matter of substance, has been included in the original claim, it is not sufficient that there should be links between them of a general nature. Moreover,

> "[a]n additional claim must have been implicit in the application (*Temple of Preah Vihear, Merits, Judgment, I.C.J. Reports 1962*, p. 36) or must arise 'directly out of the question which is the subject-matter of that Application' (*Fisheries Jurisdiction (Federal Republic of Germany v. Iceland), Merits, I.C.J. Reports 1974*, p. 203, para. 72)" (*Certain Phosphate Lands in Nauru (Nauru v. Australia), Preliminary Objections, Judgment, I.C.J. Reports 1992*, p. 266, para. 67).

111. The Court will now consider whether Nicaragua's new claim relating to sovereignty over the islands in the area in dispute is admissible in light of the above criteria.

112. The maritime area in the Caribbean Sea to be delimited comprises a number of islands which may generate territorial sea, exclusive economic zone and continental shelf and a number of rocks which may generate territorial sea. Both Parties have agreed that none of the land features in the maritime area in dispute can be regarded as *terra nullius*, but each has asserted its own sovereignty over them. According to Nicaragua, by using a bisector as a method of delimitation, sovereignty over these features could be attributed to either Party depending on the position of the feature involved with respect to the bisector line.

113. On a number of occasions, the Court has emphasized that "the land dominates the sea" (*North Sea Continental Shelf (Federal Republic of Germany/Denmark; Federal Republic of Germany/Netherlands), Judgment, I.C.J. Reports 1969*, p. 51, para. 96; *Aegean Sea Continental Shelf (Greece v. Turkey), Judgment, I.C.J. Reports 1978*, p. 36, para. 86; *Maritime Delimitation and Territorial Questions between Qatar and Bahrain (Qatar v. Bahrain), Merits, Judgment, I.C.J. Reports 2001*, p. 97, para. 185). Accordingly, it is

> "the terrestrial territorial situation that must be taken as starting point for the determination of the maritime rights of a coastal State. In accordance with Article 121, paragraph 2, of the 1982 Convention on the Law of the Sea, which reflects customary international law, islands, regardless of their size, in this respect