1  DANIEL J. BERMAN, ESQ.
   BERMAN O'CONNOR & MANN
2  Suite 503, Bank of Guam Building
   111 Chalan Santo Papa
3  Hagåtña, Guam 96910
   Telephone:   (671) 477-2778
4  Facsimile:    (671) 477-4366

5  JAMES P. WALSH (Pro Hac Vice)
6  DAVIS WRIGHT TREMAINE LLP
   Suite 600, One Embarcadero Center
7  San Francisco, California 94111
   Telephone:   (415) 276-6500
8  Facsimile:    (415) 276-6599

9  Attorneys for Defendant and Claimant:
   *MARSHALLS 201 and MARSHALL ISLANDS*
10 *FISHING COMPANY*

11

12               **UNITED STATES DISTRICT COURT**

13               **FOR THE TERRITORY OF GUAM**

14

   UNITED STATES OF AMERICA,        )   CIVIL CASE NO. 06-00030
15                                   )
                   Plaintiff,        )
16                                   )   **CLAIMANT'S REPLY**
               vs.                   )   **MEMORANDUM IN SUPPORT**
17                                   )   **OF MOTION FOR SUMMARY**
   MARSHALLS 201 and MARSHALL        )   **JUDGMENT**
18 ISLANDS FISHING COMPANY,          )
                                     )
19                 Defendants.       )
                                     )
20 ────────────────────────────────

21                    **INTRODUCTION**

22        The Magnuson-Stevens Act, as to forfeiture claims of the USA, has been

23 amended by CAFRA. While apparently unable to concede a substantial policy shift,

   the USA in its opposition memorandum to summary judgment neither directly
24

H:\Normal\Working Docs 2007\DJB\(1) Jan-Feb 2008\P087002DJB.doc

FILED
DISTRICT COURT OF GUAM

JAN 1 1 2008

JEANNE G. QUINATA
Clerk of Court

ORIGINAL

addresses or reconciles the effect of CAFRA on the Magnuson-Stevens Act forfeiture remedy. CAFRA's new restraint on the Government's property death penalty for the benefit of innocent owners marks an important policy change to the enforcement program of NOAA under the Magnuson-Stevens Act. In fact, the USA Opposition agrees that CAFRA applies to this case. Opposition at 5.

CAFRA sweeps away prior U.S. case law applications of imputed knowledge and respondeat superior. It follows that all the O.R.W. ("Ocean Resources and Wildlife Reporter") and other reported cases regarding civil penalties have no bearing on this 2006 case. Based on prior unlimited forfeiture powers of the USA in cases of seized property caught up in illegal activities, the Congress adopted CAFRA to provide a means of direct relief for innocent owners. Accordingly, all the Opposition cases, that applied the pre-CAFRA forfeiture provisions of the Magnuson-Stevens Act decided prior to year 2000 CAFRA implementation, are not applicable to the issue at hand.

Historically, in the law of admiralty, vessel owners have not been held liable for the egregious acts of their Captains. *The Amiable Nancy*, 16 U.S. 546 (1818) (Holding that reckless conduct of Captain will not be imputed to owner unless the owner, directed, countenanced or participated in the conduct.) With the advent of CAFRA, the rule of imputation is discarded with respect to civil forfeiture actions under the Magnuson-Stevens Act. The Court need not decide whether imputation applies to civil penalties, because that issue is not before the court. If the Opposition's position were to prevail, then the heart of CAFRA and its protection accorded to innocent owners would be eviscerated.

The USA posits that Claimant MIFCO should have had a system in place that monitored every act by the captain to keep him out of US waters. But that theory fails on serious examination. We presume, for purposes of this Motion, that the Government's allegations are true (but do not concede them). Both sides agree that the Captain had available to him everything a modern mariner needs to know, as well

1  as state of the art aids to navigation, maps and instrumentation to enable him to know

2  exactly where he was. And, if he decided on his own to risk an illegal fishing activity,

3  the company neither was forewarned, nor could anticipate it, and most important did

   not approve of his "acts," specifically the allegations of illegal acts of fishing, if any.

4  The notion that the owner, as a standard of conduct, must, in advance have a 24/7

5  surveillance system to prevent the possible transgressions of its Captain is without any

6  support. In the middle of the ocean, the Captain is on his own. The standard

7  demanded by the Government is inconsistent with common sense, normal fishing

   practice and the CAFRA. The captain was terminated upon the filing of the instant

8  case by the USA. Marshall Islands Fishing Company ("Claimant" or "MIFCO") did

9  not profit by his actions.

10        The USA further tries to blur separate and independent legal entities, by

11  inventing a new legal entity such as "MIFCO/KFC" (Opposition at 12) in order to

    smear Claimant MIFCO with some kind of previous historical bad acts by other

12  independent actors involved in commercial fishing. Notwithstanding the legal

13  skewing of the factual record, the USA does admit to the material facts in support of

14  summary judgment. The F/V Marshalls 201 is registered in the Republic of the

15  Marshall Islands and is wholly owned by MIFCO. Opposition at 3. MIFCO has two

    shareholders - the Koo's Fishing Company and the Marshall Islands (Government)

16  Marine Resources Authority. *Id.* at 3-4. More, the USA does not dispute that MIFCO

17  "is the sole qualified owner of the Defendant Property for the purposes of CAFRA."

18  Opposition at 5. Unquestionably, MIFCO is a new start up corporation that

19  commenced operation only in 2006 with its primary purpose to assist the Marshallese

    indigenous people by making them owner/operator of one purse seine tuna vessel.

