**DISTRICT COURT OF GUAM
TERRITORY OF GUAM**

UNITED STATES OF AMERICA,

Plaintiff,

vs.

MARSHALLS 201,

Defendant.

Civil Case No. 06-00030

**ORDER RE:
MOTION TO DISMISS**

This matter came before the court for a hearing on the Defendant's Motion to Dismiss on April 3, 2008. The Defendant argued that the United States lacks the legal authority to claim and enforce a 200-mile exclusive economic zone around Baker and Howland Islands. As such, it argues that the case should be dismissed pursuant to Rule 12(b)(1),(2), and (3) of the Federal Rules of Civil Procedure. Having considered the parties' arguments and submissions, as well as relevant caselaw and authority, the court hereby **DENIES** the Defendant's Motion and issues the following decision.

**FACTUAL BACKGROUND**

An Exclusive Economic Zone ("EEZ") is a seazone over which a state (including its territories) has special rights over the exploration and use of marine resources. The EEZ starts at the coastal baseline and extends 200 nautical miles out into the sea, perpendicular to the baseline. The outer boundary of the zone is a line drawn in such a manner that each point on it is 200 nautical miles from the baseline. United States EEZs were originally established by Presidential Proclamation in 1983. Even earlier, in 1976, the Fishery Conservation and Management Act of 1976 established a fishery conservation zone contiguous to the territorial sea of the United States,

effective March 1, 1977. EEZs were designed to grant exclusive jurisdiction to the United States for the purposes of "exploring, exploiting, conserving, and managing natural resources." Presidential Proclamation No. 5030.

The controlling law governing the territorial seas, EEZs, and fisheries of the United States is the Magnuson-Stevens Fishery Conservation and Management Act ("Magnuson Act"). *See* 16 U.S.C. § 1857. The Magnuson Act provides for the conservation and management of United States fisheries. Since 1977, the United States has claimed an exclusive fishery zone around both Baker and Howland Islands. These Islands are undisputed territories of the United States, and are located on the equator, about 1,600 miles southwest of Hawaii. The Magnuson Act also codifies the EEZs of Baker and Howland Islands, and other United States territories in the Pacific.

On September 7, 2006, the United States Coast Guard ("USCG") performed a routine patrol of the EEZ of Baker and Howland Islands, and noticed a foreign flagged fishing vessel (Marshall Islands flagged) within the EEZ.[1] (*See* Docket No. 120 at 1). At the time, the boom was lowered and the fishing nets were not properly covered or stowed. This, in itself, is a violation of the Magnuson Act 16 U.S.C. § 1857 (4)(A) and (B). *Id.* According to the USCG, two other fishing vessels were detected inside the EEZ that day, the F/V KOO'S 101 and the F/V KOO'S 108.[2]

On September 9, 2006, the USCG again spotted the F/V MARSHALLS 201 while on patrol, and again it was located within the United States EEZ. When detected on this date, active fishing on the vessel was observed within the EEZ, a clear violation of the Magnuson Act. *See* 16 U.S.C. § 1857(2). (*See* Docket No. 92 at 9). The USCG contacted a nearby USCG cutter to intercept the fishing vessel and to determine whether the F/V MARSHALLS 201 was permitted to fish in the EEZ. The USCG Cutter WALNUT viewed F/V MARSHALLS 201 actively hauling nets, but the persons aboard the vessel refused to respond to repeated attempts at communication. The Cutter WALNUT tried to reach F/V MARSHALLS 201 by radio and by signal flag. After several minutes

---

[1] The vessel was later identified as F/V MARSHALLS 201.

[2] These fishing vessels were later determined to be partially owned by Marshall Islands Fishing Company ("MIFCO").

- 2 -

of effort by the USCG to make contact with F/V MARSHALLS 201, the vessel abruptly headed out of the EEZ, with her nets still hanging from the boom. (*See* Docket No. 120 at 2). The Cutter WALNUT pursued F/V MARSHALLS 201 out of the EEZ. *Id*.

