# DISTRICT COURT OF GUAM
# TERRITORY OF GUAM

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

MARSHALLS 201,

    Defendant.

Civil Case No. 06-00030

**ORDER RE:
MOTION FOR SUMMARY
JUDGMENT**

This matter came before the court for a hearing on the Defendant's Motion for Summary Judgment on April 3, 2008. The Defendant, Marshalls 201, argued that Summary Judgment should be granted pursuant to Fed.R.Civ. P. Rule 56, or in the alternative, Federal Supplemental Rule C(6)(Claim and Answer). Having considered the parties' arguments and submissions, as well as relevant caselaw and authority, the court hereby **DENIES** the Defendant's motion and issues the following decision.

## FACTUAL BACKGROUND

An Exclusive Economic Zone ("EEZ") is a seazone over which a state (including its territories) has special rights over the exploration and use of marine resources. The EEZ starts at the coastal baseline and extends 200 nautical miles out into the sea, perpendicular to the baseline. The outer boundary of the zone is a line drawn in such a manner that each point on it is 200 nautical miles from the baseline. United States EEZs were originally established by Presidential Proclamation in 1983. Even earlier, in 1976, the Fishery Conservation and Management Act of 1976 established a fishery conservation zone contiguous to the territorial sea of the United States, effective March 1, 1977. EEZs were designed to grant exclusive

jurisdiction to the United States for the purposes of "exploring, exploiting, conserving, and managing natural resources." Presidential Proclamation No. 5030.

The controlling law governing the territorial seas, EEZs, and fisheries of the United States is the Magnuson-Stevens Fishery Conservation and Management Act ("Magnuson Act"). *See* 16 U.S.C. § 1857. The Magnuson Act provides for the conservation and management of United States fisheries. Since 1977, the United States has claimed an exclusive fishery zone around both Baker and Howland Islands. These Islands are undisputed territories of the United States, and are located on the equator, about 1,600 miles southwest of Hawaii. The Magnuson Act also codifies the EEZs of Baker and Howland Islands, and other United States territories in the Pacific.

On September 7, 2006, the United States Coast Guard ("USCG") performed a routine patrol of the EEZ of Baker and Howland Islands, and noticed a foreign flagged fishing vessel (Marshall Islands flagged) within the EEZ.[1] (*See* Docket No. 120 at 1). At the time, the boom was lowered and the fishing nets were not properly covered or stowed. This, in itself, is a violation of the Magnuson Act 16 U.S.C. § 1857 (4)(A) and (B). *Id.* According to the USCG, two other fishing vessels were detected inside the EEZ that day, the F/V KOO'S 101 and the F/V KOO'S 108.[2]

On September 9, 2006, the USCG again spotted the F/V MARSHALLS 201 while on patrol, and again it was located within the United States EEZ. When detected on this date, active fishing on the vessel was observed within the EEZ, a clear violation of the Magnuson Act. *See* 16 U.S.C. § 1857(2). (*See* Docket No. 92 at 9). The USCG contacted a nearby USCG cutter to intercept the fishing vessel and to determine whether the F/V MARSHALLS 201 was permitted to fish in the EEZ. The USCG Cutter WALNUT viewed F/V MARSHALLS 201 actively hauling nets, but the persons aboard the vessel refused to respond to repeated attempts at

---

[1] The vessel was later identified as F/V MARSHALLS 201.

[2] These fishing vessels were later determined to be partially owned by Marshall Islands Fishing Company ("MIFCO").

- 2 -

communication. The Cutter WALNUT tried to reach F/V MARSHALLS 201 by radio and by signal flag. After several minutes of effort by the USCG to make contact with F/V MARSHALLS 201, the vessel abruptly headed out of the EEZ, with her nets still hanging from the boom. (*See* Docket No. 120 at 2). The Cutter WALNUT pursued F/V MARSHALLS 201 out of the EEZ. *Id*.

The vessel eventually stopped, and the USCG boarded and secured the F/V MARSHALLS 201 in order to investigate whether any illegal fishing activity had taken place. (*See* Docket No. 92 at 9). The USCG determined that the F/V MARSHALLS 201 did not possess a permit to fish in the EEZ, and it appeared that the vessel had a recent catch of 110 metric tons of tuna in its possession, from fishing in the United States EEZ on September 9, 2006. (*See* Docket No. 120 at 3).