20  Declaration Eugene Muller, filed October 29, 2007, ¶ 21. Neither MIFCO, nor its prior

21  Captain Wen Yueh Lu during his lifetime experience, had any prior violations of

22  fishing laws, arrests or even allegations of improvident fishing conduct. Declaration

23  Muller, ¶ 6.

24

MIFCO is not simply some re-named, same single owner, of a fleet of ships, like Kyowa, Matson or Carnival Cruise Ships. MIFCO was not transferred a fleet of vessels. In fact, MIFCO is not even a partnership. Instead, MIFCO is a stand alone, independent new 2006 corporation, 49% owned by the Republic of Marshall Islands. MIFCO is entitled to all the respect of a separate person, separate individual and separate corporation.

The USA is not entitled for any reason, and none were set out in the Opposition, to set aside its corporate entity or pierce the corporate veil. *See Chan v. Society Expeditions, Inc.,* 123 F.3d 1287, 1294 (9th Cir. 1997). No disregard of corporate separateness is allowed without a showing that the controlling corporation (Koo's Fishing) exercises total domination of the subservient corporation (MIFCO). The Government cannot meet the test to disregard the corporate entity in this case, and the acts of other entities cannot be imputed to MIFCO.

MIFCO's highest two management officers Mr. Muller and Mr. Chuang verified their lack of any prior knowledge of alleged illegal fishing with respect to the Marshalls 201 and MIFCO. Captain Lu himself asserted in deposition his expert opinion that by his calculation of position, his vessel was outside the USA EEZ during his fishing on September 9, 2006. Declaration of Claimant's Counsel, Exhibit "6," Deposition Lu, pp. 9, 46. The USA had opportunity to cross-examine these witnesses with relevant and personal knowledge. Notwithstanding how the trial will resolve the contest over the true location of actual fishing of September 9, 2006, and without waiting for the final adjudication, MIFCO took immediate steps to reduce any risk of future fishing inside the USA EEZ and terminated Captain Lu, and warned the old and new Captains of location restrictions. Declaration Muller, ¶¶ 11, 13, 14, Exhibit "D". In response, the USA is unable to offer any evidence to controvert these facts. No signed confession by Captain Lu exists, no wiretaps of incriminating information, no intercepts containing admissions of guilt exist. No witnesses will state anything to

the contrary on the subject of the unquestioned innocence of the owner MIFCO and its management.

### BACKGROUND FACTS

Significantly, the USA errs in asserting that Claimant "has raised no factual dispute to the violations set forth in the Government's Complaint for Forfeiture: (illegal fishing in the EEZ of USA on September 7 and 9, 2006".   In contrast, review of the Claimants Memorandum ...in support of Motion for Summary Judgment, filed October 29, 2006, asserts forthrightly "MIFCO and Vessel Marshalls No. 201 Are Innocent in Fact", Part A., Captain Wen Yueh Lu Testimony, at pp. 3 and 4.   The related exhibits, maps and drawings all submitted in support of summary judgment underscore the opinion that Captain  Wen Yueh Lu's fishing activities were outside the US EEZ on September 9, 2006.   Claimant's Memorandum, p. 3; Deposition Wen Yueh Lu, pp. 29, 30, 36 to 39, and Exhibit "9" to Deposition, attached to Declaration of Claimant's Counsel, as Exhibit "6."   The error however is not material.   For the purposes of this motion only, the court may assume for the sake of the Claimant's argument of innocent owner, that the operator of the vessel Captain Wen Yueh Lu had violated the law.

For sake of accuracy, the USA also errs in describing the alleged illegal fish catch of September 9, 2006 as tainting the whole of the 500 tons of fish on board Marshalls 201, as illegal contraband, when seized.   The Opposition itself, Attachment F, Deposition M. Silva,  Exhibit "1"discloses the uncontested Marshalls 201 fishing log and its entry of 120 tons caught on September 9, 2006.   Opposition at 3.   No dispute exists that 120 tons of fish were caught on September 9, 2006.

In the interest of thoroughness regarding the background facts, Claimant's factual assertions were not generally contested or opposed.   Review by section should be helpful to the Court.

1

### 1. Marshal Islands Fishing Company is an Innocent Owner.

No dispute exists that MIFCO was incorporated and chartered within the Republic of the Marshall Islands on February 28, 2006. The common stock of MIFCO was distributed to the shareholders the same date. Ownership by conveyance of right, title and possession to the vessel Marshalls No. 201 was complete upon delivery and execution of the Bill of Sale on February 28, 2006. No opposition facts contest the lack of knowledge, actual or otherwise constructive, in MIFCO of any alleged illegal fishing conduct of Captain Lu who was in charge of the Marshalls No. 201 prior to September 7, 8 and 9, 2006. Only after the Marshalls 201 was arrested on September 9, 2006, did MIFCO receive any information of an alleged violation of United States fishing laws. At no time prior to September 7, 8 or 9, 2006, did the President of MIFCO have any knowledge of alleged violations of United States fishing laws by the Marshalls No. 201. The MIFCO manager and owner are innocent of any prior knowledge of alleged illegal conduct.

### 2. No Prior Convictions and No Prior Arrests of Captain Wen Yueh Lu, Vessel Marshalls No. 201 or MIFCO Exist.

No dispute exists that prior to the September 9, 2006 arrest of the Vessel Marshalls No. 201, the Marshalls 201, its Captain Wen Yueh Lu and MIFCO never suffered any arrest or claim of any misconduct of the Marshalls 201, its Captain Wen Yueh Lu or owner MIFCO.

### 3. MIFCO and Vessel Marshalls No. 201 Assert That They Are Innocent in Fact.

#### A. Captain Wen Yueh Lu Testimony

The USA seems to have forgotten that on December 8, 2006, the deposition of the Captain of the Marshalls 201 Wen Yueh Lu was taken in Guam. The Captain confirmed that he had never been arrested, nor ever charged with any violation of United States or any other foreign laws. Deposition Lu at 9, 46.