The vessel eventually stopped, and the USCG boarded and secured the F/V MARSHALLS 201 in order to investigate whether any illegal fishing activity had taken place. (*See* Docket No. 92 at 9). The USCG determined that the F/V MARSHALLS 201 did not possess a permit to fish in the EEZ, and it appeared that the vessel had a recent catch of 110 metric tons of tuna in its possession, from fishing in the United States EEZ on September 9, 2006. (*See* Docket No. 120 at 3).

The next day, USCG law enforcement seized the F/V MARSHALLS 201 and her catch and escorted the vessel to Guam. On September 20, 2006, the F/V MARSHALLS 201 reached port in Apra Harbor, where the current market value of the F/V MARSHALLS 201 was determined to be $2,650,000.00, and the current market value of the tuna onboard was found to be $350,000.00. (*See* Docket No. 120 at 3).

**PROCEDURAL BACKGROUND**

On October 4, 2006, the United States filed a Complaint of Forfeiture of the vessel and its catch and appurtenances under 16 U.S.C. § 1860.[3] (*See* Docket No. 1). In the Complaint, the United States alleged violations of the Magnuson Act, for illegally fishing without a permit in the EEZ of the United States. On October 17, 2006, U.S. Magistrate Judge Manibusan granted a Stipulated Motion for Release of the vessel. (*See* Docket No. 15). Substituting for the vessel *in rem* was a bond in the amount of $2,950,000.00, which represented the value of the vessel and the catch. F/V MARSHALLS 201 left Guam soon after her release.

///

---

[3]This statute governs civil forfeitures, and states that "any fishing vessel (including its fishing gear, furniture, appurtenances, stores, and cargo) used, and any fish (or fair market value thereof) taken or retained, in any manner, in connection with or as a result of the commission of any act prohibited by section 1857 of this title...shall be subject to forfeiture to the United States." 16 U.S.C. § 1860(a).

**DISCUSSION**

There are two main arguments on which the Defendant bases its Motion to Dismiss. The first argument is that Baker and Howland Islands are "rocks" under the Law of the Sea Treaty definition. The second argument is that the United States' enforcement of these EEZs is contrary to customary international law.

At the outset, the court notes that the United States addressed the issue of standing in its Opposition Brief and in oral arguments on April 3, 2008. The United States argued in its Opposition that the Defendant had no standing to dispute the EEZs of the United States because it believes the case is based on interpretations of international law. However, the court finds that because the legal premise of this case involves the seizure of the F/V MARSHALLS 201 by the United States, for allegedly being located in and engaged in fishing within the EEZ of the United States, the Defendant has standing to pursue its Motion to Dismiss in the District Court of Guam.[4]

The court will now address the Defendant's Motion to Dismiss. The Defendant first argues that the United States lacks the legal authority to claim and enforce a 200-mile EEZ around Baker and Howland Islands. Specifically, the Defendant states that the complaint should be dismissed for lack of subject matter jurisdiction and *in rem* jurisdiction under Rule 12(b)(1),(2), and(3) of the Federal Rules of Civil Procedure. The Defendant claims that under international law, Baker and Howland Islands are not actually islands, but are considered "rocks" and therefore, do not provide a basis for claims of EEZs.[5]

Article 121(3) of the United Nations Law of the Sea Convention ("Convention") states that "rocks which cannot sustain human habitation or economic life of their own shall have no exclusive

---

[4] The court finds that it has standing to hear this Motion pursuant to 16 U.S.C. § 1857 and seq., the Magnuson-Stevens Fishery Conservation and Management Act ("Magnuson Act").

[5] The precise geographic coordinates of the EEZs of Baker and Howland Island are located in the Federal Register, where the exact location can be charted by any person using the specific coordinates provided. 60 Fed. Reg. 43829 (August 23, 1995).

- 4 -

economic zone or continental shelf." (*See* United Nations Law of the Sea Convention, Dec. 10, 1982, U.N. Doc. A/CONF.62/122). The Defendant argues that Baker and Howland Islands fit this definition, and more importantly, that the Convention is binding on the United States because it is a signatory to it. It should be noted though, that the United States has yet to ratify the Convention. (*See* Docket No. 121 at 11). Because, the Convention is not self-executing it requires implementing legislation, in this case ratification, before it becomes fully binding on the United States. As a result, it is not yet legally enforceable on the United States. (*See* Docket No. 121 at 11).