The next day, USCG law enforcement seized the F/V MARSHALLS 201 and her catch and escorted the vessel to Guam. On September 20, 2006, the F/V MARSHALLS 201 reached port in Apra Harbor, where the current market value of the F/V MARSHALLS 201 was determined to be $2,650,000.00, and the current market value of the tuna onboard was found to be $350,000.00. (*See* Docket No. 120 at 3).

**PROCEDURAL BACKGROUND**

On October 4, 2006, the United States filed a Complaint of Forfeiture of the vessel and its catch and appurtenances under 16 U.S.C. § 1860.[3] (*See* Docket No. 1). In the Complaint, the United States alleged violations of the Magnuson Act, for illegally fishing without a permit in the EEZ of the United States. On October 17, 2006, U.S. Magistrate Judge Manibusan granted a Stipulated Motion for Release of the vessel. (*See* Docket No. 15).

---

[3]This statute governs civil forfeitures, and states that "any fishing vessel (including its fishing gear, furniture, appurtenances, stores, and cargo) used, and any fish (or fair market value thereof) taken or retained, in any manner, in connection with or as a result of the commission of any act prohibited by section 1857 of this title...shall be subject to forfeiture to the United States." 16 U.S.C. § 1860(a).

- 3 -

Substituting for the vessel *in rem* was a bond in the amount of $2,950,000.00, which represented the value of the vessel and the catch.  F/V MARSHALLS 201 left Guam soon after her release.

**DISCUSSION**

Summary judgment is appropriate when the evidence, read in the light most favorable to the nonmoving party, demonstrates that there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56( c).  The party opposing summary judgment cannot rest on conclusory allegations, but must set forth specific facts showing that there is a genuine issue for trial.  *Leer v. Murphy*, 844 F.2d 628, 631 (9th Cir. 1988).  Moreover, to defeat a summary judgment motion, the nonmoving party must come forward with evidence sufficient to establish the existence of any disputed element essential to that party's case, and for which that party will bear the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 102 S.Ct. 2548 (1986).

The court must draw inferences from the evidence in a light most favorable to the nonmovant, and resolve all reasonable doubts in that party's favor.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).  Facts are considered "material" if they "might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  Summary judgment should not be granted if the evidence indicates that a reasonable fact-finder could find in favor of the non-moving party. *Id.*

Where the moving party does not bear the burden of proof on an issue at trial, the moving party may discharge its burden of production by either of two methods.  *Nissan Fire & Marine Ins. Co., Ltd., v. Fritz Cos., Inc.*, 210 F.3d 1099, 1106 (9th Cir.2000).  The moving party may produce evidence negating an essential element of the nonmoving party's case, or, after suitable discovery, the moving party may show that the nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial. *Id.*

The Defendant's claim for Summary Judgment is based on the Civil Asset Forfeiture

- 4 -

Reform Act ("CAFRA"), which holds that innocent owners are not subject to forfeitures. 18 U.S.C. § 983(i)(1). CAFRA was enacted in the year 2000, for the purpose of increasing the due process safeguards for property owners whose property had been seized by the United States. CAFRA applies to all civil forfeiture statutes, and defines a civil forfeiture as "any provision of Federal law providing for the forfeiture of property other than as a sentence imposed upon a conviction for a criminal offense." 18 U.S.C. § 983(i)(1). Both parties agree that CAFRA applies to actions brought under the Magnuson Act, and that CAFRA is the applicable law for determining whether summary judgment should be granted.

One of the main purposes of CAFRA was to create an innocent owners defense, which would allow those owners who were unaware of illegal activity regarding their property, to retain their property after proving their innocence to the court. The statute provides that "an innocent owner's interest in property shall not be forfeited under any civil forfeiture statute," and that the person must prove their innocence "by a preponderance of the evidence." 18 U.S.C. § 983(d)(1).

The first step in applying the innocent owner defense is determining whether the party in question had an ownership interest in the forfeited property. Here, there is no dispute that the Marshall Islands Fishing Company ("MIFCO") had an ownership interest in F/V MARSHALLS 201 at the time of forfeiture, and as such is eligible for the innocent owner defense under CAFRA. Both parties clearly state in their briefings, their belief that CAFRA is the applicable law governing this innocent owner dispute.