1  Captain Lu testified that his position on September 9, 2006 when making his set
2  (encirclement of the fish by net) and during the time of his arrest was outside the
3  boundary of the United States Exclusive Economic Zone ("EEZ") around Howland
4  and Baker Islands. Deposition Lu at 29, 30, 36 to 39. Captain Lu noted the ship's log
   on September 9, 2006 with his location when he timely recorded his position in
5  Kiribati EEZ waters at the time he encircled the fish with the net. Deposition Lu at p.
6  50, Exhibit "11" (log coordinates). Captain Lu prepared an enlarged drawing that
7  depicts his September 9, 2006 location outside the EEZ line of the USA  surrounding
   Howland and Baker Islands. Deposition Lu, pp. 36 to 39, Ex. "9" (Map); *also*, pp. 77,
8  137, Ex. "16" (drawing of location). Of course, the USA opposes these factual
9  assertions, however these facts are not material to a determination of innocent owner.
10 Claimant simply underscores that the good faith belief of Captain Lu is important in
11 conveying the grounds for the belief of innocence of the owners during operations of
   the Marshalls 201 under Captain Lu.
12
   B.  MIFCO's Available Information.

13  The USA Opposition provides no evidence of contrary contemporary
14 information available to the Owner MIFCO on the location of the Marshalls 201which
15 would show they "knew" or "could have known" of alleged  illegal fishing by Captain
   Lu. Even if the court accepts the USA's argument that Captain Lu was reporting daily,
16 then what does this mean? Without reports of illegal fishing, the proffer of the USA is
17 not material.  Even if MIFCO had inquired hourly, only the representations of
18 innocence of Captain Lu would have been obtained. Declaration Muller, ¶¶ 6, 7 and 8.
19 No dispute exists that as of September 7, 8 and 9, 2006, MIFCO's knowledge and
   opinion of the Marshalls 201 location, is only that no violation of law occurred. Id.
20 The reason for MIFCO's  sincere belief in its innocence as the owner rests on Captain
21 Lu's unwavering opinion and log of his September 9, 2006 location; and, the absence
22 of any other inculpatory facts within MIFCO's knowledge.

23

24

4. **MIFCO Terminated the Captain of the Marshalls 201 Wen Yueh Lu upon Receipt of Notice of this Case.**

No dispute exists that upon receipt of notice by MIFCO of the alleged violations of United States law and the arrest of the vessel Marshalls 201, MIFCO terminated the employment of Captain Lu. Declaration Muller, ¶ 11. The USA in fact furthers the innocent owner claims by urging that another termination of an employee occurred. Opposition at 10.

No dispute exists that MIFCO provided warnings and notice to its Captains not to violate United States fishing laws and issued a written policy statement by Directors' Resolution of the Board of Directors of MIFCO dated April 16, 2007. The Exhibit "D", MIFCO, Resolution and Minutes was a written ratification of prior existing oral policy. Declaration of Muller, ¶ 11, Exhibit "D," ¶ 6 ("the company policy as previously expressed orally and in writing by this Board of Directors, General Manager, Shareholders and President to its Captains Fishmasters and Officers, to not violate the EEZ of any nation . . . is hereby ratified and confirmed.) It is an unfair characterization to say that this policy was only enforced after the fact.

MIFCO took appropriate and reasonable steps to continuously minimize and prevent allegations of violations of the United States fishing laws regarding its Exclusive Economic Zone around Howland and Baker Islands, both by termination of Captain Lu and the issue of U.S. published EEZ maps, together with preliminary verbal notice/warning to Captain Wen Yueh Lu to fish only in authorized EEZ waters.

5. **Precautions of MIFCO Against Any Violations of United States Law.**

MIFCO has always taken, and takes now, substantial and reasonable steps to prevent any violations of the United States fishing laws. These facts are not disputed by any contrary evidence. The Captains of the Marshalls 201 were warned by the owner not to violate any Exclusive Economic Zones in use of the Marshalls 201 vessel. Deposition Wen Yueh Lu, p. 48 (admits verbally warned); Declaration J. Chuang, ¶ 4; (warning), Declaration Muller, ¶ 14 (warning). MIFCO's previous policy to not fish

without duly authorized permits in any Exclusive Economic Zones was ratified and confirmed in later writing and adopted by Resolution of the Board of Directors of MIFCO. Declaration Muller, Exhibit "D."

### 6. MIFCO's Conduct and Purpose of Corporate Business.

MIFCO has been issued a Corporate Charter from the Government of the Republic of Marshall Islands. MIFCO is not a partnership between MIMRA and Koo's Fishing Company. Declaration E. Muller, ¶20; Exhibit "F", Joint Venture Agreement, dated May, 2005, p. 7, ¶26. These facts are not disputed, and do not allow the USA to morph two separate entities or individuals in to one; that is, MIFCO is separate and distinct from Koo's Fishing Company, by size, by profit, by employees, by purpose and by age.

The MIFCO purpose, and in fact its conduct, is to encourage indigenous Marshallese' citizens to immerse themselves in and grow their own fishing industry, instead of merely supervising the issue of fishing permits to foreign vessels whose owners are located within the United States, Japan, Russia and the Republic of China. Declaration Muller, ¶ 21. Vessel Marshalls 201 functions as a school providing an education to young Marshallese men training in the contemporary business of tuna fishing. Declaration Muller, ¶ 22 to 26. These facts are not disputed.

### 7. 120 Tons of Fish Caught by Marshalls 201 on September 9, 2006.

On September 9, 2006, the total fish on board was 500 metric tons caught over nine days between August 31 to September 9, 2006. Attachment "F" to Opposition. MIFCO claims that all the 500 metric tons should not be forfeited pursuant to CAFRA, as MIFCO is the Innocent Owner of the fish caught in Kiribati waters. Specifically, the USA Opposition and MIFCO have no dispute that 120 tons of fish were all that was caught on September 9, 2006. Opposition at 3; *also*, Attachment "F" to Opposition.