Not only is the Convention not presently binding on the United States, the Defendant's argument is further weakened by the enactment of the Magnuson-Stevens Fishery Conservation and Management Act ("Magnuson Act") ( *See* 16 U.S.C. § 1857) which specifically cites to "Pacific Insular Areas" as areas "contain[ing] unique historical, cultural, legal, political, and geographical circumstances which make fisheries resources important in sustaining their economic growth." 16 U.S.C. § 1801(a)(10). "Pacific Insular Area" is a term of art and is defined to mean "American Samoa, Guam, the Northern Mariana Islands, Baker Island, Howland Island ..." 16 U.S.C. § 1802 (30). The Magnuson Act also specifically and explicitly recognizes the EEZs off of Baker and Howland Islands. Section 1824(e)(8) of Title 16 (*as amended*) states that "[i]n the case of violations by foreign vessels occurring within the exclusive economic zones off ... Howland, Baker, and Wake Islands, amounts received by the Secretary attributable to fines and penalties imposed under this Act, shall be deposited into" an account named for the action. (*See* 16 U.S.C. § 1824(e)(8), as amended by Magnuson-Stevens Fishery Conservation and Management Reauthorization Act of 2006, section 6, Pub. L. 109-479 (2007)).

Additionally, the Magnuson Act specifically recognizes jurisdiction for enforcement of the EEZs. It states that "in the case of Guam or any possession of the United States in the Pacific Ocean, the appropriate court is the United States District Court for the District of Guam..." 16 U.S.C. § 1861(d).

In sum, Congress has unequivocally established EEZs around its territories of Baker and Howland Islands, and has given justification for their protection, and jurisdictional relief for

- 5 -

violations occurring within those EEZs, to the District Court of Guam.

The United States also suggests that even if Congress had not expressly declared EEZs around Baker and Howland Islands, these Islands do not fit the Convention definition of "rocks." (*See* Docket No. 121). In order to find that Baker and Howland Islands are "rocks" one must first determine that they "cannot sustain human habitation." (*See* Docket 121 at 12). The United States introduced evidence that both Islands can sustain human habitation and "have had periods of habitation in the relatively recent past and ... have played a role in various economic ventures." (*See* Docket No. 121 at 13, Van Dyke Deposition 107-120, Exh. 8-15 (Attachment D)).

The Defendant argues that the principal determinant is whether a particular island or "islet" can sustain human habitation or economic life of its own. According to Professor Jon M. Van Dyke, a professor at University of Hawaii School of Law, the habitation must "exist for its own sake, as part of an ongoing community that sustains itself and continues through generations." (*See* Docket No. 98 at ¶ 5). Because Baker and Howland Islands "have no economic life of their own," they should be considered "rocks" under the Convention. (*See* Docket No. 98 at ¶ 2).

The court finds that the Defendant's argument misconstrues Article 121. The specific language of the statute reads that "rocks which ***cannot*** sustain human habitation ***or*** economic life on their own shall have no exclusive economic zone or continental shelf." (*See* United Nations Law of the Sea Convention, Dec. 10, 1982, U.N. Doc. A/CONF.62/122, *emphasis added*). In the present case, the United Sates has provided sufficient evidence in its pleadings to give the impression that Baker and Howland Islands are in fact islands as defined under the Convention.

Notwithstanding the arguments over the definition of an island under the Convention, Federal law makes clear that the United States may declare EEZs around its territories. As noted above, Baker and Howland Islands have been designated as two such territories. Jurisdiction regarding actions taking place in these EEZs is clearly set out in the Magnuson Act. As such, the Defendant has not met the burden of Rule 12(b)(1),(2), and (3) of the Federal Rules of Civil Procedure, and as such the Motion to Dismiss is **DENIED**.

///

## CONCLUSION

Based upon the foregoing the court finds that the Defendant has not met the burden of Rule 12(b)(1),(2), and (3) of the Federal Rules of Civil Procedure. Accordingly, the court **DENIES** the Defendant's Motion to Dismiss. By May 23, 2008, the parties are to submit a proposed scheduling order to the court.

**SO ORDERED.**



**/s/ Frances M. Tydingco-Gatewood**
    **Chief Judge**
**Dated: May 08, 2008**