In order to prove oneself an innocent owner under CAFRA, the owner must be either an owner who " did not know of the conduct giving rise to the forfeiture" or "upon learning of the conduct giving ruse to the forfeiture, did all that reasonably could be expected under the circumstances to terminate such use of the property." 18 U.S.C. § 983(d)(2)(A). The Defendant first argues that, MIFCO is an innocent owner who had no knowledge of the conduct giving rise to the forfeiture. Alternatively, Defendants contend that as soon as they became aware of the conduct that they immediately took proper steps to ensure that it would not happen again. They

- 5 -

cite to the firing of Captain Lu, and of their formal adoption of recognition of the United States EEZ, in April of 2007, nearly seven months after the incident. In order to show that the owner took reasonable steps under the second prong of the statute, the owner may show that they "(I) gave timely notice to an appropriate law enforcement agency of information that led the person to know the conduct giving rise to a forfeiture would occur or has occurred; (II) in a timely fashion revoked or made a good faith attempt to revoke permission for those engaging in such conduct to use the property or took reasonable actions in consultation with a law enforcement agency to discourage or prevent the illegal use of the property." 18 U.S.C. § 983(d)(B)(1).

The Defendant also argues its innocence through the fact that Captain Lu, the Master of F/V MARSHALLS 201 had no prior arrests or convictions on his record prior to the September 9, 2006 incident. For this reason, Defendant argues that MIFCO had no reason to know that Captain Lu could have been violating United States fishing laws. Captain Lu also stated at his deposition that he did not believe he was in the United States EEZ at the time of the incident, even though he had maps clearly defining the EEZ in the wheelhouse.[4]

Finally, MIFCO argues that even though Captain Lu faxed and called in daily updates about his location and catch, these updates were only collected and monitored once a week by MIFCO. As such, Defendant argues that it would have no way to prevent the illegal fishing before it took place, because it would not have become aware of it for another week.

In its Opposition, the United States argued that there are sufficient facts to argue that MIFCO cannot be considered an Innocent Owner under either prong of the statute. To support their argument they cited to the daily updates Captain Lu faxed to MIFCO about his catch and his location. Additionally, they stated that Captain Lu engaged in daily radio communications with a MIFCO fleet commander about their location and catch. The United States argues the Defendant willfully ignored the daily information it was receiving by only collecting the data once a week.

---

[4] As discussed on p. 8 of this Order, scienter is not a requirement for violations under the Magnuson Act.

Additionally, a map of the United States EEZ was found in the wheelhouse of F/V MARSHALLS 201, when it was secured by the USCG. This implies that the occupants of the vessel had knowledge of the EEZ, even though scienter is not a requirement for violations under the Magnuson Act.

The United States also argued that two vessels in which MIFCO were part owners were previously cited by the United States for fishing within the EEZ of Baker and Howland Islands. If proven to be true, this would have put MIFCO on notice that its Captains were using the EEZs of the United States for some of its catch. Additionally, the United States points out that two other vessels partially owned by MIFCO were spotted within the EEZ the day F/V MARSHALLS 201 was intercepted by the USCG.[5]

Finally, the United States argued that the Defendant failed to take the substantial and reasonable steps necessary to prevent any violations of the Untied States fishing laws. The United States points to the fact that MIFCO did not enact a written policy not to violate the EEZs of the United States until seven months after the violation, and two months after the Defendant first raised the CAFRA defense.

The issues presented by the United States in its Opposition Motion and during the hearing create genuine issues as to whether the Defendant was an Innocent Owner as defined under CAFRA. The issues raised in the Summary Judgment Motion and Opposition are questions of fact for the jury to determine and are material to the outcome of the case. The Defendant has not met the burden of Rule 56, and as such the Motion for Summary Judgment is **DENIED**.

///
///
///
///

---

[5] These vessels were F/V KOO'S 101 and F/V KOO'S 108.

- 7 -

## CONCLUSION

Based upon the foregoing the court finds that the issues raised by the Plaintiff create a genuine issue of material fact as to whether MIFCO was an innocent owner under CAFRA. Accordingly, the court **DENIES** the Defendant's Motion for Summary Judgment.

**SO ORDERED.**

/s/ **Frances M. Tydingco-Gatewood**
    **Chief Judge**
**Dated: May 08, 2008**