Claimant concedes that the innocent owner defense would not apply to proven contraband of 120 tons of fish. Therefore, trial as to the catch location of the 120 tons of fish would be required. Nevertheless, the contraband exception does not apply to

the vessel Marshalls 201, and no evidence exists that the corporate owner of the vessel participated in the alleged illegal activity.

## POINTS AND AUTHORITIES

### I. SUMMARY JUDGMENT STANDARD

The moving party satisfies and discharges its burden by showing the Court the absence of evidence to support the non-moving party's case. *Celotex*, 106 S.Ct. 2548, 2554 (1986). MIFCO has established proof of its innocent ownership. Once the lack of evidence is established, it is the non-moving party's duty to come forward with specific facts showing there is a genuine issue for trial. *Celotex*, 106 S.Ct. 2548, 2554 (1986). Note also that the nonmoving party in a motion for summary judgment may not rely on unsupported or conclusory allegations of his/her pleading without any significant probative evidence tending to support the complaint. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

In review of the Claimant MIFCO's motion for summary judgment, and the USA Opposition, the court can no longer indulge in every factual inference and presumption for the non-movant. MIFCO satisfied its burden by motion and declaration with exhibits. The USA was required to show "material facts" that are in dispute regarding the innocence of Claimant.

MIFCO submits that the US has failed, after adequate time for discovery, " to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial", Rule 56(c) mandates an entry of summary judgment. *Celotex*, 106 S.Ct. 2548, 2552 (1986); *Lujan*, 497 U.S. 871, 884 (1990). Under those circumstances, "there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element renders all other facts immaterial". *Celotex*, 106 S.Ct. 2548, 2552 (1986). Consequently, the moving party, in such cases, is entitled to judgment as a matter of law. *Id.*

"[T]his standard provides that the mere existence of *some* alleged factual

disputes between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *U.S. v. 2001 Honda Accord EX VIN #1HGCG22561A035829*, 245 F. Supp. 2d 602, 605 (M.D. Pa. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

## II.  THE CIVIL ASSET FORFEITURE REFORM ACT ("CAFRA").

### A.  CAFRA DOES NOT PERMIT THE COURT TO IMPUTE ALLEGED KNOWLEDGE OF CAPTAIN LU OF ILLEGAL FISHING TO THE INNOCENT OWNER.

The Opposition to the Motion for Summary Judgment missteps in asserting that MIFCO knew of conduct, because Captain Wen Yueh Lu allegedly knew, or must have, or should have, or could have, known that he was illegally fishing in the US EEZ. Opposition at 6-7. As pointed out above, however, Captain Lu repeatedly denied that he was illegally fishing by attesting to his opinion to fishing positions well outside of the USA EEZ. The USA points to no deposition, no evidence, no statement nor document, that MIFCO KNEW, or even that Captain Lu knew, his position was inside the US EEZ while fishing on September 9, 2006. In contrast, the uncontested Declarations of Mr. Muller and Chuang underscore they had no prior knowledge whatsoever of alleged illegal fishing conduct.

Moreover, even if Captain Lu should have known he was, according to the USA's best argument not even one mile in to the US EEZ, the Court may not impute such hypothetical or constructive knowledge to Claimant MIFCO. CAFRA was enacted in 2000 with the purpose of major reform to the civil forfeiture system. Most relevant, to the case at hand, are the below two reforms:

  (1) it created a uniform innocent owner defense (some prior forfeiture statutes had included various iterations of an innocent owner defense);

  (2) it allowed for return of property upon a showing of hardship;

*See* Cong. Rec. H2047 (April 11, 2000), pp. 25-26 of 45. CAFRA simply no longer permits the rules of imputation or respondeat superior to apply in forfeiture cases.

Although Captain Lu was an important employee - he was no owner. Under CAFRA, the term "owner" is defined, in relevant part, at "(A) means a person with an ownership interest in the specific property sought to be forfeited, including a leasehold, lien, mortgage, recorded security interest, or valid assignment of an ownership interest; . . . 18 U.S.C. § 983(d)(6). Captain Lu was no owner; only MIFCO is the owner. Plaintiff agrees. Opposition at 5.

The innocent owner defense grants relief to owners who had an interest in the property prior to the illegal conduct. This defense defines an innocent owner as "an owner who-(i) did not know of the conduct giving rise to forfeiture; or (ii) upon learning of the conduct giving rise to the forfeiture, did all that reasonably could be expected under the circumstances to terminate such use of the property." 18 U.S.C. § 983(d)(2)(A). This is a disjunctive test: either not knowing or taking reasonable steps upon learning of the conduct is sufficient. MIFCO meets the first test of not knowing.

To show that they took reasonable steps upon learning of the conduct giving rise to the forfeiture, an owner may show that they "(I) gave timely notice to an appropriate law enforcement agency of information that led the person to know the conduct giving rise to a forfeiture would occur or has occurred; and (II) in a timely fashion revoked or made a good faith attempt to revoke permission for those engaging in such conduct to use the property or took reasonable actions in consultation with a law enforcement agency to discourage or prevent the illegal use of the property." 18 U.S.C. § 983(d)(B)(i). Permission was revoked, Captain Lu terminated and no prior opportunity existed to notify law enforcement. MIFCO meets this test also.

The reason the instant Complaint for civil Forfeiture is different from civil penalty/administrative fine cases is that CAFRA amended all civil forfeiture provisions to add new rules with respect to forfeiture only, creating a new rule with

respect to owners and their property. Nothing else in the Magnuson-Stevens Act was changed. The notion that the owner is responsible for acts of a captain in a civil penalty case was not altered. [The Government has declined to impose any fine against the vessel or its owner implying that nothing less than the complete extinguishment of MIFCO is satisfactory.] If the USA were to prevail upon their interpretation about respondeat superior, it would gut the innocent owner provision of the CAFRA as applied in Magnuson-Stevens Act cases. CAFRA changed the respondeat superior rules in forfeiture cases because of significant overuse, random and misuse of forfeiture provisions. As a consequence, the strict liability provisions of the Magnuson-Stevens Act do not apply to the instant Complaint for forfeiture, otherwise the CAFRA provisions would be meaningless.

Based on the above legal analysis under CAFRA, no rule of imputation can be said to have survived the enactment of CAFRA, as such would take the heart out of the new policy advanced by the Code.

## B.    THE OWNER IS NOT THE WRONGDOER.

In its Opposition, the USA argues that MIFCO itself is the wrongdoer, based on *Kaiyo Maru 53* of 1980, and, therefore, said wrongdoer can never himself assert that he is an innocent owner. Opposition at 7. First, in reply, CAFRA (2000) means what it says that innocent owners can recover their property from forfeiture claims when used by allegedly guilty employees. Second, the MIFCO Board of Directors, President and Manager never committed any wrongs or acts of illegal fishing. Third, none of these cases cited apply CAFRA after year 2000.

The Opposition cites to some immaterial cases such as *US v. Route 2*, that actually support the Claimant. Opposition at 7. The corporation was not imputed knowledge of a shareholder's use of company property as a marijuana farm. Similar to Marshalls 201, the place of the illegal activity occurred far away from the corporation residence, none of the other corporate members knew, and the corporation did not reap any benefit from it. Again in *Bateman v. U.S.*, (Pre-CAFRA

1991, civil penalty of $6,000, held that owner was innocent and exculpated, despite awareness that his captain was previously caught in possession of prohibited stone crabs in closed season; owner used reasonable care and steps in hiring captain, warned captain of firing if actions were illegal, placed on vessel). Opposition at 8. The innocent owner defense freed the owner of liability. *Northern Wind Inc. v. Daley,* (Pre-CAFRA 1999, civil penalty of $35,000, held that scienter is not required to impose "civil penalties," and *mens rea* element is never presumed for regulatory offenses); and, *U.S. v. 53 Eclectus Parrots,* (Pre-CAFRA 1982, civil forfeiture affirmed of contraband birds, but not the vessel that transported them. Held, that the policy interest in protecting endangered wildlife is to deter any possession or traffic in such bird life, so that the importer cannot keep same). These cases are neither relevant or persuasive. Last, in *U.S. v. Four Jars of Beluga Caviar,* (2006) (unpublished), the US failed to disclose that the holding was not based on CAFRA, but instead relied solely on common law principles of forfeiture. Opposition at 7.

The Opposition reviews further off point cases of the O.R.W. Importantly, none of these cases deal with CAFRA after year 2000, nor are any of them Forfeiture cases. Instead, the authorities are all civil penalty decisions. *In re Sam Millis,* fine of $12,000; *In re Blue Horizon,* fine of $10,000; *In re Jody Domingo,* fine of $2,000 (appeal to NOAA's Undersecretary from the Administrative Law Judge); *In re Atlantic Spray,* fine of $4.3 million ("by far the largest fishery fraud case in NOAA history" spanning a full year of repetitive illegal conduct, involving 5 ships); *In re Meredith Fish Company,* fine of $19,940 if he was fishing illegally; *In re Accursio Alba,* fine of $89,125, affirmed by NOAA administrator; *In re El Jefe,* a fine of aggregate $21,100; *In re Timothy Whitney,* fine of $2,750.

The Opposition conclusion is hollow and without factual support. "Because Captain Lu was an employee..., operating within the scope of his employment, with intent to benefit MIFCO, MIFCO know of his illegal activity". Opposition at 8. In reply, Captain Lu was NOT within the scope of his employment if he was fishing

illegally; and most importantly, even if he were, MIFCO did NOT know of his alleged illegal activity.

### C.   MIFCO FACTUAL ASSERTIONS DO ESTABLISH LACK OF KNOWLEDGE

The Opposition speculates that the declarations of MIFCO Manager Mr. Muller and MIFCO President Mr. Chuang are not sufficient proof of a lack of knowledge of Captain Lu's alleged illegal fishing.   First, this is rank speculation that some other illusory management official knows more than MIFCO's President and Manager asserts.   The fact is that these two highest executives of MIFCO support the MIFCO claim of innocence by sworn detailed statements.   Declaration Muller, ¶ 2, 21 to 26 (Extensive general management duties).   The next responsible employee was Captain Lu, who swore in deposition to his good faith, innocent belief that his location while fishing on September 9, 2006 was outside of the US EEZ.   The passing reference to a subordinate employee responsible for interpreting Chinese to English, Mr. Chun Mu Wang, is without context or evidentiary support.

CAFRA policy rewards subsequent remedial measures after learning of alleged illegal conduct.   Accordingly, the MIFCO termination of Captain Lu should be accorded the highest value in determination of innocent owner status.   Similarly, any other termination of employees at work before September 9, 2006, should also be applauded.   Despite an agreement with the USA that someone else was terminated in Taipei, MIFCO is constrained to point out that it has no employees in Taipei, nor any hire/fire authority over Taipei employees of its agent Zung Shing Company, Ltd. responsible for maintenance, provision supply, ship repairs, logistics, equipment and administrative services.

The Opposition attempts to draw a conclusion from the Taipei office employee termination that it "undermines (that MIFCO was) unaware", or "admission of a role in the illegal activity".   Opposition at 10.   What relationship to MIFCO exists?   What

did he do to get terminated?  What person terminated him?- Nothing connects the dots.  There is simply no factual correlation; just pure speculation again.

### D.    SEPARATE CORPORATIONS; SEPARATE HISTORY.

No dispute exists that MIFCO Claimant is an entirely separate and legal corporation chartered only in 2006 in the Republic of the Marshall Islands, with one significant operating asset; i.e., the Marshalls 201 vessel.  Nonetheless, the USA goes to extraordinary length to discuss completely separate and independent corporations of arguably troubled fishing that dates back eight years ago.  In summary, the past of NiuGini Fishing Company and Koo's Fishing Company, to the extent that there is any connection, is not relevant nor admissible as to the Claimant MIFCO's defenses and case merits.  Opposition at 11 - 12.

The Opposition's facts dredged up are not material to the instant issue.  Koo's Fishing Company acted for NiuGini in payment of a $50,000 penalty arising from free drifting FAD (fish aggregating devices) on August 17, 2000, was nearly eight years ago.  In close examination, the settlement agreement of the 2000 case, emphasizes that "this case shall NOT constitute a prior violation" (emphasis added).  Attachment C, p.3, para. 4, to Opposition.  So, if it is not a prior violation, then it has no weight or relevance.  Examination reveals that no fishing in the EEZ whatsoever occurred; and no fish were caught; and no vessel arrested.  Attachment C, p. 10 (FADs floated inside the US EEZ, and no charges were brought for nets in the water, nor was vessel in the EEZ, nor were any fish actually caught.)  A reduction from a $75,000 fine to $50,000 was made to rapidly close the case and motivate the fishing company not to hire counsel and dispute the case merits.  Last, none of these papers have a supporting sworn declaration removing them from the bar of the hearsay rule.  FRE 803.

Likewise, the lengthy narrative in Declaration of Jeff Pollack, NOAA Investigator, sweepingly surveys all that he reads from government files, Internet sites and other witnesses' statements, all of which is barred by the hearsay rule.  FRE 802.  *Evans v. Tech. Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996).  (Hearsay not

permitted in Rule 56 Affidavits). Virtually the entire content of Mr. Pollack's declaration is totem pole hearsay. Rule 56 requires the introduction of admissible evidence; hearsay is not acceptable. None of Mr. Pollack's sweeping history of Central Pacific fishing undercuts the innocent owner facts of MIFCO. However, it is of some interest that the heroics of Koo's Fishing Company rescue of the three lost Mexican fisherman, adrift 8000 km from home for over nine months just recently, without compensation or salutation, was mentioned.

The Opposition of the USA does not connect the dots. First, it is undisputed that the Marshalls 201 was formerly the Koo's 106, and the Captain and officers were transferred from the Koo's 106 to the 201. Opposition at 11. But, it is without dispute, that Koo's 106, its former Captain/Master Wen Yueh Lu and officers were never charged, suspected or arrested for any illegal fishing activity ever. So why does it have relevance that the Koo's 108 had received a warning; or that the NiuGini 103 was transferred and was renamed the Koo's 103? Simply put, there is no relevance to these vessel sale and transfers, unless the dots are connected and a convicted criminal is hired, with knowledge of his conviction, by the innocent owner. However, and in fact, the Marshalls 201, its Captain Lu and officers enjoyed a sterling and stainless reputation of fishing within all the laws and permits of the Pacific.

In closer examination, the USA's claims against the Koo's 108 matured into a filed Complaint in 2006, Civil Case No. 06-00029 in the District Court of Guam. However, on December 22, 2006, the USA dismissed their Koo's 108 case and no conclusion exists, except that the previous allegations are now withdrawn. *See,* Request for Withdrawal, December 22, 2006, attached. Exhibit"1."

Likewise, the USA filed a criminal case against Captain Lu personally in the District Court of Guam, Case No. 06-00039. However, when faced with a trial on the merits, the US dismissed their case and no conclusion exists on those charges. *See,* Judgment, U.S. Motion to Dismiss, Exhibit "2" attached. Judicial notice of court

1 | records and pleadings are allowed on summary judgment. FRE 201; *Soley v. Star & Herald Co.*, 390 F.2d 364, 367 (5th Cir. 1968); FRE 902(4) (Public records admissible).

As stated above, the 2000 NiuGini case was agreed by the USA as a case of "no prior violation." So it is curious, and fundamentally wrong, that the Opposition refers to "knowledge of these two violations as a sufficient basis for MIFCO/KFC to suspect illegal fishing". Opposition at 12. Importantly, there were not two violations. In fact, no violations were found for Koo's 108 when the Government dismissed its own case; and, the agreement entered for the NiuGini 103 includes the assurance that it did not constitute a prior violation. Opposition, Attachment C. In summary, Claimant submits that no relevance exists to these prior proceedings and allegations, dismissals and agreement of "no prior violation."

Notwithstanding, all of these allegations taken together do not prove any pre-existing knowledge of MIFCO Claimant, nor do they connect to the alleged illegal fishing by the Marshalls 201.

### E. MIFCO TOOK SUBSTANTIAL AND REASONABLE STEPS TO PREVENT VIOLATIONS.

#### 1. Frequency of Communications.

The Opposition asserts that because Captain Lu testified in deposition that he reported his location and fish catch daily, then MIFCO could have done more to prevent alleged illegal fishing. First, the Lu testimony is out of context. When Lu reported, it was not reported direct to MIFCO. Because of contract relationships in communications, the reports went to Singapore first for relay, through agent Zung Shing Company, Ltd., ultimately to Majuro, on the once a week basis. Second, all the reported information have innocent content. No relevance exists to the USA argument. Third, all the VMS communications between ship to shore have been turned over in discovery, and no inculpatory material exists.

2.    CAFRA Policy is Not to Insure Owners Operate as Surrogate Police Officers: Reasonableness is Satisfied.

"A safe harbor is created for an owner who notifies police and revokes or attempts to revoke (to the extent permitted by law) permission to use the property by those who are using it in the course of criminal activity. The owner's obligations end right there-property owners should not have to assume the responsibilities of police to stop crime." H.R. Rep. No. 106-192 at 20 -21(1999). As further explained later in the House Report, "the property owner is not required to take every conceivable action which could be considered reasonable, but only to take actions which are in total a reasonable response to the conduct giving rise to the forfeiture." In determining what is a reasonable response, the economic situation of the property owner (and his business, if applicable) should be taken into account." H.R. Rep. No. 106-192 at 30 (1999) (emphasis added).

The USA can set up overhead permanent geo-synchronous satellite surveillance, or unmanned drones, or daily flights; and MIFCO can set up mandatory location and catch reporting by the minute or by the hour. Or, the USA could string together 10,000 buoys around the Howland and Baker Islands to mark their EEZ. But none of these hypothetical steps are reasonable and far exceed in expense the standard in the industry. The USA has not offered any violation of the reasonable standards of communication between owners and their fishing vessel captains in the Pacific Ocean. USA continues on in speculation that with more frequent communications, MIFCO could have prevented the alleged illegal fishing. In this instance, such speculation--even if acted upon--simply would not help.

If the USA wished to set out their definition of reasonable prevention, then their omission and failure to do so in 2002 and in February 2006 only shows that it was not reasonable to do so. Two obvious and clear opportunities existed for the USA to instruct, advise or warn in writing what exact reasonable steps could be taken to insure Captain conformity with the rules on legal fishing and its location/boundaries.

First, the NiuGini 103 case could have prompted the USA to ask in writing for certain reasonable procedures to be followed in communications. Likewise, in February 2006, the USA could have made their reasonable expectations clear in writing. But, on both occasions, the USA declined to do so.

### 3. Maps on Board the Marshalls 201.

The USA need not surmise what maps were on board the Marshalls 201. In fact, they arrested the vessel and removed all of her maps and charts. These included the EEZ map, published by the USA. Deposition Lu, Exhibit "4," attached to Declaration of Claimants' Counsel, filed October 29, 2007, as Exhibit "6." And, the charts on board included the best navigation charts for the Central Pacific Ocean. The EEZ map Exhibit "4" is the best available map in the world for locations of the boundaries of EEZ's in the Pacific--nothing better could have been provided by the owner.

If the USA map of EEZs was inadequate to charting the EEZ of USA, then the fault for the map may be laid only at the steps of the USA cartographer and map publication office, as well as NOAA. This is so for several reasons. One, the USA can improve their maps and serve notice to the biggest fishing companies. Two, they can distribute their CFR coordinates plotted on maps to the fishing companies. Three, in this case, when USA had warned Koo's Fishing Company in February 2006 of possible violations, they could have specifically distributed a finer map.

No evidence exists that the EEZ map was used as a sole basis for navigation aboard the Marshalls 201. In fact, the Marshalls 201 had state of the art aids to navigation, maps, charts, computer plotters, GPS, radar, radio, VMS, fax and satellite telephone when arrested. Deposition Lu, at p. 41 (GPS used).

Importantly, what would the USA's argument be now if the EEZ map, Exhibit "4," were NOT provided to the Marshalls 201 and Captain Wen Uueh Lu? Certainly, a howl would be raised how this basic map was NOT provided.

1    In any event, the USA expert witness, Mr. R. Smith undercuts the USA
2    argument that its own EEZ map should not be used at sea. He discloses that "one
3    purpose of the map was to show the general areas of all [USA included] claimed EEZ
     and fishery zones. It is believed that the map likely was distributed at certain
4    international meetings, such as at the annual meeting of the Pacific Fisheries treaty to
5    illustrate EEZ areas." Accordingly, the USA purpose for this map was satisfied when
6    Marshalls 201 and Captain Wen Uueh Lu utilized it in 2006.

7             4.    Written Policy Ratified and Confirmed on April 16, 2007.

     The policy existed officially and was distributed orally before April 16, 2007.
8    The policy was set in writing on April 16, 2007 to memorialize its prior use and
9    establishment. Warnings to Captains from President Chuang and Manager Muller
10   were given.

11   **III.    INNOCENT OWNER ABSENCE OF KNOWLEDGE.**

     Under the facts of this case, no knowledge, actual or otherwise constructive,
12   could be imputed towards MIFCO of any alleged illegal conduct of the Master in
13   charge or the Marshalls No. 201 between September 7, 8 and 9, 2006. Declaration of
14   Muller, ¶¶6, 7 and 8. Only after the Marshalls 201 was arrested on September 9, 2006,
15   did MIFCO receive any information of an alleged violation of United States law.
     Declaration Muller, ¶8. In addition, at no time prior to September 9, 2006, did the
16   President of MIFCO, Mr. Jutzu Chuang, or its shareholders have any knowledge of the
17   alleged violations of the United States law by the Marshalls No. 201. Declaration of
18   Chuang, ¶3.

19   MIFCO had no reason to suspect that any illegal conduct was going to occur
     because there had been no prior arrests or convictions of either Captain Wen Yueh Lu,
20   Vessel Marshalls No. 201 or MIFCO. In essence, even under the constructive
21   knowledge analysis, there was no knowledge that "puts the owner on notice that he
22   should inquire further." *U.S. v. Real Property at 2659 Roundhill Dr.*, 194 F.3d 1020, 1028
23   (9th Cir. 2002). At no time prior to the September 9, 2006 arrest of the Vessel Marshalls

24

No. 201, did the Marshalls 201, its Captain Wen Yueh Lu, or MIFCO suffer or cause to be suffered any prior arrest of vessel, its Captain Lu or owner MIFCO for any reasons including alleged violations of United States law. Declaration Muller, ¶9.

MIFCO has always taken, and takes now, substantial and reasonable steps to prevent any violations of the United States fishing laws. Declaration E. Muller, ¶12. Specifically, MIFCO provided the Captain of its Marshalls 201 Maps of the Exclusive Economic Zone of the United States and other Pacific Island nations; Declaration J. Chuang, ¶5; Declaration E. Muller, ¶13. The Captains of the Marshalls 201 were orally warned by the owner not to violate any Exclusive Economic Zones by use of the Marshalls 201 vessel. Declaration J. Chuang, ¶4; Declaration Muller, ¶14. MIFCO's policy to not violate any Exclusive Economic Zones is in writing and adopted by resolution of the Board of Directors of MIFCO. Declaration Muller, ¶11; Resolution and Minutes of MIFCO dated April 16, 2007, attached Exhibit "D". No facts suggest that the owner or manager of MIFCO should have exercised more inquiries based on this record.

Based on the uncontroverted facts above, neither MIFCO, its owners, or manager had actual or constructive knowledge of Captain Wen Yueh Lu's alleged illegal fishing activity that would result in the seizure of Marshalls 201.

## CONCLUSION

MIFCO requests that the Court apply CAFRA to the instant undisputed material facts, and based on CAFRA, the Court should grant the motion for summary judgment against the United States. The Bond of $2,950,000.00 together with accumulated interest should be ordered released and returned to the innocent owner

//
//
//
//

1  claimant Marshall Islands Fishing Company, Claimant herein.  Based on the above,

2  summary judgment should be granted in favor of MIFCO because the record reflects

3  that it is an innocent owner.

4        DATED this 11th day of January, 2008.

5                      DANIEL BERMAN
                    BERMAN O'CONNOR & MANN
                    Suite 503, Bank of Guam Building

6                      111 Chalan Santo Papa
                    Hagatna, Guam 96910

7                      JAMES P. WALSH (PRO HAC VICE)
                    DAVIS WRIGHT TREMAINE LLP
                    505 Montgomery Street, Suite 800

8                      San Francisco, California, 94111

9                      Counsel for Defendant MARSHALLS 201 and
                    Claimant MARSHALL ISLANDS FISHING

10                     COMPANY

11

12       By:_____
             **DANIEL J. BERMAN**

13

14

15

16

17

18

19

20

21

22

23

24

# EXHIBIT 1

## CLAIMANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT



1  LEONARDO M. RAPADAS
   United States Attorney
2  MIKEL W. SCHWAB
   Assistant U.S. Attorney
3  Sirena Plaza, Suite 500
   108 Hernan Cortez Avenue
4  Hagatna, Guam 96910
   Tel: 671-472-7332
5  Fax: 671-472-7215

6  Paul Ortiz
   Senior Attorney
7  Office of General Counsel
   National Oceanic and Atmospheric Administration
8  501 West Ocean Blvd.
   Suite 4470
9  Long Beach, California 90802
   Tel: 562- 980- 4069

10
11 Attorneys for the United States of America

RECEIVED
DEC 2 2 2006
BERMAN O'CONNOR
MANN & SHKLOV

FILED
DISTRICT COURT OF GUAM
DEC 2 2 2006
MARY L.M. MORAN
CLERK OF COURT

IN THE UNITED STATES DISTRICT COURT

FOR THE

TERRITORY OF GUAM

| UNITED STATES OF AMERICA, | ) | CIVIL CASE NO. 06-00029 |
|---|---|---|
| Plaintiff, | ) ) | |
| vs. | ) ) | REQUEST FOR WITHDRAWAL |
| KOO'S 108, | ) ) | |
| Defendant. | ) ) ) | |

The United States hereby requests withdrawal without prejudice of the Complaint in the

above entitled case pursuant to Fed. R.Civ.P. 41 (1)(i).

SO SUBMITTED this 21st day of December, 2006.

LEONARDO M. RAPADAS
United States Attorney
Districts of Guam and NMI

BY: _____
MIKEL W. SCHWAB
Assistant U.S. Attorney

EXHIBIT

# EXHIBIT 2

## CLAIMANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

1 LEONARDO M. RAPADAS
United States Attorney
2 KARON V. JOHNSON
Assistant U.S. Attorney
3 Suite 500, Sirena Plaza
108 Hernan Cortez Avenue
4 Agana, Guam 96910
Telephone: (671) 472-7332/7283
5 Telecopier: (671) 472-7334

6 Attorneys for United States of America

RECEIVED
JAN 1 6 2007
BERMAN O'CONNOR
MANN & SHKLOV

FILED
DISTRICT COURT OF GUAM
JAN 1 2 2007
MARY L.M. MORAN
CLERK OF COURT

7

8 IN THE UNITED STATES DISTRICT COURT

9 FOR THE TERRITORY OF GUAM

10 WEN YUEH LU,                                )
                                             )   CIVIL CASE NO. __06-00039__
11              Petitioner,                   )
                                             )   **UNITED STATES MOTION TO**
12       vs.                                  )   **DISMISS**
                                             )
13 LEONARDO M. RAPADAS, et al.,               )
                                             )
14              Respondents.                  )
                                             )
15 _____)

16       COMES NOW THE United State of America, by and through undersigned counsel, and

17 moves this Honorable Court for an Order dismissing this action.  The government makes this

18 motion because petitioner Lu has filed his motion concerning release conditions in Magistrate

19 Case No. 06-00031, under the proper case number, that is, Magistrate Case No. 06-00031.

20 Accordingly, this matter is moot.

21       Respectfully submitted this __12th__ day of January, 2007.

22                                   LEONARDO M. RAPADAS
                                    United States Attorney
23                                   Districts of Guam and CNMI

24
                          By:       _____
25                                   KARON V. JOHNSON
                                    Assistant U.S. Attorney
26

27

28

1
2
3
4
5
6                    UNITED STATES DISTRICT COURT
7                        DISTRICT OF GUAM
8
WEN YUEH LU,                              CIVIL CASE NO. 06-00039
9            Plaintiff,                        J U D G M E N T
10
       vs.
11
LEONARDO M. RAPADAS, etc., et al.,
12
             Defendants.
13
14
15        Judgment is hereby entered in accordance with the Order re Report and Recommendation
16  to Dismiss for Writ of Habeas Corpus filed on February 16, 2007.
17        Dated this 20th day of February, 2007, Hagatna, Guam.
18
19                                        MARY L. M. MORAN
                                          Clerk of Court
20
21                                        By: /s/ Renee M. Martinez
                                               Deputy Clerk
22
23
24
25
26
27
28